# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

GLENN COX, Individually and as Class  )
Representative,                       )
                                      )
  Plaintiff,                     )
                                      )    Civil Action No.:
v.                                    )    1:14-cv-1576-LMM-JSA
                                      )
MIDLAND FUNDING, LLC and              )
FREDERICK J. HANNA & ASSOCIATES,      )
P.C.,                                 )
                                      )
  Defendants.                    )
                                      )

> EXHIBIT ___ A̶
> WIT: _____
> DATE: _____
> STACY WIEBESIEK

---

## CITIBANK, N.A.'S RESPONSE TO SUBPOENA TO TESTIFY AT DEPOSITION

---

Citibank, N.A. ("Citibank") responds to Plaintiff's Subpoena to Testify at Deposition (the "Subpoena"), stating as follows:

## GENERAL OBJECTIONS

1.    To the extent that any Topic calls for, or may be construed as calling for, the disclosure of privileged or immune information, including without limitation information subject to the attorney-client privilege, attorney work product doctrine and/or any other recognized doctrine or privilege, Citibank hereby claims such privileges and immunities and objects to the Topic on those grounds. Further, Citibank objects to any Topic to the extent that it seeks information that

was prepared/obtained in anticipation of litigation and/or calls for information that is subject to and/or protected from disclosure by any other statutory or common-law privilege or doctrine including, but not limited to, the right to privacy and/or consulting expert witness privilege. Inadvertent disclosure of information subject to any privilege does not waive the privilege as to other information or documents regarding the same subject or content and does not waive Citibank's right to object to the introduction of such privileged information or documents into evidence.

2.     Citibank objects to any Topic that calls for mental impressions, legal conclusions and/or legal opinions of Citibank and/or its attorneys.

3.     Citibank objects to any Topic to the extent that it may be construed as seeking the disclosure of confidential, commercial and/or proprietary information protected by the right to privacy and/or any other applicable protection. Citibank objects to producing such information unless and until such production is subject to a suitable protective order entered by the Court in which this case is pending. Citibank objects to the production of any information that is subject to a confidentiality agreement with a third party or a court-ordered confidentiality agreement.

4.     Citibank objects to any Topic to the extent it is unduly vague, ambiguous, burdensome, overbroad and oppressive, are not reasonably limited in time and/or scope and/or as to the scope of the search and investigation to be

conducted in order to respond to the Requests, is not reasonably limited in any way as to the types of records sought and/or investigation that must be conducted, and seek information that is immaterial, irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

5.      Citibank objects to any Topic to the extent that it seeks information and/or materials or to the extent that its instructions are beyond the scope of permissible discovery under the applicable rules of civil procedure.

6.      Citibank incorporates each of these General Objections (collectively "General Objections") into each response that follows.

## SPECIFIC OBJECTIONS TO DEPOSITION TOPICS LISTED IN EXHIBIT A TO THE SUBPOENA

**TOPIC NO. 1:**      All credit card applications pertaining to the Credit Card Account.

**RESPONSE NO. 1:**

Citibank objects to this Topic on the grounds that it is vague and ambiguous for reasons including the fact that it does not define the phrase "credit card applications" and "pertaining." Citibank further objects to this Topic on the grounds that it is overly broad, unduly burdensome and not reasonably limited in time or scope. Citibank further objects to this Topic on the grounds that it is not described with "reasonable particularity" as required by FED. R. CIV. P. 30(b)(6).

**TOPIC NO. 2:**      The documents produced by Citibank as bates stamped pages 00001 through 000334 in response to the subpoena of Frederick J. Hanna & Associates, P.C., served on or about August 5, 2014. This includes but is not

3

limited to the authenticity of these documents, the meaning of these documents, the origination of these documents, and the dates these documents were issued.

**RESPONSE NO. 2:**

Citibank objects to this Topic on the grounds that it is overly broad, unduly burdensome, vague and ambiguous for reasons including the fact that it does not define the terms "meaning," "authenticity" and "origination" and "issued." Citibank further objects to this Topic on the grounds that it is not reasonably limited in time, scope and/or subject matter. Citibank also objects to this Topic to the extent it seeks information that is private, proprietary, and/or confidential and to the extent that it seeks information that is subject to and/or protected from disclosure pursuant to the attorney-client privilege, work product doctrine and/or any other recognized doctrine and/or privilege. Citibank further objects to this Topic on the grounds that it is not described with "reasonable particularity" as required by FED. R. CIV. P. 30(b)(6).

**TOPIC NO. 3:**   Testimony as to the documents produced by Citibank as bates stamped pages 00001 through 000334 in response to the subpoena of Frederick J. Hanna & Associates, P.C., served on or about August 5, 2014. This includes but is not limited to the authenticity of these documents, the meaning of these documents, the origination of these documents, and the dates these documents were issued.

**RESPONSE NO. 3:**

Citibank objects to this Topic on the grounds that it is overly broad, unduly burdensome, vague and ambiguous for reasons including the fact that it does not define the terms "meaning," "authenticity" "origination" and "issued." Citibank further objects to this Topic on the grounds that it is not reasonably limited in time, scope and/or subject matter. Citibank also objects to this Topic to the extent it seeks information that is private, proprietary, and/or confidential and to the extent that it seeks information that is subject to and/or protected from disclosure pursuant to the attorney-client privilege, work product doctrine and/or any other

22439428 v1

recognized doctrine and/or privilege. Citibank further objects to this Topic on the grounds that it is not described with "reasonable particularity" as required by FED. R. CIV. P. 30(b)(6).

**TOPIC NO. 4:**     The identity of the bank or financial institution that originated

the Credit Card Account.

**RESPONSE NO. 4:**

      Citibank objects to this Topic on the grounds that it is vague and ambiguous for reasons including the fact that it does not define the terms "identify" or "originated." Citibank further objects to this Topic to the extent that it seeks information that is private, confidential, proprietary and/or a trade secret and/or to the extent it seeks information that is protected from disclosure pursuant to the attorney-client privilege, work product doctrine and/or any other recognized doctrine and/or privilege. Citibank further objects to this Topic on the grounds that it is not described with "reasonable particularity" as required by FED. R. CIV. P. 30(b)(6).

**TOPIC NO. 5:**     If the original bank or financial institution was merged into or

otherwise acquired by Citibank, N.A., the date of the merger or acquisition

**RESPONSE NO. 5:**

      Citibank objects to this Topic on the grounds that it is vague and ambiguous for reasons including the fact that it does not define the terms "merged into," "acquired," and "acquisition." Citibank further objects to this Topic to the extent it seeks information that is private, confidential, proprietary and/or a trade secret and/or to the extent it calls for a legal conclusion and/or seeks information that is protected from disclosure pursuant to the attorney-client privilege, work product doctrine and/or any other recognized doctrine and/or privilege. Citibank further objects to this Topic on the grounds that it is not described with "reasonable particularity" as required by FED. R. CIV. P. 30(b)(6).

22439428 v1

**TOPIC NO. 6:**   All versions of the underlying Credit Card Account's cardholder agreement or other document(s), including all modifications thereof, setting forth the terms and conditions of the Credit Card Account.

**RESPONSE NO. 6:**

Citibank objects to this Topic on the grounds that it is vague and ambiguous for reasons including the fact that it does not define the terms "versions," "cardholder agreement," and "modifications." Citibank further objects to this Topic on the grounds that it is overly broad, unduly burdensome, not reasonably limited in time, scope and/or subject matter. Citibank further objects to this Topic on the grounds that it is not described with "reasonable particularity" as required by FED. R. CIV. P. 30(b)(6).

**TOPIC NO. 7:**   The dates that each underlying Credit Card Account's cardholder agreement or other document setting forth the terms and conditions of the Credit Card Account were operative and the terms of each such agreement.

**RESPONSE NO. 7:**

Citibank objects to this Topic on the grounds that it is vague and ambiguous for reasons including the fact that it does not define the terms "underlying Credit Card account," "cardholder agreement" "setting forth" or "operative." Citibank further objects to this Topic on the grounds that it is overly broad, unduly burdensome, not reasonably limited in time, scope and/or subject matter. Citibank also objects to this Topic to the extent it seeks information that is private, proprietary, and/or confidential, or to the extent it calls for a legal conclusion and/or seeks information that is subject to and/or protected from disclosure pursuant to the attorney-client privilege, work product doctrine and/or any other recognized doctrine and/or privilege. Citibank further objects to this Topic on the grounds that it is not described with "reasonable particularity" as required by FED. R. CIV. P. 30(b)(6).

**TOPIC NO. 8:**     The use of the Credit Card Account.

**RESPONSE NO. 8:**

Citibank objects to this Topic on the grounds that it is vague and ambiguous for reasons including the fact that it does not define the term "use." Citibank further objects to this Topic on the grounds that it is overly broad, unduly burdensome, not reasonably limited to time or scope and/or subject matter. Citibank further objects to this Topic on the grounds that it is not described with "reasonable particularity" as required by FED. R. CIV. P. 30(b)(6).

**TOPIC NO. 9:**     The payment history relative to the Credit Card Account.

**RESPONSE NO. 9:**

Citibank objects to this Topic on the grounds that it is vague and ambiguous for reasons including the fact that it does not define the terms "payment history," or "relative to," is overly broad, not reasonably limited in time, scope and/or subject matter and seeks information that is private, confidential, proprietary, subject to and/or protected from disclosure pursuant to the attorney-client privilege, work product doctrine and/or any other recognized doctrine and/or privilege. Citibank further objects to this Topic on the grounds that it is not described with "reasonable particularity" as required by FED. R. CIV. P. 30(b)(6).

**TOPIC NO. 10:**     Communications, including correspondence, between

any authorized user of the Credit Card Account and Citibank, N .A.

**RESPONSE NO. 10:**

Citibank objects to this Topic on the grounds that it is vague and ambiguous for reasons including the fact that it does not define the term "Communications," and "authorized user," is overly broad, unduly burdensome, not reasonably limited to time, scope and/or subject matter. Citibank further objects to this Topic on the grounds that it is not described with "reasonable particularity" as required by FED. R. CIV. P. 30(b)(6).

**TOPIC NO. 11:**   The charge-off of the Credit Card Account.

**RESPONSE NO. 11:**

Citibank objects to this Topic on the grounds that it is vague and ambiguous for reasons including the fact that it does not define the term "charge-off." Citibank further objects to this Topic on the grounds that it is overly broad, not reasonably limited in time, scope and/or subject matter and to the extent that it seeks information that is private, confidential, proprietary and/or a trade secret and further objects to this Topic on the grounds that it is not described with "reasonable particularity" as required by FED. R. CIV. P. 30(b)(6).

**TOPIC NO. 12:**   Sale of the Credit Card Account to Midland Funding, LLC.

**RESPONSE NO. 12:**

Citibank objects to this Topic on the grounds that it is vague and ambiguous for reasons including the fact that it does not define the term "sale." Citibank further objects to this Topic to the extent it seeks information that is private and/or confidential, proprietary and/or information that is subject to and/or protected from disclosure pursuant to the attorney-client privilege, work product doctrine and/or any other recognized doctrine and/or privilege. Citibank further objects to this Topic on the grounds that it is not described with "reasonable particularity" as required by FED. R. CIV. P. 30(b)(6).

22439428 v1

Dated: January 20, 2015

Respectfully Submitted,

Joshua H. Threadcraft (jthreadcraft@burr.com)
Georgia Bar No. 119050
ATTORNEY FOR CITIBANK, N.A.

**OF COUNSEL:**

BURR & FORMAN LLP
420 North 20th Street
Suite 3400
Birmingham, AL 35203
Telephone: (205) 251-3000
Facsimile: (204) 458-5110

## CERTIFICATE OF SERVICE

I do hereby certify that on this the _20th_ day of January, 2015, I caused a copy of the foregoing to be served via first class U.S. Mail, postage prepaid and electronic mail as designated below:

John H. Bedard, Jr.
jbedard@bedardlawgroup.com
Bedard Law Group, P.C.
2810 Peachtree Industrial Blvd.
Suite D
Duluth, GA 30097

Steve Koval
Attorney At Law
The Koval Firm, LLC
3575 Piedmont Road
15 Piedmont Center, Suite 120
Atlanta, GA 30305
E-Mail:        Steve@KovalFirm.com

Joshua H. Threadcraft

22439428 v1



**BEDARD LAW GROUP, P.C.**

**Michael K. Chapman**
Attorney at Law
Licensed only in GA and LA.

tel 678.253.1871 ext. 202
fax 678.253.1873
mchapman@bedardlawgroup.com

2810 Peachtree Industrial Blvd.
Suite D
Duluth, Georgia 30097
www.bedardlawgroup.com
Attorney at Law

January 9, 2015

Citibank, N.A.
Subpoena Compliance Unit
701 E. 60th Street N.
Sioux Falls, South Dakota 57117-6034

Re:     Glenn Cox v. Midland Funding, LLC and Frederick J. Hanna & Associates, P.C.
        U.S. District Court for the Northern District of Georgia
        Civil Action No. 1:14-cv-1576-LMM-JSA

Dear Citibank, N.A.:

Enclosed and served upon you herewith please find a Subpoena to Testify at a Deposition in a Civil Action as it relates to the matter of *Glenn Cox v. Midland Funding, LLC and Frederick J. Hanna & Associates, P.C.* pending in the United States District Court for the Northern District of Georgia. The Subpoena requires your presence at Prairie Reporting, 814 N. Western Avenue, Sioux Falls, South Dakota 571404 on January 23, 2015 at 10:00 a.m. for this purpose.

In accord with Rule 45 of the Federal Rules of Civil Procedure, I have enclosed a check in the amount of $46.72. This check is payment for your mileage (12 miles each direction at .56/mile) and a $40.00 per diem pursuant to 28 U.S.C. § 1821.

Respectfully yours,

Michael K. Chapman

Enclosures

EXHIBIT 1
WIT:
DATE:
STACY WIEBESIEK

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of Georgia

| | |
|---|---|
| GLENN COX, Individually and as class rep. <br> *Plaintiff* <br> v. <br> MIDLAND FUNDING, LLC and FREDERICK J. HANNA & ASSOCIATES, P.C. <br> *Defendant* | ) ) ) ) ) ) Civil Action No.   1:14-cv-1576-LMM-JSA |

## SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:          CITIBANK, N.A., appropriate deponent(s) pursuant to Fed. R. Civ. P. 30(b)(6)
          via its Supoena Compliance Unit – Records Custodian, 701 E. 60th St. N., Sioux Falls, South Dakota 57117-6034
                    *(Name of person to whom this subpoena is directed)*

☑ *Testimony:* **YOU ARE COMMANDED** to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about the following matters, or those set forth in an attachment:

              PLEASE SEE EXHIBIT A (ATTACHED HERETO)

| Place: Prairie Reporting <br> 814 N. Western Avenue <br> Sioux Falls, South Dakota 57104 | Date and Time: <br> 01/23/2015 10:00 am |
|---|---|

          The deposition will be recorded by this method:    Stenographic Means

☐ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:

          The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    01/05/2015

                    *CLERK OF COURT*
                                        OR
                                            /s/ Michael K. Chapman
     _____        _____
          *Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*    Defendant,
Frederick J. Hanna & Associates, P.C. _____ , who issues or requests this subpoena, are:
Michael K. Chapman and John H. Bedard, Jr. of Bedard Law Group, P.C., 2810 Peachtree Industrial Blvd., Suite D, Duluth, Georgia, 30097. Tel: 678) 253-1871;E-mail: mchapman@bedardlawgroup.com; jbedard@bedardlawgroup.com
                    **Notice to the person who issues or requests this subpoena**
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

# SUBPOENA TO TESTIFY AT DEPOSITION
# EXHIBIT A

This subpoena is issued pursuant to Rule 45 of the Federal Rules of Civil Procedure. The issuing Court is the United States District Court for the Northern District of Georgia, Atlanta Division which is also the Court in which the action is pending.

## DEPOSITION TOPICS

**PLEASE TAKE NOTICE** that Fed. R. Civ. P. 30(b)(6) requires you to designate one or more corporate representatives who can answer questions regarding, but not limited to, the following areas of inquiry:

NOTE:     **All references herein to the "Credit Card Account" relate to the following account –**

|  |  |
|---|---|
| **Account Number:** | **634 570 600** |
| **Card Type:** | **Citgo (Citgo Plus Card)** |
| **Account Holder:** | **Glenn M. Cox** |
| **Last Known Address:** | **2994 Kodiak Ct., Marietta, Georgia 30062** |
| **Contract Date:** | **May 13, 1992** |
| **Date of Charge-off:** | **Jan. 6, 2012** |

1. All credit card applications pertaining to the Credit Card Account.

2. The documents produced by Citibank as bates stamped pages 00001 through 000334 in response to the subpoena of Frederick J. Hanna & Associates, P.C., served on or about August 5, 2014.  This includes but is not limited to the authenticity of these documents, the meaning of these

documents, the origination of these documents, and the dates these documents were issued.

3. Testimony as to the documents produced by Citibank as bates stamped pages 00001 through 000334 in response to the subpoena of Frederick J. Hanna & Associates, P.C., served on or about August 5, 2014. This includes but is not limited to the authenticity of these documents, the meaning of these documents, the origination of these documents, and the dates these documents were issued.

4. The identity of the bank or financial institution that originated the Credit Card Account.

5. If the original bank or financial institution was merged into or otherwise acquired by Citibank, N.A., the date of the merger or acquisition.

6. All versions of the underlying Credit Card Account's cardholder agreement or other document(s), including all modifications thereof, setting forth the terms and conditions of the Credit Card Account.

7. The dates that each underlying Credit Card Account's cardholder agreement or other document setting forth the terms and conditions of the Credit Card Account was operative and the terms of each such agreement.

8. The use of the Credit Card Account.

9.  The payment history relative to the Credit Card Account.

10. Communications, including correspondence, between any authorized user of the Credit Card Account and Citibank, N.A.

11. The charge-off of the Credit Card Account.

12. Sale of the Credit Card Account to Midland Funding, LLC.

AO 88A (Rev. 02/14) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

(1) *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   (A) within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   (B) within the state where the person resides, is employed, or regularly transacts business in person, if the person
      (i) is a party or a party's officer; or
      (ii) is commanded to attend a trial and would not incur substantial expense.

(2) *For Other Discovery.* A subpoena may command:
   (A) production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   (B) inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

(1) *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

(2) *Command to Produce Materials or Permit Inspection.*
   (A) *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   (B) *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      (i) At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      (ii) These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

(3) *Quashing or Modifying a Subpoena.*
   (A) *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
      (i) fails to allow a reasonable time to comply;
      (ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
      (iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      (iv) subjects a person to undue burden.
   (B) *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      (i) disclosing a trade secret or other confidential research, development, or commercial information; or
      (ii) disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   (C) *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      (i) shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      (ii) ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

(1) *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   (A) *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   (B) *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   (C) *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   (D) *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

(2) *Claiming Privilege or Protection.*
   (A) *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      (i) expressly make the claim; and
      (ii) describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
   (B) *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

AO 88B  (Rev.  06/09) Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action (Page 2)

Civil Action No.  1:14-cv-1576-LMM-JSA

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

This subpoena for *(name of individual and title, if any)* Citibank, N.A.

was received by me on *(date)* 1/12/15  .

☒ I served the subpoena by delivering a copy to the named person as follows: Citibank, N.A.
Kelly umStott - Legal DEPt. Specialist
701 E. 60th St. N. Sioux Falls, SD 57105 on *(date)* 1/12/15 @ 11:35AM; or

☐ I returned the subpoena unexecuted because: _____

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____  .

My fees are $ _____   for travel and $ _____   for services, for a total of $   0.00  .

I declare under penalty of perjury that this information is true.

Date:  1/12/15

_____
*Server's signature*

Richard Rober              APS-3
_____
*Printed name and title*

2522 W. 41st St. #213 Sioux Falls, SD 57105
_____
*Server's address*

Additional information regarding attempted service, etc:

VOID VOID VOID VOID VOID

4635

**BEDARD LAW GROUP PC**
OPERATING ACCOUNT
2810 PEACHTREE INDUSTRIAL BLVD. SUITE D
DULUTH, GA 30097
678-253-1871

SunTrust
64-10-610
ACH RT 061000104

01/07/2015

PAY TO THE
ORDER OF  Citibank, NA

$  $46.72

Forty Six Dollars & 72/100

DOLLARS

Citibank, NA
701 E. 60th Street, N.
Sioux Falls, SD 57117

MEMO  Deposition Witness Fee

AUTHORIZED SIGNATURE

⑈000463⑈⑈ ⑈061000104⑈ 1000160569470⑈

---

**BEDARD LAW GROUP PC • OPERATING ACCOUNT**

4635

Date: 01/07/2015   Vendor: MISC_VENDOR-Citibank, NA                Amount: $46.72        Firm's Acct #:

| Invoice Number | Invoice Amount | Invoice Description |
|---|---|---|
| | $46.72 | Deposition Witness Fee |

| Client Name | | Client # | | Matter # | | Client Amount | Account # | Firm Amount |
|---|---|---|---|---|---|---|---|---|
| William Cadogan | | 8125 | | 2913 | | $46.72 | 52020.00 | $46.72 |

---

**BEDARD LAW GROUP PC • OPERATING ACCOUNT**

4635

Date: 01/07/2015   Vendor: MISC_VENDOR-Citibank, NA                Amount: $46.72        Firm's Acct #:

| Invoice Number | Invoice Amount | Invoice Description |
|---|---|---|
| | $46.72 | Deposition Witness Fee |

| Client Name | | Client # | | Matter # | | Client Amount | Account # | Firm Amount |
|---|---|---|---|---|---|---|---|---|
| William Cadogan | | 8125 | | 2913 | | $46.72 | 52020.00 | $46.72 |

PRODUCT SSLT104     USE WITH 91663 ENVELOPE

5/01

 

**Associates National Bank (Delaware)**
**CARDMEMBER AGREEMENT**

**Definitions.** In this Agreement "you" and "your" refer to Cardmember (or person authorized to use the Account); "we", "us" and "our" refer to Associates National Bank (Delaware) (hereinafter, the "Bank"); "Card" means the card or cards issued by us to you; "Account" means the credit account issued by us to you.

**Scope of Agreement.** This Agreement governs your Account and use of the Card we have issued to you. We will pay member merchants for goods and services you obtain by use of this Card and we may make other loans (cash advances) to you, including cash advances by means of convenience checks and automated teller machines (ATMs), on terms explained later in this Agreement.

**Credit Limit.** There will be a credit limit for purchases, and a credit limit for cash advances. You will be advised of the credit limits applicable to your Account. Credit limits may be increased or decreased by us at any time.

**Convenience Checks.** At the sole discretion of the Bank, from time to time you may be provided a supply of convenience checks for your use in borrowing under this Agreement. You may not use convenience checks to make payments on your Account.

**Payments.** When there is activity or a payment due, we will send you a statement on a billing date we select. Purchases (including amounts authorized to be advanced for insurance), cash advances, adjustments, and payments made since the last billing date will be shown on this statement. You will pay us the full balance owed or, if you wish, at least the Minimum Payment Due, by the Due Date shown on the monthly statement.

The Minimum Payment Due on your Account will be equal to the sum of (a) the greater of 5% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by amounts which exceed your credit limit and installment amounts due in full for mail and telephone order merchandise) or $10.00; and (b) the greater of amounts which exceed your credit limit or amounts which are past-due; and (c) installment amounts due in full for mail and telephone order merchandise.

Payments will be in U.S. Dollars and will be sent to our address shown on the statement. Payments received by 2:00 p.m. will be credited to your Account as of the date received. Payments received after 2:00 p.m. will be credited to your Account as of the next business day. You will pay for all purchases and cash advances made on the Account by you or an authorized user.

**Finance Charge.** You will pay a Daily Periodic Rate on the Daily Balance for purchases and the Daily Balance for cash advances on your Account each day. The total periodic Finance Charge for each billing cycle is the sum of the Daily Periodic Rate charges on the Daily Balance for purchases and the Daily Balance for cash advances for each day in the billing cycle. The Daily Periodic Rate used in determining the periodic Finance Charge will be a variable rate, which may change from month to month. The Daily Periodic Rate during each billing cycle will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of *The Wall Street Journal* within the 90 calendar days immediately preceding, but not including, the first day of each billing cycle. The Margin for purchases and cash advances will be 13.99%. The initial daily rate on your Account, based on an Index of 9.00% as of April 5, 2001 will be a Daily Periodic Rate of 0.062985% (22.99% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable Daily Periodic Rate, which may increase the Minimum Payment Due on your Account. However, if you pay the full amount of the New Balance each month by the Due Date, no Finance Charge will be charged on new purchases. For any cash advance obtained through an ATM or by means of a convenience check, or for any

EXHIBIT ___2___
WIT: _____
DATE: _____
STACY WIEBESIEK

Citi Prod (Cox v. Hannah) 000001

other transaction that we consider a cash advance under this Agreement. you will pay a FINANCE CHARGE on the cash advance from the date of the cash advance. You will pay a FINANCE CHARGE equal to of the amount of the cash advance. You will pay a Minimum Periodic FINANCE CHARGE of $1.50 for each billing cycle during which you have a FINANCE CHARGE balance subject to that portion of the cash advance. Charges after initial period: The rate of FINANCE CHARGE for each day the Daily Periodic Rate in effect will be increased to 17.99%.

You agree to pay as a FINANCE CHARGE a fee of $15 for the maximum amount permitted by applicable law, whichever is less) for payment services we may provide which allow you, at your option, to make payments which allow them to provide payment services, we will advise you of the fee associated with your request, and your use of the optional payment services thereafter constitutes your agreement to pay the associated fee.

**Daily Balance Calculation.** To get the Daily Balance for purchases and cash advances on your Account each day, including any day when your Account Balance is between $10.00 and $24.99, we take the beginning balance of purchases and cash advances on your Account each day, including any new purchases and cash advances added (through the previous day), add any new purchases and any amounts advanced for insurance) to the Daily Balance for purchases, credits, or credit balances subtracted. Purchases and cash advances are included in the Daily Balance as of the date of the transaction or the first day of the billing cycle in which they are posted, whichever is later. Cash advances are included on your Account. However, if you pay any balance shown on your Account before the Payment Due Date shown on that billing statement in full, you will not be included in any Daily Balance for purchase balances.

**Application of Payments.** Each payment you send to us will be applied to your Account balances subject to lower Annual Percentage Rates, including, but not limited to, special billing statement.

### Fees.

**Fees.** You agree to pay us interest the following fees and charges.

Due by the Due Date when your Account Balance is between $10.00 and $24.99, you will pay a late fee of $9 each time you fail to pay at least the Minimum Payment Due by the Due Date when your Account Balance is between $100.00 and $250.99, you will pay a late fee of $15 each time you fail to pay at least the Minimum Payment Due by the Due Date when your Account Balance is $200.00 or more. In addition, if your Card is a Celebrity credit card, you will pay a $25 annual membership fee.

You will pay a fee of $20 for each returned payment check or other item intended for payment and a fee of $20 for each convenience check we return as provided in this Agreement.

**Application of Payments...**

You agree to pay a fee, not to exceed the greater of $5 per copy or the maximum amount permitted by applicable law, for each copy of your requested convenience checks or transactions. We may make photocopies of your requested copies, and we may charge you a fee associated with your request, and your use of the optional convenience checks or transactions thereafter constitutes your agreement to pay the associated fee.

**Default.** You will be in default if you fail to make any payment when due, exceed your credit limit, use, become the subject of a bankruptcy or insolvency proceeding, do not comply with any of the terms governing your Account, or for any reason we reasonably feel insecure about your ability to pay. If you default, we may, at our option, declare all

---

amounts you owe to be immediately due and payable. Also, we may revoke the privilege attached to any or all Cards and terminate this Agreement as to future purchases and cash advances.

All Cards and convenience checks are our property. You agree to surrender all Cards to us, or our designee upon demand. If we decide to honor such any or your convenience checks that are presented to us under the terms of this Agreement, we reserve the right to limit the amount of such checks under the terms of this Agreement, if, after default, we deny your convenience checks or at our attorney working any of our rights to recover full payment under this Agreement. You will pay our court costs and reasonable attorneys' fees.

**Billing Statement Disputes.** The right to accept monthly statements we mail you as being correct unless you notify us in writing or of any error in the statement. You agree to examine each Periodic Statement we send you and to notify us within 60 days after we mailed Your Billing Rights." Even though an amount is in dispute and you need not pay that amount until the dispute is resolved, you must pay at least the required Minimum Payment Due.

**Use of the Card.** We are not responsible if anyone refuses to honor the Card or any convenience check or for any failure of an ATM to process a cash advance request. If there is a problem with merchandise or services obtained with convenience checks or with money from a cash advance. See the Section of this Agreement entitled "Special Rules for Credit Card Purchases" you agree that if the right does not, however, apply to merchandise or services obtained with convenience checks or with money from a cash advance. See the Section of this Agreement entitled "Special Rules for Credit Card Purchases" you agree that there is no repossessing for merchandise obtained with the Card.

**Exceeding Credit Limit.** You will not use or permit use of any Card or convenience check for any purchase or cash advance which would cause your entire balance to exceed the credit limit on your Account. If the Account balance exceeds the credit limit at any time, you will immediately pay us the excess upon demand.

**Modifications.** Subject to applicable law, we may change the terms of this Agreement from time to time. We have the right to apply the new terms to the outstanding balance of your Account as of the effective date of the change. If we make a change, we will give you notice as required by applicable law.

**Expiration, Renewal, and Termination.** Cards are issued with an expiration date. We have the right not to renew your Account. Without affecting your rights provided in this Agreement, we have the right to revoke the privileges afforded to any or all Cards, cancel or terminate this Agreement as to future purchases and cash advances at any time for any reason. You agree to surrender the Card to us or our designee upon demand.

**Assignment.** Your rights under this Agreement cannot be transferred by operation of law or otherwise, but your obligations shall be binding upon you and your estate or personal representatives. We may assign this Agreement or any of our rights under it without notice or your consent.

**Signature.** You agree to sign (and, if appropriate, have authorized users sign) in the space provided for authorized signatures) on the back of the Card. In any event, your signature on the signature panel of, your use of the Card, or any use of the Card by you or any or on any charge slip intended for this Account, or any part of the Card and the Card will

---

authorized user is your agreement to comply with the terms of this Agreement.

**Governing Law.** This Agreement is governed by Delaware law, subject to any applicable provisions of federal law.

**No Waiver of Rights.** We may delay enforcing our rights under this Agreement without losing them. We may accept late or partial payments, checks or other payment instruments marked "payment in full" or with other language to indicate satisfaction of your debt, without waiving any of our rights to receive full payment under this Agreement. You must send any such communication to the "Billing Inquiries" address on your statement or any such communication to us about a disputed amount that requires a written agreement signed by an authorized employee.

**Telephone Monitoring.** As part of our continuing effort to maintain a high quality of service to our customers, telephone calls between our employees and our customers are periodically monitored, on a random basis, by our supervisory personnel. You understand this and give your consent to any telephone calls between you and us that you may have with us.

**Notices, Addresses.** Notices to us shall be effective when received by us at the address appearing on your statement. Notices to you, if mailed, shall be deemed given when mailed to the preceding 10 days, Notices to you, if mailed, shall be deemed given when mailed to you at the address given on your application or authorization form or to such other address you have given us by notice. Notice of a change of address shall be given to us at least 10 days prior to such change.

**Unauthorized Use; Loss or Theft of Card.** You may be liable for the unauthorized use of the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, of the loss, theft or possible unauthorized use. In any case, your liability will not exceed $50. You may telephone us at 1-800-756-2484 to report the loss, theft or possible unauthorized use. Notice to us of a change of address shall be given to us by writing to us at the address appearing on your statement. (See Message to Our Customers Concerning Privacy).

**Credit Reports.** We may investigate your credit report from time to time in connection with your application and any inquiring Account or update, renewal or extension of the Account. Upon your request we will advise you if we obtained a credit report and we will give you the credit bureau's name and address.

**Negative Credit Information.** You understand that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations. Notice, before any negative information related to this extension of the credit to your credit report is reasonable, you may notify us of the same by writing to us at Associates National Bank (Delaware), P.O. Box 9095, Des Moines, IA 50306-9095.

**Severability.** If any clause of this Agreement is in conflict with applicable law, that clause will be considered modified to conform with that applicable law.

**ARBITRATION. THIS AGREEMENT CONTAINS AN ARBITRATION PROVISION (PROVIDING THAT CLAIMS ARISING UNDER THIS AGREEMENT ARE SUBJECT TO ARBITRATION. YOU AGREE THAT, UPON YOUR OR OUR RIGHT TO A JURY TRIAL, YOU SHOULD READ THIS PROVISION CAREFULLY.** Any claim, dispute or controversy (in "Dispute") between you and us including without limitation those related to this Agreement, your Account, or any services purchased in this Agreement, or the validity, enforceability, or scope of this arbitration provision, or of this entire Agreement, or prior to this Agreement, shall be resolved upon the election of you or us by binding arbitration pursuant to this arbitration provision and the Commercial Arbitration Rules and Procedures of the American Arbitration Association (AAA). This arbitration provision also applies to any Dispute between you and any of our affiliate companies.

Citi Prod (Cox v. Hannah) 000002

and any of their employees. This arbitration provision is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §1-16. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations and shall honor all claims of privilege recognized at law. This arbitration provision is fully binding in the event a class action is filed in which you would be a class representative or member. You and we agree that arbitrations pursuant to this arbitration provision which involve you and us and/or us and any other person cannot be consolidated. You and we further agree that there shall be no class action arbitration pursuant to this arbitration provision. This arbitration provision shall survive the inactivation or termination of this Cardmember Agreement or your Account. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions are severable and enforceable to the fullest extent permitted by law. This arbitration provision supersedes any prior arbitration provision that there may be between you and us.

**Small Claims Exception:** If a Dispute arises between you and us and either you or we bring an action as a result in a small claims court or a similar court with a jurisdictional limit of $5,000 or less, the other party may NOT demand arbitration of that Dispute pursuant to this arbitration provision. If at any time during such an action, the case is transferred to a court with a jurisdictional limit in excess of $5,000, then you or we may demand arbitration of the entire Dispute, pursuant to this provision, at any time after that court assumes jurisdiction of the Dispute.

**To Start Arbitration:** Either you or we can start arbitration any time a Dispute arises between you and us. To start arbitration, you or we must contact the AAA at:

American Arbitration Association
13455 Noel Road
Two Galleria Tower, Suite 1750
Dallas, TX 75240-6636

For more information about the arbitration process, or to obtain a copy of the Commercial Arbitration Rules and Procedures, contact the AAA web site at http://www.adr.org.

**No Waiver:** You and we agree that bringing a lawsuit, counterclaim, or other action in court shall not be deemed a waiver of the right to demand arbitration of any Dispute brought by the other party. As an example, and not by way of limitation, if we file a lawsuit against you in court to collect a debt, and you file a counterclaim against us in that lawsuit, we have the right to demand that the entire Dispute, including our original lawsuit against you and your counterclaim against us, be arbitrated in accordance with this arbitration provision. You and we agree that bringing the lawsuit shall not operate as a waiver of our right to demand arbitration.

**Cost of Arbitration:** If you start arbitration, you agree to pay the initial filing fee and deposit required by the AAA. If we start arbitration, we will pay the filing fee and deposit. If you believe you are financially unable to pay such fees you may ask the AAA to defer or reduce such fees, pursuant to the Commercial Arbitration Rules and Procedures. If the AAA does not defer or reduce such fees so that you are able to afford them, we will, upon your written request, pay the fees, subject to any later allocation of the fees and expenses between you and us by the arbitrator. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration hearings. The Commercial Arbitration Rules and Procedures determine who will pay those fees.

**Location of Arbitration:** Any arbitration hearing will take place in the federal judicial district in which you live unless you and we both agree to another location.

**Enforcement of Arbitration:** After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

Citi Prod (Cox v. Hannah) 000003

Citi Prod (Cox v. Hannah) 000004

## YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### NOTIFY US IN CASE OF ERRORS OR
### QUESTIONS ABOUT YOUR BILL

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet of paper. Send to:

CITGO Credit Card Center
P.O. Box 9095
Des Moines, IA 50368-9095

Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
• Your name and account number.
• The dollar amount of the suspected error.
• Describe the error and explain, if you can, why you believe there is an error.
• If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

### YOUR RIGHTS AND OUR RESPONSIBILITIES
### AFTER WE RECEIVE YOUR WRITTEN NOTICE

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charge, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. We must also tell you the name of anyone we reported you to. And, we must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

### SPECIAL RULE FOR CREDIT CARD PURCHASES

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

### MESSAGE TO CARDMEMBERS CONCERNING PRIVACY

CITGO and Associates National Bank (Delaware) are committed to providing you with the best products and services available. To understand and serve our customers' needs, we share customer information (including credit information) with other members of The Associates family. In addition, Associates National Bank (Delaware) may also enter into arrangements to share information with unrelated businesses to determine your eligibility for, and to deliver, offers that may be of interest or provide value to our customers.

You may elect to not allow us to share information with our affiliates or other businesses by "opting-out" of the information sharing. Your options are one or both of the following:

Option 1 - We will not share information about you with any non-affiliate party.

Option 2 - We will not share information about you with our affiliates

We respect your privacy. If you'd prefer that we not share information, simply write to us at the address provided below. To ensure that your request can be processed, please include your name, address, telephone number, social security number and account number for any CITGO Credit Card account for which you wish the information to remain private. Specify one or both of the above options in your correspondence. Please allow us time to process your request.

CITGO Credit Card Center
P.O. Box 9095
Des Moines, IA 50368-9095

5/01

 **Associates National Bank (Delaware)**
**CARDMEMBER AGREEMENT** 

**Definitions.** In this Agreement "you" and "your" refer to Cardmember (or person authorized to use the Account); "we", "us" and "our" refer to Associates National Bank (Delaware) (hereinafter, the "Bank"); "Card" means the card or cards issued by us to you; "Account" means the credit account issued by us to you.

**Scope of Agreement.** This Agreement governs your Account and use of the Card we have issued to you. We will pay member merchants for goods and services you obtain by use of this Card and we may make other loans (cash advances) to you, including cash advances by means of convenience checks and automated teller machines (ATMs), on terms explained later in this Agreement.

**Credit Limit.** There will be a credit limit for purchases, and a credit limit for cash advances. You will be advised of the credit limits applicable to your Account. Credit limits may be increased or decreased by us at any time.

**Convenience Checks.** At the sole discretion of the Bank, from time to time you may be provided a supply of convenience checks for your use in borrowing under this Agreement. You may not use convenience checks to make payments on your Account.

**Payments.** When there is activity or a payment due, we will send you a statement on a billing date we select. Purchases (including amounts authorized to be advanced for insurance), cash advances, adjustments, and payments made since the last billing date will be shown on this statement. You will pay us the full balance owed or, if you wish, at least the Minimum Payment Due, by the Due Date shown on the monthly statement.

The Minimum Payment Due on your Account will be equal to the sum of (a) the greater of 5% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by amounts which exceed your credit limit and installment amounts due in full for mail and telephone order merchandise) or $10.00; and (b) the greater of amounts which exceed your credit limit or amounts which are past-due; and (c) installment amounts due in full for mail and telephone order merchandise.

Payments will be in U.S. Dollars and will be sent to our address shown on the statement. Payments received by 2:00 p.m. will be credited to your Account as of the date received. Payments received after 2:00 p.m. will be credited to your Account as of the next business day. You will pay for all purchases and cash advances made on the Account by you or an authorized user.

**Finance Charge.** You will pay a Daily Periodic Rate on the Daily Balance for purchases and the Daily Balance for cash advances on your Account each day. The total periodic Finance Charge for each billing cycle is the sum of the Daily Periodic Rate charges on the Daily Balance for purchases and the Daily Balance for cash advances for each day in the billing cycle. The Daily Periodic Rate used in determining the periodic Finance Charge will be a variable rate, which may change from month to month. The Daily Periodic Rate during each billing cycle will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of *The Wall Street Journal* within the 90 calendar days immediately preceding, but not including, the first day of each billing cycle. The Margin for purchases and cash advances will be 13.99%. The initial daily rate on your Account, based on an Index of 9.00% as of April 5, 2001 will be a Daily Periodic Rate of 0.062996% (22.99% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable Daily Periodic Rate, which may increase the Minimum Payment Due on your Account. However, if you pay the full amount of the New Balance each month by the Due Date, no Finance Charge will be charged on new purchases. For any cash advance obtained through an ATM or by means of a convenience check, or for any

Citi Prod (Cox v. Hannah) 000005

Citi Prod (Cox v. Hannah) 000006

other transaction that we consider a cash advance under this Agreement, you will pay a transaction fee FINANCE CHARGE equal to the greater of $5.00 or 5% of the amount of the cash advance. You will pay a Minimum Periodic FINANCE CHARGE of $1.50 for each billing cycle during which any Finance Charge accrues on your Account as a result of application of the Daily Periodic Rate. Your Account will have a different rate of Finance Charge after it is closed because of default or is 30 days or more past due. In that event, the Margin for purchases and cash advances will increase to 17.99%.

You agree to pay as a FINANCE CHARGE a fee of $15 (or the maximum amount permitted by applicable law, whichever is less) for payment services we may provide which allow you, at your option, to make payments other than by mailing them to the payment address shown on your billing statement. In the event you request optional payment services, we will advise you of the fee associated with your request, and your use of the optional payment services thereafter constitutes your agreement to pay the associated fee.

**Daily Balance Calculation.** To get the Daily Balance for purchases and cash advances for each day, we take the beginning balance of purchases and cash advances on your Account each day, including any accrued but unpaid Finance Charges and other fees through the previous day, add any new purchases and fees (including amounts advanced for insurance) (to the Daily Balance for purchases), cash advances (to the Daily Balance for cash advances), or debit adjustments, and subtract any payments, credits or credit adjustments. Purchases and cash advances are included in the Daily Balance as of the later of the date of the transaction or the first day of the billing cycle in which the purchase or cash advance is entered on your Account. However, if you pay the New Balance shown on your previous billing statement in full on or before the Due Date shown on that billing statement, new purchases will not be included in the Daily Balance for purchases.

**Application of Payments.** Each payment you send us will be applied to your Account in a manner we determine in our discretion. We reserve the right to apply payments to balances subject to lower Annual Percentage Rates, including, but not limited to, special rate balance transfers, prior to balances subject to higher Annual Percentage Rates.

**Fees.** You agree to pay as interest the following fees and charges:

You agree to pay a late fee of $3 each time you fail to pay at least the Minimum Payment Due by the Due Date when your Account Balance is between $10.00 and $24.99; you will pay a late fee of $9 each time you fail to pay at least the Minimum Payment Due by the Due Date when your Account Balance is between $25.00 and $99.99; you will pay a late fee of $11 each time you fail to pay at least the Minimum Payment Due by the Due Date when your Account Balance is between $100.00 and $299.99; you will pay a late fee of $13.00 each time you fail to pay at least the Minimum Payment Due by the Due Date when your Account Balance is $300.00 or more. In addition, if your Card is a Celebrity card, you will pay a $25 annual membership fee.

You will pay a fee of $20 for each returned payment check or other item intended for payment and a fee of $20 for each convenience check we return as provided in this Agreement

You agree to pay a fee, not to exceed the greater of 35 per copy or the maximum amount permitted by applicable law, for each copy you request of your billing statements, checks, sales slips and/or memoranda of transactions, other than copies requested for purposes of investigating a billing error. In the event you request copies, we will advise you of the fee associated with your request, and your use of the copy services thereafter constitutes your agreement to pay the associated fee.

**Default.** You will be in default if you fail to make any payment when due, exceed your credit limit, die, become the subject of bankruptcy or insolvency proceedings, do not comply with any of the terms governing your Account, or if for any reason we reasonably feel insecure about your Account. If you default, we may, at our option, declare all

amounts you owe to be immediately due and payable. Also, we may revoke the privileges attached to any or all Cards, cancel the Cards and terminate this Agreement as to future purchases and cash advances.

All Cards and convenience checks are our property. You agree to surrender all Cards to us, or our designee upon demand. If you default, we, at our option, may refuse to pay any of your convenience checks that are presented to us. If we decide to honor such checks, you will owe us the amount of such checks under the terms of this Agreement. If, after default, we refer your Account for collection to a collection agency or to an attorney who is not our salaried employee, you agree that, when and as permitted by applicable law, we may charge and collect from you our collection costs, including without limitation, court costs and reasonable attorneys' fees.

**Billing Statement Disputes.** You agree to accept monthly statements we mail you as being correct unless you notify us in writing of any alleged errors within the time period prescribed by law. Your rights to dispute billing errors are set forth under the paragraph entitled "Your Billing Rights". Even though an amount is in dispute and you need not pay that amount until the dispute is resolved, you must pay at least the required Minimum Payment Due.

**Exceeding Credit Limit.** You will not use or permit use of any Card or convenience check for any purchase or cash advance which would cause your credit limit to be exceeded. Without limiting any of our rights under this Agreement, if the Account balance exceeds the credit limit at any time, you will immediately pay us the excess upon demand.

**Use of the Card.** We are not responsible if anyone refuses to honor this Card or any convenience check or for any failure of an ATM to process a cash advance request. If there is a problem with merchandise or services obtained with this Card, you may have the right not to pay the remaining amount due on such merchandise or services. This right does not, however, apply to merchandise or services obtained with convenience checks or with money from a cash advance. See the Section of this Agreement entitled "Special Rule for Credit Card Purchases" for an explanation of your rights. We will have no responsibility for merchandise or services purchased with this Card.

**Modifications.** Subject to applicable law, we may change the terms of this Agreement from time to time. We have the right to apply the new terms to the outstanding balance of your Account as of the effective date of the change. If we make a change, we will give you notice as required by applicable law.

**Expiration; Renewal; and Termination.** Cards are issued with an expiration date. We have the right not to renew your Account. Without limiting our rights provided in this Agreement, we have the right to revoke the privileges attached to any or all Cards, cancel the Cards, and terminate this Agreement as to future purchases and cash advances at any time for any reason. You agree to surrender the Card to us or our designee upon demand.

**Obligation for Repayment.** Even though the Card or your right to use convenience checks is revoked or terminated, you agree that your obligations and our rights under this Agreement will remain in effect until all balances on your Account incurred before or after revocation or termination are paid in full.

**Assignment.** Your rights under this Agreement cannot be transferred by operation of law or otherwise, but your obligations shall be binding upon your estate or personal representatives. We may assign this Agreement or any of our rights under it without prior notice or your consent.

**Signature.** You agree to sign (and, if appropriate, have authorized users sign in the space provided for authorized signatures) the Card before the Card is used. Your signature or the signature of authorized users on the Card, on any convenience check or on any charge slip intended for this Account, or any use of the Card by you or any

authorized user, is your agreement to comply with the terms of this Agreement.

**Governing Law.** This Agreement is governed by Delaware law, subject to applicable provisions of Federal law.

**No Waiver of Rights.** We can delay enforcing our rights under this Agreement without losing them. We can accept letters, checks, or other types of payment showing "payment in full" or using other language to indicate satisfaction of your debt, without waiving any of our rights to receive full payment under this Agreement. You must send any such communication to the "Billing Inquiries" address on your billing statement. Satisfaction of your debt for less than the full amount due requires a written agreement signed by one of our authorized employees.

**Telephone Monitoring.** As part of our continuing effort to maintain a high quality of service to our customers, telephone calls between our employees and our customers are periodically monitored, on a random basis, by our supervisory personnel. You understand this and give your consent to any such monitoring as to any telephone calls you may have with us.

**Notices; Addresses.** Notices to us shall be effective when received by us at the address indicated for receipt of payments on any billing statement mailed to you within the preceding 60 days. Notices to you, if mailed, shall be deemed given when mailed to you at the address given on the application or authorization form or to such other address you have given us by notice. Notice of a change of address shall be given in us at least 10 days prior to the change.

**Unauthorized Use, Loss or Theft of Card.** You may be liable for the unauthorized use of the Card. You will not be liable for unauthorized use that occurs after you notify us orally or in writing, of the loss, theft or possible unauthorized use. In any case, your liability will not exceed $50. You may telephone us at 1-800-756-2484 to report the loss, theft or possible unauthorized use of the Card.

**Information Sharing.** You agree that we may furnish detailed information about your Account and your use of the Card to others, including CITGO and its affiliates. (See Message to Cardmembers Concerning Privacy.)

**Credit Reports.** We may investigate your credit record from time to time in connection with your application and any resulting Account to update, renewal or extension of the Account. Upon your request we will advise you if we obtained a credit report and we will give you the credit bureau's name and address.

**Negative Credit Information.** You understand that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations under this Agreement. If you believe information related to this extension of the credit in your credit report is inaccurate, you may notify us of the same by writing to us at Associates National Bank (Delaware), P.O. Box 9095, Des Moines, IA 50368-9095.

**Severability.** If any clause of this Agreement is in conflict with applicable law, that clause will be considered modified to conform with that applicable law.

**ARBITRATION.** THIS ARBITRATION PROVISION LIMITS YOUR RIGHT TO LITIGATE CLAIMS IN COURT AND YOUR RIGHT TO A JURY TRIAL. YOU SHOULD READ THIS PROVISION CAREFULLY. Any claim, dispute, or controversy (a "Dispute") between you and us including without limitation those related to this Cardmember Agreement, your Account, goods or services purchased in whole or part by use of your Account, or those relating to the validity, enforceability, or scope of this arbitration provision shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the Commercial Arbitration Rules and Procedures of the American Arbitration Association (AAA). This arbitration provision also applies to any Disputes between you and any of our employees, agents, affiliate companies,

and any of their employees. This arbitration provision is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. §1-16. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations and shall honor all claims of privilege recognized at law. This arbitration provision is fully binding in the event a class action is filed in which you would be a class representative or member. You and we agree that arbitrations pursuant to this arbitration provision which involve you and us and/or us and any other person cannot be consolidated. You and we further agree that there shall be no class action arbitration pursuant to this arbitration provision. This arbitration provision shall survive the inactivation or termination of this Cardmember Agreement or your Account. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions are severable and enforceable to the fullest extent permitted by law. This arbitration provision supersedes any prior arbitration provision that there may be between you and us.

**Small Claims Exception:** If a Dispute arises between you and us and either you or we bring an action as a result in a small claims court or a similar court with a jurisdictional limit of $5,000 or less, the other party may NOT demand arbitration of that Dispute pursuant to this arbitration provision. If at any time during such an action, the case is transferred to a court with a jurisdictional limit in excess of $5,000, then you or we may demand arbitration of the entire Dispute, pursuant to this provision, at any time after that court assumes jurisdiction of the Dispute.

**To Start Arbitration:** Either you or we can start arbitration any time a Dispute arises between you and us. To start arbitration, you or we must contact the AAA at:

American Arbitration Association
13455 Noel Road
Two Galleria Tower, Suite 1750
Dallas, TX 75240-6636

For more information about the arbitration process, or to obtain a copy of the Commercial Arbitration Rules and Procedures, contact the AAA web site at http://www.adr.org.

**No Waiver:** You and we agree that bringing a lawsuit, counterclaim, or other action in court shall not be deemed a waiver of the right to demand arbitration of any Dispute brought by the other party. As an example, and not by way of limitation, if we file a lawsuit against you in court to collect a debt, and you file a counterclaim against us in that lawsuit, we have the right to demand that the entire Dispute, including our original lawsuit against you and your counterclaim against us, be arbitrated in accordance with this arbitration provision. You and we agree that bringing the lawsuit shall not operate as a waiver of our right to demand arbitration.

**Cost of Arbitration:** If you start arbitration, you agree to pay the initial filing fee and deposit required by the AAA. If we start arbitration, we will pay the filing fee and deposit. If you believe you are financially unable to pay such fees you may ask the AAA to defer or reduce such fees, pursuant to the Commercial Arbitration Rules and Procedures. If the AAA does not defer or reduce such fees so that you are able to afford them, we will, upon your written request, pay the fees, subject to any later allocation of the fees and expenses between you and us by the arbitrator. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration hearings. The Commercial Arbitration Rules and Procedures determine who will pay those fees.

**Location of Arbitration:** Any arbitration hearing will take place in the federal judicial district in which you live unless you and we both agree to another location.

**Enforcement of Arbitration:** After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

Citi Prod (Cox v. Hannah) 000007

Citi Prod (Cox v. Hannah) 000008

## YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### NOTIFY US IN CASE OF ERRORS OR QUESTIONS ABOUT YOUR BILL

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet of paper. Send to:

CITGO Credit Card Center
P.O. Box 9095
Des Moines, IA 50368-9095

Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
* Your name and account number.
* The dollar amount of the suspected error.
* Describe the error and explain, if you can, why you believe there is an error.
* If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

### YOUR RIGHTS AND OUR RESPONSIBILITIES AFTER WE RECEIVE YOUR WRITTEN NOTICE

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. We must also tell you the name of anyone we reported you to. And, we must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

### SPECIAL RULE FOR CREDIT CARD PURCHASES

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address, and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

### MESSAGE TO CARDMEMBERS CONCERNING PRIVACY

CITGO and Associates National Bank (Delaware) are committed to providing you with the best products and services available. To understand and serve our customers' needs, we share customer information (including credit information) with other members of The Associates family. In addition, Associates National Bank (Delaware) may also enter into arrangements with unrelated businesses to determine your eligibility for, and to deliver, offers that may be of interest or provide value to our customers.

You may elect to not allow us to share information with our affiliates or other businesses by "opting-out" of the information sharing. Your options are one or both of the following:

Option 1 - We will not share information about you with any non-affiliate party.

Option 2 - We will not share information about you with our affiliates.

We respect your privacy. If you'd prefer that we not share information, simply write to us at the address provided below. To ensure that your request can be processed, please include your name, address, telephone number, social security number and account number for any CITGO Credit Card account for which you wish the information to remain private. Specify one or both of the above options in your correspondence. Please allow us time to process your request.

CITGO Credit Card Center
P.O. Box 9095
Des Moines, IA 50368-9095

9/01




### Associates National Bank (Delaware)
### CARDMEMBER AGREEMENT

**Definitions.** In this Agreement "you" and "your" refer to Cardmember (or person authorized to use the Account); "we", "us" and "our" refer to Associates National Bank (Delaware) (hereinafter, the "Bank"); "Card" means the card or cards issued by us to you; "Account" means the credit account issued by us to you.

**Scope of Agreement.** This Agreement governs your Account and use of the Card we have issued to you. We will pay member merchants for goods and services you obtain by use of this Card and we may make other loans (cash advances) to you, including cash advances by means of convenience checks and automated teller machines (ATMs), on terms explained later in this Agreement.

**Credit Limit.** There will be a credit limit for purchases, and a credit limit for cash advances. You will be advised of the credit limits applicable to your Account. Credit limits may be increased or decreased by us at any time.

**Convenience Checks.** At the sole discretion of the Bank, from time to time you may be provided a supply of convenience checks for your use in borrowing under this Agreement. You may not use convenience checks to make payments on your Account.

**Payments.** When there is activity or a payment due, we will send you a statement on a billing date we select. Purchases (including amounts authorized to be advanced for insurance), cash advances, adjustments, and payments made since the last billing date will be shown on this statement. You will pay us the full balance owed or, if you wish, at least the Minimum Payment Due, by the Due Date shown on the monthly statement.

The Minimum Payment Due on your Account will be equal to the sum of (a) the greater of 5% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by amounts which exceed your credit limit and installment amounts due in full for mail and telephone order merchandise) or $10.00; and (b) the greater of amounts which exceed your credit limit or amounts which are past-due; and (c) installment amounts due in full for mail and telephone order merchandise.

Payments will be in U.S. Dollars and will be sent to our address shown on the statement. Payments received by 2:00 p.m. will be credited to your Account as of the date received. Payments received after 2:00 p.m. will be credited to your Account as of the next business day. You will pay for all purchases and cash advances made on the Account by you or an authorized user.

**Finance Charge.** You will pay a Daily Periodic Rate on the Daily Balance for purchases and the Daily Balance for cash advances on your Account each day. The total periodic Finance Charge for each billing cycle is the sum of the Daily Periodic Rate charges on the Daily Balance for purchases and the Daily Balance for cash advances for each day in the billing cycle. The Daily Periodic Rate used in determining the periodic Finance Charge will be a variable rate, which may change from month to month. The Daily Periodic Rate during each billing cycle will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal within the 90 calendar days immediately preceding, but not including, the first day of each billing cycle. The Margin for purchases and cash advances will be 13.99%. The initial daily rate on your Account, based on an Index of 6.75% as of September 27, 2001 will be a Daily Periodic Rate of 0.05682% (20.74% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable Daily Periodic Rate, which may increase the Minimum Payment Due on your Account. However, if you pay the full amount of the New Balance each month by the Due Date, no Finance Charge will be charged on new purchases. For any cash advance obtained through an ATM or by means of a convenience check, or for any

Citi Prod (Cox v. Hannah) 000009

**Daily Balance Calculation.** To get the Daily Balance for purchases and cash advances for each day, we take the beginning balance of purchases and cash advances on your Account each day, including any accrued but unpaid Finance Charges and other fees through the previous day, add any new purchases and/or cash advances, then subtract any payments or credits. This gives us the Daily Balance for purchases and the Daily Balance for cash advances. In the Daily Balance for purchases, cash advances (credit or credit adjustments), or debit adjustments, and subtract any payments, credits or credit adjustments. Purchases and cash advances are included in the Daily Balance as of the later of the date of the transaction or the first day of the billing cycle in which the transaction is posted to your Account. However, if you pay the New Balance shown on your previous billing statement in full on or before the Due Date shown on that billing statement, new purchases will be excluded from the Daily Balance for purchases.

**Application of Payments.** Each payment you send us will be applied to your Account in a manner we determine in our discretion. We reserve the right to apply payments to balances subject to lower Annual Percentage Rates before balances subject to higher Annual Percentage Rates.

**Fees.** You agree to pay us interest the following fees and charges:

**Use of the Card.** We are not responsible if anyone refuses to honor this Card or any convenience check or for any failure of an ATM to process a cash advance which would cause your credit limit to be exceeded. Without limiting the Account balance the right not to pay the remaining amount due on such merchandise or services. This right does not, however, apply to merchandise or services obtained with convenience checks or with money from a cash advance. See the Section of this Agreement entitled "Special Rule for Credit Card Purchases" for additional rights you have with respect to merchandise or services purchased with this Card. We are not responsible for merchandise or services purchased with the Card.

**Modifications.** Subject to applicable law, we may change the terms of this Agreement from time to time. We have the right to apply the new terms to the outstanding balance of your Account as of the effective date of the change if we make a change, we will give you notice as required by applicable law.

**Expiration; Renewal and Termination.** Cards are issued with an expiration date. We have the right to renew your Account. Without limiting our rights provided in this Agreement, we have the right to revoke the privileges afforded to any or all Cards, cancel the Cards, and terminate this Agreement as to future purchases and cash advances at any time for any reason. You agree to surrender the Card to us or our designee upon demand.

**Assignment.** Your rights under this Agreement cannot be transferred by operation of law or otherwise, but your obligations shall be binding upon your estate or personal representatives. We may assign this Agreement or any of our rights under it without your consent.

**Signature.** You agree to sign (and, if applicable, have authorized users sign in the space provided for the signature of authorized users) on the Card, on any convenience check or signature on the signature of authorized users on the Card, on any convenience check

U.S.C. §1-16. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations and shall honor all claims of privilege recognized at law. This arbitration provision is fully binding in the event a class action is filed in which you would be a class representative or member. You and we agree that arbitrations pursuant to this arbitration provision which involve you and us and/or us and any other person cannot be consolidated. You and we further agree that there shall be no class action arbitration pursuant to this arbitration provision. This arbitration provision shall survive the inactivation or termination of this Cardmember Agreement or your Account. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions are severable and enforceable to the fullest extent permitted by law. This arbitration provision supersedes any prior arbitration provision that there may be between you and us.

**Small Claims Exception:** If a Dispute arises between you and us and either you or we bring an action as a result in a small claims court or a similar court with a jurisdictional limit of $5,000 or less, the other party may NOT demand arbitration of that Dispute pursuant to this arbitration provision. If at any time during such an action, the case is transferred to a court with a jurisdictional limit in excess of $5,000, then you or we may demand arbitration of the entire Dispute, pursuant to this provision, at any time after that court assumes jurisdiction of the Dispute.

**To Start Arbitration:** Either you or we can start arbitration any time a Dispute arises between you and us. To start arbitration, you or we must contact the AAA at:

American Arbitration Association
13455 Noel Road
Two Galleria Tower, Suite 1750
Dallas, TX 75240-6636

For more information about the arbitration process, or to obtain a copy of the Commercial Arbitration Rules and Procedures, contact the AAA web site at http://www.adr.org.

**No Waiver:** You and we agree that bringing a lawsuit, counterclaim, or other action in court shall not be deemed a waiver of the right to demand arbitration of any Dispute brought by the other party. As an example, and not by way of limitation, if we file a lawsuit against you in court to collect a debt, and you file a counterclaim against us in that lawsuit, we have the right to demand that the entire Dispute, including our original lawsuit against you and your counterclaim against us, be arbitrated in accordance with this arbitration provision. You and we agree that bringing the lawsuit shall not operate as a waiver of our right to demand arbitration.

**Cost of Arbitration:** If you start arbitration, you agree to pay the initial filing fee and deposit required by the AAA. If we start arbitration, we will pay the filing fee and deposit. If you believe you are financially unable to pay such fees you may ask the AAA to defer or reduce such fees, pursuant to the Commercial Arbitration Rules and Procedures. If the AAA does not defer or reduce such fees so that you are able to afford them, we will, upon your written request, pay the fees, subject to any later allocation of the fees and expenses between you and us by the arbitrator. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration hearings. The Commercial Arbitration Rules and Procedures determine who will pay those fees.

**Location of Arbitration:** Any arbitration hearing will take place in the federal judicial district in which you live unless you and we both agree to another location.

**Enforcement of Arbitration:** After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

### YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### NOTIFY US IN CASE OF ERRORS OR
### QUESTIONS ABOUT YOUR BILL

If you think your bill is wrong, or if you need more information about a transaction on your bill, write to us on a separate sheet of paper. Send to:

CITGO Credit Card Center
P.O. Box 9095
Des Moines, IA 50368-9095

Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
• Your name and account number.
• The dollar amount of the suspected error.
• Describe the error and explain, if you can, why you believe there is an error.
• If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

### YOUR RIGHTS AND OUR RESPONSIBILITIES
### AFTER WE RECEIVE YOUR WRITTEN NOTICE

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charge, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. We must also tell you the name of anyone we reported you to. And, we must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

### SPECIAL RULE FOR CREDIT CARD PURCHASES

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Citi Prod (Cox v. Hannah) 000012

9/01

   Associates National Bank (Delaware)
                       **CARDMEMBER AGREEMENT**   

**Definitions.** In this Agreement "you" and "your" refer to Cardmember (or person authorized to use the Account); "we", "us" and "our" refer to Associates National Bank (Delaware) (hereinafter, the "Bank"); "Card" means the card or cards issued by us to you; "Account" means the credit account issued by us to you.

**Scope of Agreement.** This Agreement governs your Account and use of the Card we have issued to you. We will pay member merchants for goods and services you obtain by use of this Card and we may make other loans (cash advances) to you, including cash advances by means of convenience checks and automated teller machines (ATMs), on terms explained later in this Agreement.

**Credit Limit.** There will be a credit limit for purchases, and a credit limit for cash advances. You will be advised of the credit limits applicable to your Account. Credit limits may be increased or decreased by us at any time.

**Convenience Checks.** At the sole discretion of the Bank, from time to time you may be provided a supply of convenience checks for your use in borrowing under this Agreement. You may not use convenience checks to make payments on your Account.

**Payments.** When there is activity or a payment due, we will send you a statement on a billing date we select. Purchases (including amounts authorized to be advanced for insurance), cash advances, adjustments, and payments made since the last billing date will be shown on this statement. You will pay us the full balance owed or, if you wish, at least the Minimum Payment Due, by the Due Date shown on the monthly statement.

The Minimum Payment Due on your Account will be equal to the sum of (a) the greater of 5% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by amounts which exceed your credit limit and installment amounts due in full for mail and telephone order merchandise) or $10.00; and (b) the greater of amounts which exceed your credit limit or amounts which are past-due; and (c) installment amounts due in full for mail and telephone order merchandise.

Payments will be in U.S. Dollars and will be sent to our address shown on the statement. Payments received by 2:00 p.m. will be credited to your Account as of the date received. Payments received after 2:00 p.m. will be credited to your Account as of the next business day. You will pay for all purchases and cash advances made on the Account by you or an authorized user.

**Finance Charge.** You will pay a Daily Periodic Rate on the Daily Balance for purchases and the Daily Balance for cash advances on your Account each day. The total periodic Finance Charge for each billing cycle is the sum of the Daily Periodic Rate charges on the Daily Balance for purchases and the Daily Balance for cash advances for each day in the billing cycle. The Daily Periodic Rate used in determining the periodic Finance Charge will be a variable rate, which may change from month to month. The Daily Periodic Rate during each billing cycle will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of *The Wall Street Journal* within the 90 calendar days immediately preceding, but not including, the first day of each billing cycle. The Margin for purchases and cash advances will be 13.99%. The initial daily rate on your Account, based on an Index of 6.75% as of September 27, 2001 will be a Daily Periodic Rate of 0.056821% (20.74% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable Daily Periodic Rate, which may increase the Minimum Payment Due on your Account. However, if you pay the full amount of the New Balance each month by the Due Date, no Finance Charge will be charged on new purchases. For any cash advance obtained through an ATM or by means of a convenience check, or for any

Citi Prod (Cox v. Hannah) 000013

other transaction that we consider a cash advance under this Agreement, you will pay a FINANCE CHARGE equal to the greater of $10.00 or 5% of the amount of the cash advance. You will pay a Minimum Periodic FINANCE CHARGE of $1.50 for each billing cycle during which any Finance Charge accrues on your Account. In the event that the application of the Daily Periodic Rate, Your Account will have a different rate of Finance Charge than if it closed because of default in 30 days or as provided in the Margin for purchases and cash advances will increase to 31.9796.

You agree to pay as a FINANCE CHARGE a fee of $15 for the maximum amount permitted by applicable law, to make payments other than by mailing them to the payment address shown on your billing statement. In the event you incur additional payment services, we will advise you of the fee associated with and your agreement to pay the associated fee.

**Daily Balance Calculation.** To get the Daily Balance for purchases and cash advances for each day, we take the beginning balance of purchases and cash advances on your Account each day, including any accrued but unpaid Finance Charges and other fees through the previous day, subtract any payments or credits and add any new advances for cash advances. If you sent us will be applied to your Account balances or cash advances on your Account.

**Application of Payments.** Each payment you send us will be applied to your Account in a manner we determine in our discretion. We reserve the right to apply payments to balances with lower Annual Percentage Rates, including but not limited to balances subject to higher Annual Percentage Rates.

**Fees.** You agree to pay as a charge for the following fees and charges:

You agree to pay a fee of $3 each time you fail to pay the Minimum Payment Due by the Due Date when your Account Balance is between $10 and $24.99, you will pay a late fee of $9 each time you fail to pay at least the Minimum Payment Due by the Due Date when your Account Balance is between $25.00 and $99.99; you will pay a late fee of $11 each time you fail to pay at least the Minimum Payment Due by the Due Date when your Account Balance is between $100.00 and $250.00.

If your Card is a Celebrity card you will pay a $25 annual membership fee.

You will pay a fee of $20 for each returned payment check or other item intended for payment and a fee of $20 for each cash advance as provided in this Agreement.

You agree to pay a fee not to exceed the greater of $5 per copy for the maximum amount permitted by applicable law, for each copy you request of your billing statements, checks, sales slips and similar items or documents. In the event you request copies, we will advise you of the fee associated with your request, and your use of the copy services thereafter constitutes your agreement to pay the associated fee.

**Default.** You will be in default if you fail to make any payment when due, exceed your credit limit, die, become the subject of bankruptcy or insolvency proceedings, do not comply with any of the terms governing your Account, or if this Agreement...

feel insecure about your Account. If you default, we may, at our option, declare all amounts you owe to be immediately due and payable. Also, we may revoke the privileges attached to any of all Cards, cancel the Cards and terminate this Agreement as to future purchases and cash advances.

You agree to surrender all Cards to us, or our designee upon demand. If you default, we, at our option, may refuse to pay any of your outstanding checks. You acknowledge that any amount of such checks under this Agreement. If, in default, we present the terms of this Agreement, if you default and we report your Account for collection to a collection agency or to an attorney who is not our salaried employee, you agree that, to the extent permitted by applicable law, we may charge you for court costs and reasonable attorney's fees. collection costs, including without limitation, court costs and reasonable attorney's fees.

**Billing Statement Disclosures.** We will send you monthly statements we maintain a high quality of billing service on your Account. To review any alleged errors within the time period prescribed by law. Your rights to dispute billing errors are set forth under the paragraph entitled "Your Billing Rights." Even though an amount is in dispute, you must pay at least the required Minimum Payment Due.

**Use of the Card.** We are not responsible if anyone refuses to honor this Card or any convenience check or for any failure of an ATM to provide a cash advance. We require you to use the Card only on or for the loss, theft or possible unauthorized use. In any case, your liability will not exceed $50. You may telephone us at 1-800-756-2464 to report the loss, theft, or possible unauthorized use of the Card.

**Exceeding Credit Limit.** You will not use or permit use of any Card or convenience check for any purchase or cash advance which would cause your credit limit to be exceeded. Without limiting any of our rights under this Agreement, the Account balance exceeds the credit limit at any time, you will immediately pay us the excess upon demand.

**Modifications.** Subject to applicable law, we may change the terms of this Agreement from time to time. We have the right to apply the new terms to the outstanding balance of your Account as of the effective date of the change. If we make a change, we will give you notice as required by applicable law.

**Expiration; Renewal and Termination.** Cards are issued with an expiration date. We have the right not to renew your Account. Without limiting our rights provided in this Agreement, we have the right to revoke the privileges attached to any of all Cards, and terminate this Agreement as to future purchases and cash advances at any time for any reason. You agree to surrender the Card to us or our designee upon demand.

**Obligation for Repayment.** Even though the Card or your right to use convenience checks or cash advances on your Account may be suspended, all balances on your Account incurred before or after revocation or termination are paid in full.

**Assignment.** Your rights under this Agreement cannot be transferred by operation of law or otherwise, but your obligations shall be binding upon your estate or personal representatives. We may assign this Agreement or any of our rights under it without notice or your consent.

**Signature.** You agree to sign (and, if appropriate, have authorized users sign in the space provided) the Card before the Card is used. Your signature or the signature of authorized users on the Card, on any convenience check

or on any charge slip intended for this Account, or any use of the Card by you or any authorized user is your agreement to comply with the terms of this Agreement.

**Governing Law.** This Agreement is governed by Delaware law, subject to applicable provisions of Federal law.

**No Waiver of Rights.** We can delay enforcing our rights under this Agreement without losing them. We can accept letters, checks, or money orders marked "payment in full" or using other language to indicate satisfaction of your debt, without waiving any of our rights to recover full payment under this Agreement. You must send any such communication to the "Billing Inquiries" address on your billing statement signed by one of our authorized employees.

**Telephone Monitoring.** As part of our continuing effort to maintain a high quality of service for our employees and customers, and our customer service and collection telephone calls are periodically monitored, on a random basis, by our supervisory personnel. You understand that you give your consent to any such monitoring by telephone calls you make with us.

**Notices; Addresses.** Notices to us shall be effective when received by us at the address indicated for receipt of payments on any billing statement mailed to your statement address to you. A notice, shall be deemed given when mailed to you at the address given on the application or authorization form or to such other address you have given us by notice. Notice of a change of address shall be given to us at least 10 days prior to the change.

**Unauthorized Use, Loss or Theft of Card.** You may be liable for the unauthorized use of the Card. You will not be liable for unauthorized use that occurs after you notify us, orally or in writing, at P.O. Box 6095, The Lakes, NV 89163-6095.

**Credit Reports.** We may investigate your credit record from time to time in connection with your application and any renewal, extension or update. Upon your request we will advise you whether we obtained a credit report and we will give you the name and address of the credit bureau.

**Negative Credit Information.** You understand that a negative credit report reflecting on your credit record may be submitted to a credit reporting agency if you fail to fulfill the terms of your credit obligations under this Agreement. You authorize us to disclose to others our credit experience with you. This is an extension of the credit in your credit report is inaccurate, you may notify us of this at the address listed on your billing statement or Associates National Bank (Delaware), P.O. Box 9095, Des Moines, IA 50368-9095.

**Severability.** If any clause of this Agreement is in conflict with applicable law, that clause will be considered modified to conform with that applicable law.

**ARBITRATION.** THIS ARBITRATION PROVISION LIMITS YOUR RIGHT TO LITIGATE CLAIMS IN COURT AND YOUR RIGHT TO A JURY TRIAL. YOU SHOULD READ THIS PROVISION CAREFULLY. Any claim, dispute or controversy (a "Claim") arising out of this Agreement or the relationships resulting from this Agreement... Account, or those relating to the validity, enforceability, or scope of this arbitration provision or those relating to any prior agreement... agreement, goods or services purchased in whole or part by use of your Account, or those relating to the validity... shall, upon the election of you or us, be resolved by binding arbitration pursuant to this arbitration provision and the Commercial Arbitration Rules and Procedures of the American Arbitration Association (AAA). This arbitration provision also applies to any Dispute between you and any of our employees... and any of our employees... involving interstate commerce and shall be governed by the Federal Arbitration Act, 9

U.S.C. §1-16. The arbitrator shall apply applicable substantive law consistent with the Federal Arbitration Act and applicable statutes of limitations and shall honor all claims of privilege recognized at law. This arbitration provision is fully binding in the event a class action is filed in which you would be a class representative or member. You and we agree that arbitrations pursuant to this arbitration provision which involve you and us and/or us and any other person cannot be consolidated. You and we further agree that there shall be no class action arbitration pursuant to this arbitration provision. This arbitration provision shall survive the inactivation or termination of this Cardmember Agreement or your Account. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions are severable and enforceable to the fullest extent permitted by law. This arbitration provision supersedes any prior arbitration provision that there may be between you and us.

**Small Claims Exception:** If a Dispute arises between you and us and either you or we bring an action as a result in a small claims court or a similar court with a jurisdictional limit of $5,000 or less, the other party may NOT demand arbitration of that Dispute pursuant to this arbitration provision. If at any time during such an action, the case is transferred to a court with a jurisdictional limit in excess of $5,000, then you or we may demand arbitration of the entire Dispute, pursuant to this provision, at any time after that court assumes jurisdiction of the Dispute.

**To Start Arbitration:** Either you or we can start arbitration any time a Dispute arises between you and us. To start arbitration, you or we must contact the AAA at:

American Arbitration Association
13455 Noel Road
Two Galleria Tower, Suite 1750
Dallas, TX 75240-6636

For more information about the arbitration process, or to obtain a copy of the Commercial Arbitration Rules and Procedures, contact the AAA web site at http://www.adr.org.

**No Waiver:** You and we agree that bringing a lawsuit, counterclaim, or other action in court shall not be deemed a waiver of the right to demand arbitration of any Dispute brought by the other party. As an example, and not by way of limitation, if we file a lawsuit against you in court to collect a debt, and you file a counterclaim against us in that lawsuit, and we have the right to demand that the entire Dispute, including our original lawsuit against you and your counterclaim against us, be arbitrated in accordance with this arbitration provision. You and we agree that bringing the lawsuit shall not operate as a waiver of our right to demand arbitration.

**Cost of Arbitration:** If you start arbitration, you agree to pay the initial filing fee and deposit required by the AAA. If we start arbitration, we will pay the filing fee and deposit. If you believe you are financially unable to pay such fees you may ask the AAA to defer or reduce such fees, pursuant to the Commercial Arbitration Rules and Procedures. If the AAA does not defer or reduce such fees so that you are able to afford them, we will, upon your written request, pay the fees, subject to any later allocation of the fees and expenses between you and us by the arbitrator. There may be other costs during the arbitration, such as attorney's fees, expenses of travel to the arbitration, and the costs of the arbitration hearings. The Commercial Arbitration Rules and Procedures determine who will pay those fees.

**Location of Arbitration:** Any arbitration hearing will take place in the federal judicial district in which you live unless you and we both agree to another location.

**Enforcement of Arbitration:** After the arbitrator has made a decision, either you or we may take any legal action, including filing a lawsuit, to enforce the arbitrator's decision in any federal or state court that has jurisdiction.

## YOUR BILLING RIGHTS
### KEEP THIS NOTICE FOR FUTURE USE

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

### NOTIFY US IN CASE OF ERRORS OR
### QUESTIONS ABOUT YOUR BILL

If you think your bill is wrong, or if you need more information about a transaction on your bill, write us on a separate sheet of paper. Send to:

CITGO Credit Card Center
P.O. Box 9095
Des Moines, IA 50368-9095

Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first bill on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
* Your name and account number.
* The dollar amount of the suspected error.
* Describe the error and explain, if you can, why you believe there is an error.
* If you need more information, describe the item you are not sure about.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment, your letter must reach us three business days before the automatic payment is scheduled to occur.

### YOUR RIGHTS AND OUR RESPONSIBILITIES
### AFTER WE RECEIVE YOUR WRITTEN NOTICE

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe the bill was correct. After we receive your letter, we cannot try to collect any amount you question, or report you as delinquent. We can continue to bill you for the amount you question, including finance charge, and we can apply any unpaid amount against your credit limit. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your bill that are not in question.

If we find that we made a mistake on your bill, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date that it is due. If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. We must also tell you the name of anyone we reported you to. And, we must tell anyone we report you to that the matter has been settled between us when it finally is. If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your bill was correct.

### SPECIAL RULE FOR CREDIT CARD PURCHASES

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

(a) You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current mailing address; and

(b) The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Citi Prod (Cox v. Hannah) 000016

## NOTICE OF CHANGE IN TERMS

Effective as of the first day of your first billing period that begins on or after 30 days from the Closing Date identified on the enclosed billing statement ("Effective Date"), we are changing the terms of your account by amending and restating your existing Cardmember Agreement, including substituting or adding the provisions below. The terms and provisions contained in the attached Cardmember Agreement replace the terms and provisions of your existing Cardmember Agreement. We encourage you to read this notice and the attached Cardmember Agreement and save it for future reference.

**Margin Used to Calculate Periodic Finance Charges:** The Margin for purchases and cash advances will be 14.99%. If your account is closed because of default or becomes 60 days or more past due, the Margin for purchases and cash advances will increase to 18.99%. Please read the "Periodic Finance Charges" paragraph in the attached Cardmember Agreement.

**Late Fee:** We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $20 if your account balance is $200.00 or more.

**Minimum Amount Due:** Each month you must pay a minimum amount that is equal to the sum of the following amounts:

• The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

• The greater of amounts which exceed your credit limits or amounts which are past due; and

• installment amounts due for mail and telephone order merchandise.

**Returned Payment Fee:** We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:** We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Arbitration:** We are substituting a new arbitration provision which will replace the arbitration provision contained in your existing Cardmember Agreement. Please read the new arbitration provision carefully.

You have the right to reject the changes described in this Notice of Change in Terms. If you choose to reject the changes, you must notify us by writing to us at CITGO Credit Card Center, P.O. Box 9030, Des Moines, Iowa 50368-9030, within 25 days after the Effective Date. If you choose to reject the changes, your account will be closed and you may pay off the balance of your account under the existing terms. If you choose to reject the changes and your account has an annual fee, you will receive a pro rata refund of the fee as a credit to your account. If you use your account on or after the Effective Date, you agree to the changes even if you sent us notice rejecting the changes.

The above is a summary of certain of the changes being made to your account. For more detailed information, please review the attached Cardmember Agreement carefully and keep it with your important records.

Citi Prod (Cox v. Hannah) 000017

## Associates National Bank (Delaware)

## CARDMEMBER AGREEMENT

This Agreement is your Associates National Bank (Delaware) Cardmember Agreement. Please read and keep the Agreement for your records. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of your account.

To simplify this Agreement for you, the following definitions will apply. The words you, your, and yours mean all persons responsible for complying with this Agreement, including the person who applied to open the account and the person to whom we address billing statements. The word card means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this Agreement. The words we, us, and our mean Associates National Bank (Delaware). The words authorized user means any person to whom you give permission to use your account. The words convenience checks mean one or more checks that we may provide for you to obtain a cash advance.

**Using Your Account and Your Credit Line:**
The card must be signed to be used. Whether you sign the card or not, you are fully responsible for complying with all the terms of this Agreement, including the obligation to pay us for all balances due on your account as specified in this Agreement. Your card must only be used for lawful transactions.

Your account will have separate credit lines for purchases and cash advances. Your initial purchase and cash advance credit limits appear on the card carrier. At our discretion and at any time, we may change your purchase or cash advance credit limit. We will notify you of any new limit amount either by sending you a notice or through your billing statement. A change may take effect before you receive notification from us. You may request a change to your purchase or cash advance credit limit by contacting Customer Service by telephone or mail.

The credit line for purchases is available to buy goods or services wherever the card is honored. Your cash advance line is available for cash through any bank or automated teller machine that accepts the card or by using convenience checks. The amount charged on your account, including purchases, cash advances, finance charges, fees, or other charges, must always remain below your applicable credit limit. However, if you exceed your purchase or cash advance credit limit you must still pay us. We may approve transactions that cause the balance to exceed your purchase or cash advance credit limit without waiving any of our rights under this Agreement.

**Additional Cards:**
You may request additional cards on your account for yourself or others and you may permit an authorized user to have access to the card or account number. However, if you do, you must pay us for all charges made by those persons, including charges for which you may not have intended to be responsible. You must notify us to revoke an authorized user's permission to use your account. If you agree, we may close the account and issue a new card or cards with a different account number. You are responsible for the use of each card issued on your account according to the terms of this Agreement.

**Membership Fee:**
If your card is a CITGO CELEBRITY card you will pay a $25 annual fee. The fee is added to the purchase balance and is non-refundable unless you notify us to cancel your account within 30 days from the mailing or delivery date of the billing statement on which the fee is billed.

**Billing:**
Your billing statement shows the balance, any finance charges, fees, the minimum payment, and the payment due date. It also shows your current purchase and cash advance credit limits; an itemized list of current charges, debits, payments and credits; a summary of the purchase and cash advance activity, including the finance charges; a rate summary; and other important information. If we deem your account uncollectible or if we institute delinquency collection proceedings by sending it to an outside collection agency or attorney for collection, we may, in our sole discretion, stop sending you billing statements.

You must notify us of a change in your address by contacting Customer Service by telephone or mail. We will mail or deliver the billing statement to only one address.

**How We Determine the New Balance:**
The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine this New Balance, we begin with the outstanding balance on your account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any purchases, cash advances and other debits and subtract any credits and payments credited as of that billing period. We then add the appropriate finance charges and fees and make other applicable adjustments.

**Periodic Finance Charges:**
You will pay a daily periodic rate on the daily balance for purchases and the daily balance for cash advances. The total periodic finance charge for each billing period is the sum of the daily periodic rate charges on the daily balance for purchases and the daily balance for cash advances for each day in the billing period. The daily periodic rate used in determining the periodic finance charge will be a variable rate, which may change from month to month. The daily periodic rate during each billing period will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal within the 90 calendar days immediately preceding, but not including, the first day of each billing period. The Margin for purchases and cash advances will be 14.99%. The initial daily periodic rate on your account, based on an Index of 9.0% as of December 20, 2001, will be a daily periodic rate of 0.05750% (20.99% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable daily periodic rate, which may increase the minimum payment due on your account. If you pay the full amount of the New Balance each month by the due date, no periodic finance charges will be assessed on new purchases. Your account will have a different rate of periodic finance charge after it is closed because of default or is 60 days or more past due. In that event, the Margin for purchases and cash advances will increase to 18.99%.

**Daily Balance Calculation:**
To get the daily balance for purchases and cash advances for each day, we take the beginning balance of purchases and cash advances on your account each day, including any accrued but unpaid finance charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) (to the daily balance for purchases), cash advances (to the daily balance for cash advances), or debit adjustments, and subtract any payments, credits or credit adjustments. Purchases and cash advances are included in the daily balance as of the later of the date of the transaction or the first day of the billing period in which the purchase or cash advance is entered on your account. However, if you pay the New Balance shown on your previous billing statement in full on or before the due date shown on that billing statement, new purchases will not be included in the daily balance for purchases.

**Minimum Finance Charge:**
You will pay a minimum periodic FINANCE CHARGE of $1.50 for each billing period during which any finance charge accrues on your account as a result of application of the daily periodic rate. We add the amount to the purchase balance if that balance is being assessed a finance charge. We add the amount to the cash advance balance if that balance is being assessed a finance charge. If a finance charge is being assessed on purchases and cash advances, we may add the minimum finance charge to either balance at our discretion.

**Transaction Fee for Cash Advances:**
You have obtained a cash advance if you obtain funds from an automated teller machine (ATM); through use of a convenience check or through a financial institution; or engage in another similar transaction. For each cash advance, we add an additional FINANCE CHARGE of 5.0% of the amount of the advance, but not less than $5. This fee will be added to the cash advance balance. (The amount of the cash advance may also include a surcharge that the ATM owner imposes.) The cash advance transaction fee may cause the annual percentage rate on the billing statement on which the cash advance first appears to exceed the corresponding annual percentage rate.

**Credit Balance:**
You may not maintain a credit balance on your account in excess of any assigned credit limit. We will return to you any credit amount over $1 if the amount has been on your account longer than three months. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges posted to your account.

**Minimum Amount Due:**
Each month you must pay a minimum amount that is equal to the sum of the following amounts:

- The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

- The greater of amounts which exceed your credit limits or amounts which are past due; and

- Installment amounts due for mail and telephone order merchandise.

**Payments:**
You must pay at least the minimum amount by the payment due date, and you may pay more at any time without a penalty. The New Balance shown on your billing statement may include amounts subject to different periodic rates. We will allocate your payments and credits to pay off balances at low periodic rates before paying off balances at higher periodic rates. The sooner you pay the New Balance, the less you will pay in finance charges.

Instructions for making payments are on your billing statement. Do not send cash payments. We can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. You agree to pay us in U.S. dollars drawn on funds on deposit in the United States using a payment check, similar instrument, or automatic debit that will be processed and honored by your bank. Payments received by 2:00 p.m. will be credited to your account as of the date received. Payments received after 2:00 p.m. will be credited to your account as of the next business day.

(h) 000018

**Late Fee:**

We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $20 if your account balance is $200.00 or more.

**Returned Payment Fee:**

We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:**

We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Payment Services Fee:**

We will add a $5 fee (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for payment services we may offer which allow you, at your option, to make payments other than by mailing them to the payment address shown on your billing statement. In the event you request optional payment services, we will advise you of the fee associated with your request, and your use of the optional payment services thereafter constitutes your agreement to pay the associated fee. This fee does not apply to payments made through Account Online or other electronic bill payment options.

**Photocopy Fee:**

We will add a $5 fee per copy for the maximum amount permitted by applicable law, whichever is less) to the purchase balance for each copy you request of your billing statements, checks, sales slips and/or memoranda of transactions, other than copies requested for purposes of investigating a billing error. In the event you request copies, we will advise you of the fee associated with your request, and your use of the copy services thereafter constitutes your agreement to pay the associated fee.

**Convenience Checks:**

Convenience checks may be used to purchase goods and services or to obtain cash up to the amount of your cash advance credit limit. We will treat convenience checks as a cash advance and charge them against your cash advance line. Each convenience check must be in the form we have issued and must be used according to any instructions we give you. Convenience checks may be used only by the person whose name is printed on them. Convenience checks may not be used to pay any amount owed to us under this Agreement or any other Citibank credit card agreement. We will not certify any convenience checks, nor will we return paid convenience checks.

**Lost or Stolen Cards, Account Numbers, or Convenience Checks:**
If any card, account number, or check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling 1-800-756-2484 or Customer Service at the telephone number shown on your billing statement. We may require you to provide certain information in writing to help us find out what happened, and to comply with such procedures as we may require in connection with our investigation. You may be liable for

unauthorized use of the account, but not for more than $50. You won't be liable for unauthorized purchases or cash advances made after we've been notified of the loss or the theft; however, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

**Default:**

You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make a payment to any other creditor when due, file for bankruptcy, exceed any credit limit, pay by a check or similar instrument that is not honored or that we must return because it cannot be processed, or pay by automatic debit that is returned unpaid. If you default, we may close your account and demand immediate payment of the full balance.

**Preauthorized Charges:**

If you default, if the card is lost or stolen, or we change your account or account number for any reason, we may suspend automatic charges on that account to third party vendors for insurance premiums or other goods or services. If preauthorized charges are suspended, you must contact the third party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

**Collection Costs:**

If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

---

**ARBITRATION:**

PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

**Agreement to Arbitrate:**

Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**Claims Covered:**

• What Claims are subject to arbitration? All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are

subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

• Whose Claims are subject to arbitration? Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

• What time frame applies to Claims subject to arbitration? Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

• Broadest interpretation. Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

• What about Claims filed in Small Claims Court? Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

**How Arbitration Works:**

• How does a party initiate arbitration? The party filing an arbitration must choose one of the following three arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association, JAMS, and National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605        Web site:     www.adr.org

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610              Web site:     www.jamsadr.com

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405         Web site:     www.arbitration-forum.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

- **What procedures and law are applicable in arbitration?** A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

- **Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

- **Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

- **When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

**Survival and Severability of Terms:**

- This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, and the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. Any different agreement regarding arbitration must be agreed to in writing.

---

**Credit Reporting:**

We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional cards on your account for others, you understand that we may report account information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit limit increase). If you wish to know the names of the agencies we have contacted, write us at the address listed on the billing statement. We will try to notify you by telephone or by mail of any legal process served on us in order to give you an opportunity to object to it, unless the law prohibits the notice.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address shown on your billing statement. We will promptly investigate the matter and if our investigation shows you are right, we will contact each credit reporting agency to whom we reported and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone and instruct you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

**Telephone Monitoring and Recording:**

From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

**Closing Your Account:**

You may close your account at any time by notifying us in writing. However, you remain responsible to pay the balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time for any reason without prior notice. We may also reissue a different card, account number, or different checks at any time. You must return the card or the checks to us upon request.

**Refusal of the Card:**

We are not responsible if a transaction on your account is not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity.

**Changing this Agreement:**
We can change this Agreement, including all fees and the annual percentage rate, at any time. We can also add or delete provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the balance, either at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

**Enforcing this Agreement:**
We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Assignment:**
We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

**Applicable Law:**
The terms and enforcement of this Agreement shall be governed by federal law and the law of Delaware, where we are located.

**For Further Information:**
Call us at the telephone number shown on your billing statement. You can also call toll-free at 1-800-756-2484.

Steven R. Gades
President
Associates National Bank (Delaware)

©2001 Associates National Bank (Delaware)

# What To Do If There's An Error In Your Bill.

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address provided in the Billing Rights Summary portion on the back of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

• Your name and account number.

• The dollar amount of the suspected error.

• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

• Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

# Special Rule for Credit Card Purchases.
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

• You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and

• The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Citi Prod (Cox v. Hannah) 000021



## NOTICE OF CHANGE IN TERMS

Effective as of the first day of your first billing period that begins on or after 30 days from the Closing Date identified on the enclosed billing statement ("Effective Date"), we are changing the terms of your account by amending and restating your existing Cardmember Agreement, including substituting or adding the provisions below. The terms and provisions contained in the attached Cardmember Agreement replace the terms and provisions of your existing Cardmember Agreement. We encourage you to read this notice and the attached Cardmember Agreement and save it for future reference.

**Margin Used to Calculate Periodic Finance Charges:** The Margin for purchases and cash advances will be 14.99%. If your account is closed because of default or becomes 60 days or more past due, the Margin for purchases and cash advances will increase to 18.99%. Please read the "Periodic Finance Charges" paragraph in the attached Cardmember Agreement.

**Late Fee:** We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $20 if your account balance is $200.00 or more.

**Minimum Amount Due:** Each month you must pay a minimum amount that is equal to the sum of the following amounts:

* The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

* The greater of amounts which exceed your credit limits or amounts which are past due; and

* Installment amounts due for mail and telephone order merchandise.

**Returned Payment Fee:** We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:** We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Arbitration:** We are substituting a new arbitration provision which will replace the arbitration provision contained in your existing Cardmember Agreement. Please read the new arbitration provision carefully.

You have the right to reject the changes described in this Notice of Change in Terms. If you choose to reject the changes, you must notify us by writing to us at CITGO Credit Card Center, P.O. Box 9090, Des Moines, Iowa 50368-9090, within 25 days after the Effective Date. If you choose to reject the changes, your account will be closed and you may pay off the balance of your account under the existing terms. If you choose to reject the changes and your account has an annual fee, you will receive a pro rata refund of the fee as a credit to your account. If you use your account on or after the Effective Date, you agree to the changes even if you sent us notice rejecting the changes.

The above is a summary of certain of the changes being made to your account. For more detailed information, please review the attached Cardmember Agreement carefully and keep it with your important records.

Citi Prod (Cox v. Hannah) 000022

## Associates National Bank (Delaware)

### CARDMEMBER AGREEMENT

This Agreement is your Associates National Bank (Delaware) Cardmember Agreement. Please read and keep this Agreement for your records. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of your account.

To simplify this Agreement for you, the following definitions will apply. The words you, your, and yours mean all persons responsible for complying with this Agreement, including the person who applied to open the account and the person to whom we address billing statements. The word card means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this Agreement. The words we, us, and our mean Associates National Bank (Delaware). The words authorized user means any person to whom you give permission to use your account. The words convenience checks mean one or more checks that we may provide for you to obtain a cash advance.

**Using Your Account and Your Credit Line:**
The card must be signed to be used. Whether you sign the card or not, you are fully responsible for complying with all the terms of this Agreement, including the obligation to pay us for all balances due on your account as specified in this Agreement. Your card must only be used for lawful transactions.

Your account will have separate credit lines for purchases and cash advances. Your initial purchase and cash advance credit limits appear on the card carrier. At our discretion and at any time, we may change your purchase or cash advance credit limit. We will notify you of any new limit amount either by sending you a notice or through your billing statement. A change may take effect before you receive notification from us. You may request a change to your purchase or cash advance credit limit by contacting Customer Service by telephone or mail.

The credit line for purchases is available to buy goods or services wherever the card is honored. Your cash advance line is available for cash through any bank or automated teller machine that accepts the card or by using convenience checks. The amount charged on your account, including purchases, cash advances, finance charges, fees, or other charges, must always remain below your applicable credit limit. However, if you exceed your purchase or cash advance credit limit you must still pay us. We may approve transactions that cause the balance to exceed your purchase or cash advance credit limit without waiving any of our rights under this Agreement.

**Additional Cards:**
You may request additional cards on your account for yourself or others and you may permit an authorized user to have access to the card or account number. However, if you do, you must pay us for all charges made by those persons, including charges for which you may not have intended to be responsible. You must notify us to revoke an authorized user's permission to use your account. If you notify us, we may close the account and issue a new card or cards with a different account number. You are responsible for the use of each card issued on your account according to the terms of this Agreement.

**Membership Fee:**
If your card is a CITGO CELEBRITY card you will pay a $25 annual fee. The fee is added to the purchase balance and is non-refundable unless you notify us to cancel your account within 30 days from the mailing or delivery date of the billing statement on which the fee is billed.

(h) 000023

**Billing:**
Your billing statement shows the balance, any finance charges, fees, the minimum payment, and the payment due date. It also shows your current purchase and cash advance credit limits; an itemized list of current charges, debits, payments and credits; a summary of the purchase and cash advance activity, including the finance charges; a rate summary; and other important information. If we deem your account uncollectible or if we institute delinquency collection proceedings by sending it to an outside collection agency or attorney for collection, we may, in our sole discretion, stop sending you billing statements.

You must notify us of a change in your address by contacting Customer Service by telephone or mail. We will mail or deliver the billing statement to only one address.

**How We Determine the New Balance:**
The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine the New Balance, we begin with the outstanding balance on your account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any purchases, cash advances and other debits and subtract any credits and payments credited as of that billing period. We then add the appropriate finance charges and fees and make other applicable adjustments.

**Periodic Finance Charges:**
You will pay a daily periodic rate on the daily balance for purchases and the daily balance for cash advances. The total periodic finance charge for each billing period is the sum of the daily periodic rate charges on the daily balance for purchases and the daily balance for cash advances for each day in the billing period. The daily periodic rate used in determining the periodic finance charge will be a variable rate, which may change from month to month. The daily periodic rate during each billing period will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal within the 90 calendar days immediately preceding, but not including, the first day of each billing period. The Margin for purchases and cash advances will be 14.99%. The initial daily periodic rate on your account, based on an Index of 6.0% as of December 20, 2001, will be a daily periodic rate of 0.05750% (20.99% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable daily periodic rate, which may increase the minimum payment due on your account. If you pay the full amount of the New Balance each month by the due date, no periodic finance charges will be assessed on new purchases. Your account will have a different rate of periodic finance charge after it is closed because of default or is 60 days or more past due. In that event, the Margin for purchases and cash advances will increase to 18.99%.

**Daily Balance Calculation:**
To get the daily balance for purchases and cash advances for each day, we take the beginning balance of purchases and cash advances on your account each day, including any accrued but unpaid finance charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) (to the daily balance for purchases), cash advances (to the daily balance for cash advances), or debit adjustments, and subtract any payments, credits or credit adjustments. Purchases and cash advances are included in the daily balance as of the later of the date of the transaction or the first day of the billing period in which the purchase or cash advance is entered on your account. However, if you pay the New Balance shown on your previous billing statement in full on or before the due date shown on that billing statement, new purchases will not be included in the daily balance for purchases.

**Minimum Finance Charge:**
You will pay a minimum periodic FINANCE CHARGE of $1.50 for each billing period during which any finance charge accrues on your account as a result of application of the daily periodic rate. We add the amount to the purchase balance if that balance is being assessed a finance charge. We add the amount to the cash advance balance if that balance is being assessed a finance charge. If a finance charge is being assessed on purchases and cash advances, we may add the minimum finance charge to either balance at our discretion.

**Transaction Fee for Cash Advances:**
You have obtained a cash advance if you obtain funds from an automated teller machine (ATM); through use of a convenience check or through a financial institution; or engage in another similar transaction. For each cash advance, we add an additional FINANCE CHARGE of 5.0% of the amount of the advance, but not less than $5. This fee will be added to the cash advance balance. (The amount of the cash advance may also include a surcharge that the ATM owner imposes.) The cash advance transaction fee may cause the annual percentage rate on the billing statement on which the cash advance first appears to exceed the corresponding annual percentage rate.

**Credit Balance:**
You may not maintain a credit balance on your account in excess of any assigned credit limit. We will return to you any credit amount over $1 if the amount has been on your account longer than three months. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges posted to your account.

**Minimum Amount Due:**
Each month you must pay a minimum amount that is equal to the sum of the following amounts:

* The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

* The greater of amounts which exceed your credit limits or amounts which are past due; and

* Installment amounts due for mail and telephone order merchandise.

**Payments:**
You must pay at least the minimum amount by the payment due date, and you may pay more at any time without a penalty. The New Balance shown on your billing statement may include amounts subject to different periodic rates. We will allocate your payments and credits to pay off balances at low periodic rates before paying off balances at higher periodic rates. The sooner you pay the New Balance, the less you will pay in finance charges.

Instructions for making payments are on your billing statement. Do not send cash payments. We can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. You agree to pay us in U.S. dollars drawn on funds on deposit in the United States using a payment check, similar instrument, or automatic debit that will be processed and honored by your bank. Payments received by 2:00 p.m. will be credited to your account as of the date received. Payments received after 2:00 p.m. will be credited to your account as of the next business day.

### Late Fee:

We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $20 if your account balance is $200.00 or more.

### Returned Payment Fee:

We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

### Returned Convenience Check Fee:

We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

### Payment Services Fee:

We will add a $5 fee (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for payment services we may offer which allow you, at your option, to make payments other than by mailing them to the payment address shown on your billing statement. In the event you request optional payment services, we will advise you of the fee associated with your request, and your use of the optional payment services thereafter constitutes your agreement to pay the associated fee. This fee does not apply to payments made through Account Online or other electronic bill payment options.

### Photocopy Fee:

We will add a $5 fee per copy for the maximum amount permitted by applicable law, whichever is less) to the purchase balance for each copy you request of your billing statements, checks, sales slips and/or memoranda of transactions, other than copies requested for purposes of investigating a billing error. In the event you request copies, we will advise you of the fee associated with your request, and your use of the copy services thereafter constitutes your agreement to pay the associated fee.

### Convenience Checks:

Convenience checks may be used to purchase goods and services or to obtain cash up to the amount of your cash advance credit limit. We will treat convenience checks as a cash advance and charge them against your cash advance line. Each convenience check must be in the form we have issued and must be used according to any instructions we give you. Convenience checks may be used only by the person whose name is printed on them. Convenience checks may not be used to pay any amount owed to us under this Agreement or any other Citibank credit card agreement. We will not certify any convenience checks, nor will we return paid convenience checks.

### Lost or Stolen Cards, Account Numbers, or Convenience Checks:

If any card, account number, or check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling 1-800-756-2484 or Customer Service at the telephone number shown on your billing statement. We may require you to provide certain information in writing to help us find out what happened, and to comply with such procedures as we may require in connection with our investigation. You may be liable for

000024

unauthorized use of the account, but not for more than $50. You won't be liable for unauthorized purchases or cash advances made after we've been notified of the loss or the theft; however, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

### Default:

You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make a payment on any other creditor when due, file for bankruptcy, exceed any credit limit, pay by a check or similar instrument that is not honored or that we must return because it cannot be processed, or pay by automatic debit that is returned unpaid. If you default, we may close your account and demand immediate payment of the full balance.

### Preauthorized Charges:

If you default, if the card is lost or stolen, or we change your account or account number for any reason, we may suspend automatic charges on that account to third party vendors for insurance premiums or other goods or services. If preauthorized charges are suspended, you must contact the third party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

### Collection Costs:

If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

---

### ARBITRATION:

PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

#### Agreement to Arbitrate:

Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

#### Claims Covered:

• What Claims are subject to arbitration? All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are

subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

• Whose Claims are subject to arbitration? Not only yours and ours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

• What time frame applies to Claims subject to arbitration? Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

• Broadest interpretation. Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

• What about Claims filed in Small Claims Court? Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

#### How Arbitration Works:

• How does a party initiate arbitration? The party filing an arbitration must choose one of the following three arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association, JAMS, and National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605    Web site:    www.adr.org

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610    Web site:    www.jamsadr.com

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405    Web site:    www.arbitration-forum.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

- **What procedures and law are applicable in arbitration?** A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

- **Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

- **Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

- **When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

**Survival and Severability of Terms:**

- This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, and the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. Any different agreement regarding arbitration must be agreed to in writing.

---

**Credit Reporting:**

We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional cards on your account for others, you understand that we may report account information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit limit increase). If you wish to know the names of the agencies we have contacted, write us at the address listed on the billing statement. We will try to notify you by telephone or by mail of any legal process served on us in order to give you an opportunity to object to it, unless the law prohibits the notice.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address shown on your billing statement. We will promptly investigate the matter and if our investigation shows you are right, we will contact each credit reporting agency to whom we reported and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone and instruct you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

**Telephone Monitoring and Recording:**

From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

**Closing Your Account:**

You may close your account at any time by notifying us in writing. However, you remain responsible to pay the balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time for any reason without prior notice. We may also reissue a different card, account number, or different checks at any time. You must return the card or the checks to us upon request.

**Refusal of the Card:**

We are not responsible if a transaction on your account is not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity.

**Changing this Agreement:**

We can change this Agreement, including all fees and the annual percentage rate, at any time. We can also add or delete provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the balance, either at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

**Enforcing this Agreement:**

We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Assignment:**

We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

**Applicable Law:**

The terms and enforcement of this Agreement shall be governed by federal law and the law of Delaware, where we are located.

**For Further Information:**

Call us at the telephone number shown on your billing statement. You can also call toll-free at 1-800-756-2484.



Steven R. Gades
President
Associates National Bank (Delaware)

©2001 Associates National Bank (Delaware)

## What To Do If There's An Error In Your Bill.

**Your Billing Rights. Keep This Notice For Future Use.**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill.**

If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address provided in the Billing Rights Summary portion on the back of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

* Your name and account number.

* The dollar amount of the suspected error.

* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

* Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

* You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and

* The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.



3f32 CITG025

CITGO Credit Card Center
P.O. Box 9090
Des Moines, IA 50368-9090

Presorted
First-Class Mail
U.S. Postage Paid
Wheeling IL
Permit # 214

**Important information about your account enclosed.**

**Reidentified
CITGO
Low Fico ($25)**

Mailed 2,101
3/18-3/22

Citi Prod (Cox v. Hannah) 000027

Dear CITGO Cardmember,

The issuer of your CITGO credit card account, Associates National Bank (Delaware), has merged with Citibank (South Dakota), N.A. As a result, the words "we, us, and our" as used in your existing Cardmember Agreement now refer to Citibank (South Dakota), N.A. and the terms and enforcement of your Cardmember Agreement will be governed by federal law and the law of South Dakota.

For additional changes regarding your account, see the Notice of Change in Terms below.

Sincerely,

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

## NOTICE OF CHANGE IN TERMS

Effective as of the first day of your first billing period that begins on or after May 1, 2002 ("Effective Date"), we are changing the terms of your account by amending and restating your existing Cardmember Agreement, including substituting or adding the provisions below. The terms and provisions contained in the attached Cardmember Agreement replace the terms and provisions of your existing Cardmember Agreement. We encourage you to read this notice and the attached Cardmember Agreement and save it for future reference.

**Margin Used to Calculate Periodic Finance Charges:** The Margin for purchases and cash advances will be 14.99%. If your account is closed because of default or becomes 60 days or more past due, the Margin for purchases and cash advances will increase to 18.99%. Please read the "Periodic Finance Charges" paragraph in the attached Cardmember Agreement.

**Late Fee:** We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $20 if your account balance is $200.00 or more.

**Minimum Amount Due:** Each month you must pay a minimum amount that is equal to the sum of the following amounts:

- The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

- The greater of amounts which exceed your credit limits or amounts which are past due; and

- Installment amounts due for mail and telephone order merchandise.

**Returned Payment Fee:** We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:** We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Arbitration:** We are substituting a new arbitration provision which will replace the arbitration provision contained in your existing Cardmember Agreement. Please read the new arbitration provision carefully.

You have the right to reject the changes described in this Notice of Change in Terms. If you choose to reject the changes, you must notify us by writing to us at CITGO Credit Card Center, P.O. Box 9290, Des Moines, Iowa 50368-9290, within 25 days after the Effective Date. If you choose to reject the changes, your account will be closed and you may pay off the balance of your account under the existing terms. If you choose to reject the changes and your account has an annual fee, you will receive a pro rata refund of the fee as a credit to your account. If you use your account on or after the Effective Date, you agree to the changes even if you sent us notice rejecting the changes. The terms and enforcement of your account will be governed by federal law and the law of South Dakota even if you choose to reject the changes described in this Notice of Change in Terms.

The above is a summary of certain of the changes being made to your account. For more detailed information, please review the attached Cardmember Agreement carefully and keep it with your important records.

## Citibank (South Dakota), N.A.
## CARDMEMBER AGREEMENT

This Agreement is your Citibank (South Dakota), N.A. Cardmember Agreement. Please read and keep this Agreement for your records. This Agreement is binding on you unless you cancel your account within 30 days after receiving this card and you have not used or authorized use of your account.

To simplify this Agreement for you, the following definitions will apply. The words you, your, and yours mean all persons responsible for complying with this Agreement, including the person who applied to open the account and the person to whom we address billing statements. The word card means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this Agreement. The words we, us, and our mean Citibank (South Dakota), N.A. The words authorized user means any person to whom you give permission to use your account. The words convenience checks mean one or more checks that we may provide for you to obtain a cash advance.

**Using Your Account and Your Credit Line:** The card must be signed to use it. Whether you sign the card or not, you are fully responsible for complying with all the terms of this Agreement, including the obligation to pay us for all balances due on your account as specified in this Agreement. Your card must only be used for lawful transactions.

Your account will have separate credit lines for purchases and cash advances. Your initial purchase and cash advance credit limits appear on the card carrier. At our discretion and at any time, we may change your purchase or cash advance credit limit. We will notify you of any new limit either by sending you a notice or through your billing statement. A change may take effect before you receive notification from us. You may request a change to your purchase or cash advance credit limit by contacting Customer Service by telephone or mail.

The credit line for purchases is available to buy goods or services wherever the card is honored. Your cash advance line is available for cash through any bank or automated teller machine that accepts the card or by using convenience checks. The amount charged on your account, including purchases, cash advances, finance charges, fees, or other charges, must always remain below your applicable credit limit. However, if you exceed your purchase or cash advance credit limit you must still pay us. We may approve transactions that cause the balance to exceed your purchase or cash advance credit limit without waiving any of our rights under this Agreement.

**Additional Cards:** You may request additional cards on your account for yourself or others and you may permit an authorized user to have access to the card or account number. However, if you do, you must pay us for all charges made by those persons, including charges for which you may not have intended to be responsible. You must notify us to revoke an authorized user's permission to use your account. If you do so, we may close the account and issue a new card or cards with a different account number. You are responsible for any use of each card issued on your account according to the terms of this Agreement.

**Membership Fee:** You will pay an annual fee of $25. The fee is added to the purchase balance and is non-refundable unless you notify us to cancel your account within 30 days from the mailing or delivery date of the billing statement on which the fee is billed.

**Billing:** Your billing statement shows the balance, any finance charges, fees, the minimum payment, and the payment due date. It also shows your current purchase and cash advance credit limits; an itemized list of current charges, debits, payments and credits; a summary of the purchase and cash advance activity, including the finance charges, a rate summary; and other important information. If we assume your account unreceivable or if we institute delinquency collection proceedings by sending it to an outside collection agency or attorney for collection, we may, in our sole discretion, stop sending you billing statements.

You must notify us of a change in your address by contacting Customer Service by telephone or mail. We will mail or deliver the billing statement to only one address.

**How We Determine the New Balance:** The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine the New Balance, we begin with the outstanding balance on your account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any purchases, cash advances and other debits and subtract any credits and payments credited as of that billing period. We then add the appropriate finance charges and fees and make other applicable adjustments.

**Periodic Finance Charges:** You will pay a daily periodic rate on the daily balance for purchases and the daily balance for cash advances. The total periodic finance charge for each billing period is the sum of the daily periodic rate charges on the daily balance for purchases and the daily balance for cash advances for each day in the billing period. The daily periodic rate used in determining the periodic finance charge will be a variable rate, which may change from month to month. The daily periodic rate during each billing period will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal within the 90 calendar days immediately preceding, but not including, the first day of each billing period. The Margin for purchases and cash advances will be 14.99%. The initial daily periodic rate on your account, based on an Index of 4.75% as of March 13, 2002, will be a daily periodic rate of 0.05408% (19.74% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable daily periodic rate, which may increase the minimum payment due on your account. If you pay the full amount of the New Balance each month by the due date, no periodic finance charge will be assessed on new purchases. Your account will have a different rate of periodic finance charge after it is closed because of default or is 60 days or more past due. In that event, the Margin for purchases and cash advances will increase to 18.99%.

**Daily Balance Calculation:** To get the daily balance for purchases and cash advances for each day, we take the beginning balance of purchases and cash advances on your account each day, including any accrued but unpaid finance charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) to the daily balance for purchases), cash advances (to the daily balance for cash advances), or debit adjustments, and subtract any payments, credits or credit adjustments. Purchases and cash advances are included in the daily balances as of the later of the date of the transaction or the first day of the billing period in which the purchase or cash advance is entered on your account. However, if you pay the New Balance shown on your previous billing statement in full on or before the due date shown on that billing statement, new purchases will not be included in the daily balance for purchases.

**Minimum Finance Charge:** You will pay a minimum periodic FINANCE CHARGE of $1.50 for each billing period during which any finance charge accrues on your account as a result of application of the daily periodic rate. We add the amount to the purchase balance if that balance is being assessed a finance charge. We add the amount to the cash advance balance if that balance is being assessed a finance charge. If a finance charge is being assessed on purchases and cash advances, we may add the minimum finance charge to either balance at our discretion.

**Transaction Fee for Cash Advances:** You have obtained a cash advance if you obtain funds from an automated teller machine (ATM) through use of a convenience check or through a financial institution, or engage in another similar transaction. For each cash advance, we add an additional FINANCE CHARGE of 5.0% of the amount of the advance, but not less than $5. This fee will be added to the cash advance balance. (The amount of this cash advance may also include a surcharge that the ATM owner imposes.) The cash advance transaction fee may cause the annual percentage rate on the billing statement on which the cash advance first appears to exceed the corresponding annual percentage rate.

**Credit Balance:**
You may not maintain a credit balance on your account in excess of any assigned credit limit. We will return to you any credit balance over $1 if the amount has been on your account longer than three months. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges posted to your account.

**Minimum Amount Due:**
Each month you must pay a minimum amount that is equal to the sum of the following amounts:

* The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

* The greater of amounts which exceed your credit limits or amounts which are past due; and

* Installment amounts due for mail and telephone order merchandise.

**Payments:**
You must pay at least the minimum amount by the payment due date, and you may pay more at any time without a penalty. The New Balance shown on your billing statement may include amounts subject to different periodic rates. We will allocate your payments and credits to pay off balances at low periodic rates before paying off balances at higher periodic rates. The sooner you pay the New Balance, the less you will pay in finance charges.

Instructions for making payments are on your billing statement. Do not send cash payments. We can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. You agree to pay us in U.S. dollars drawn on funds on deposit in the United States using a payment check, similar instrument, or automatic debit that will be processed and honored by your bank. Payments received by 2:00 p.m. will be credited to your account as of the date received. Payments received after 2:00 p.m. will be credited to your account as of the next business day.

**Late Fee:**
We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $39 if your account balance is $200.00 or more.

**Returned Payment Fee:**
We will add a $35 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:**
We will add a $35 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Payment Services Fee:**
We will add a $5 fee (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for payment services we may offer which allow you, at your option, to make payments other than by mailing them to the payment address shown on your billing statement. In the event you request optional payment services, we will advise you of the fee associated with your request, and your use of the optional payment services thereafter constitutes your agreement to pay the associated fee. This fee does not apply to payments made through Account Online or other electronic bill payment options.

**Photocopy Fee:**
We will add a $5 fee per copy (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for each copy you request of your billing statements, checks, sales slips and/or memoranda of transactions, other than copies requested for purposes of investigating a billing error. In the event you request copies, we will advise you of the fee associated with your request, and your use of the copy services thereafter constitutes your agreement to pay the associated fee.

**Convenience Checks**
Convenience checks may be used to purchase goods and services or to obtain cash up to the amount of your cash advance credit limit. We will treat convenience checks as a cash advance and charge them against your cash advance line. Each convenience check must be in the form we have issued and must be used according to any instructions we give you. Convenience checks may be used only by the person whose name is printed on them. Convenience checks may not be used to pay any amount owed to us under this Agreement or any other Citibank credit card agreement. We will not certify any convenience checks, nor will we return paid convenience checks.

**Lost or Stolen Cards, Account Numbers, or Convenience Checks:**
If any card, account number, or check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling 1-800-755-2484 or Customer Service at the telephone number shown on your billing statement. You may require you to provide certain information in writing to help us find out what happened, and to comply with such procedures as we may require in connection with our investigation. You may be liable for unauthorized use of the account, but not for more than $50. You won't be liable for unauthorized purchases or cash advances made after we've been notified of the loss or the theft; however, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

**Default:**
You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make a payment to any other creditor when due, file for bankruptcy, exceed any credit limit, pay by a check or similar instrument that is not honored or that we must return because it cannot be processed, or pay by automatic debit that is returned unpaid. If you default, we may close your account and demand immediate payment of the full balance.

**Preauthorized Charges:**
If you default, if the card is lost or stolen, or we change your account or account number for any reason, we may suspend automatic charges on that account to third party vendors for insurance premiums or other goods or services. If preauthorized charges are suspended, you must contact the third party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

**Collection Costs:**
If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

---

**ARBITRATION:**
PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

**Agreement to Arbitrate:**
Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**Claims Covered:**
* What Claims are subject to arbitration? All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

* Whose Claims are subject to arbitration? Not only yours and ours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

* What time frame applies to Claims subject to arbitration? Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

* Broadest Interpretation. Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

* What about Claims filed in Small Claims Court? Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only on an individual (non-class, non-representative) Claim.

**How Arbitration Works:**
* How does a party initiate arbitration? The party filing an arbitration must choose one of the following three arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association, JAMS, and National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

| | | |
|---|---|---|
| American Arbitration Association | | |
| 335 Madison Avenue, Floor 10 | | |
| New York, NY 10017-4605 | Web site: | www.adr.org |
| | | |
| JAMS | | |
| 1920 Main Street, Suite 300 | | |
| Irvine, CA 92610 | Web site: | www.jamsadr.com |
| | | |
| National Arbitration Forum | | |
| P.O. Box 50191 | | |
| Minneapolis, MN 55405 | Web site: | www.arbitration-forum.com |

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

* What procedures and laws are applicable in arbitration? A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitrator will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will

apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration decides the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

- **Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

- **Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

- **When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days have passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

**Survival and Severability of Terms:**

- This arbitration provision shall survive: (i) termination or changes in this Agreement, the account, and the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. Any different agreement regarding arbitration must be agreed to in writing.

**Credit Reporting:**

We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional cards on your account for others, you understand that we may report account information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit limit increase). If you wish to know the names of the agencies we have contacted, write us at the address listed on the billing statement. We will try to notify you by telephone or by mail of any legal process served on us in order to give you an opportunity to object to it, unless the law prohibits this notice.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address shown on your billing statement. We will promptly investigate the matter and if our investigation shows you are right, we will contact each credit reporting agency to whom we reported and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone and instruct you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

**Telephone Monitoring and Recording:**

From time to time we may monitor and record telephone calls regarding your account with us to assure the quality of our service.

**Closing Your Account:**

You may close your account at any time by notifying us in writing. However, you remain responsible to pay the balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time for any reason without prior notice. We may also reissue a different card, account number, or different checks at any time. You must return the card or the checks to us upon request.

**Refusal of the Card:**

We are not responsible if a transaction on your account is not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity.

**Changing this Agreement:**

We can change this Agreement, including all fees and the annual percentage rate, at any time. We can also add or delete provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the balance, either at once or under the terms of the unchanged Agreement. Unless you notify us otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

---

**Enforcing this Agreement:**

We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Assignment:**

We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

**Applicable Law:**

The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**For Further Information:**

Call us at the telephone number shown on your billing statement. You can also call toll-free at 1-800-755-2484.

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

©2002 Citibank (South Dakota), N.A.

## What To Do If There's An Error In Your Bill

**Your Billing Rights. Keep This Notice For Future Use.**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill.**

If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address provided in the Billing Rights Summary portion on the back of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.
- Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported you account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

- You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and
- The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Citi Prod (Cox v. Hannah) 000030

Presorted
First-Class Mail
U.S. Postage Paid
Wheeling IL
Permit # 214

**Important information about your account enclosed.**

Reidentified
CITGO
Low Fico ($25)

Mailed 2,101
3/18-3/22

3/02 CITGO25

CITGO Credit Card Center
P.O. Box 9000
Des Moines, IA 50368-9000

Citi Prod (Cox v. Hannah) 000031

Dear CITGO Cardmember,

The issuer of your CITGO credit card account, Associates National Bank (Delaware), has merged with Citibank (South Dakota), N.A. As a result, the words "we, us, and our" as used in your existing Cardmember Agreement now refer to Citibank (South Dakota), N.A. and the terms and enforcement of your Cardmember Agreement will be governed by federal law and the law of South Dakota.

For additional changes regarding your account, see the Notice of Change in Terms below.

Sincerely,

Kendal E. Stork
President & CEO
Citibank (South Dakota), N.A.

## NOTICE OF CHANGE IN TERMS

Effective as of the first day of your first billing period that begins on or after May 1, 2002 ("Effective Date"), we are changing the terms of your account by amending and restating your existing Cardmember Agreement, including substituting or adding the provisions below. The terms and provisions contained in the attached Cardmember Agreement replace the terms and provisions of your existing Cardmember Agreement. We encourage you to read this notice and the attached Cardmember Agreement and save it for future reference.

**Margin Used to Calculate Periodic Finance Charges:** The Margin for purchases and cash advances will be 14.99%. If your account is closed because of default or becomes 60 days or more past due, the Margin for purchases and cash advances will increase to 18.99%. Please read the "Periodic Finance Charges" paragraph in the attached Cardmember Agreement.

**Late Fee:** We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $20 if your account balance is $200.00 or more.

**Minimum Amount Due:** Each month you must pay a minimum amount that is equal to the sum of the following amounts:

- The greater of 3.0% of the New Balance shown on your statement for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

- The greater of amounts which exceed your credit limits or amounts which are past due; and

- Installment amounts due for mail and telephone order merchandise.

**Returned Payment Fee:** We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:** We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance (to exceed your cash advance credit limit, if you default, if you did not comply with your instructions regarding the check, if your account has been closed, or if the card has expired.

**Arbitration:** We are substituting a new arbitration provision which will replace the arbitration provision contained in your existing Cardmember Agreement. Please read the new arbitration provision carefully.

You have the right to reject the changes described in this Notice of Change in Terms. If you choose to reject the changes, you must notify us by writing to us at CITGO Credit Card Center, P.O. Box 6060, Des Moines, Iowa 50368-9000, within 25 days after the Effective Date. If you choose to reject the changes, your account will be closed and you may pay off the balance of your account under the existing terms. If you choose to reject the changes and your account has an annual fee, you will receive a pro rata refund of the fee as a credit to your account. If you use your account on or after the Effective Date, you agree to the changes even if you sent us notice rejecting the changes. The terms and enforcement of your account will be governed by federal law and the law of South Dakota even if you choose to reject the changes described in this Notice of Change in Terms.

The above is a summary of certain of the changes being made to your account. For more detailed information, please review the attached Cardmember Agreement carefully and keep it with your important records.

## Citibank (South Dakota), N.A. CARDMEMBER AGREEMENT

This Agreement is your Citibank (South Dakota), N.A. Cardmember Agreement. Please read and keep this Agreement for your records. This Agreement is binding on you unless you cancel your account within 30 days after receiving this card and you have not used or authorized use of your account.

To simplify this Agreement for you, the following definitions will apply. The words you, your, and yours mean all persons responsible for complying with this Agreement, including the person who applied to open the account and the person to whom we address billing statements. The word card means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this Agreement. The words we, us, and our mean Citibank (South Dakota), N.A. The words authorized user means any person to whom you give permission to use your account. The words convenience check mean one or more checks that we may provide for you to obtain a cash advance.

**Using Your Account and Your Credit Lines**
The card must be signed to be used. Whether you sign the card or not, you are fully responsible for complying with all the terms of this Agreement, including the obligation to pay us for all balances due on your account as specified in this Agreement. Your card must only be used for lawful transactions.

Your account will have separate credit lines for purchases and cash advances. Your initial purchase and cash advance credit limits appear on the card carrier. We may change your purchase or cash advance credit limit. We will notify you of any new limit amount either by sending you a notice or through your billing statement. A change may take effect before you receive notification from us. You may request a change to your purchase or cash advance credit limit by contacting Customer Service by telephone or mail.

The credit line for purchases is available to buy goods or services wherever the card is honored. Your cash advance line is available for cash through any bank or automated teller machine that accepts the card or by using convenience checks. The amount charged on your account, including purchases, cash advances, finance charges, fees, or other charges, must always remain below your applicable credit limit. However, if you exceed your purchase or cash advance credit limit you must still pay us. We may approve transactions that cause the balance to exceed your purchase or cash advance credit limit without waiving any of our rights under this Agreement.

**Additional Cards:**
You may request additional cards on your account for yourself or others and you may permit an authorized user to have access to your card or account number. However, if you do, you must pay us for all charges made by those persons, including charges for which you may not have intended to be responsible. You must notify us to revoke an authorized user's permission to use your account. If you do so, we may close the account and issue a new card or cards with a different account number. You are responsible for the use of each card issued on your account according to the terms of this Agreement.

**Membership Fee:**
You will pay an annual fee of $25. The fee is added to the purchase balance and is non-refundable unless you notify us to cancel your account within 30 days from the mailing or delivery date of the billing statement on which the fee is billed.

**Billing:**
Your billing statement shows the balance, any finance charges, fees, the minimum payment, and the payment due date. It also shows your current purchase and cash advance credit limits; an itemized list of current charges, debits, payments and credits; a summary of the purchase and cash advance activity, including the finance charges; a rate summary; and other important information. If we deem your account uncollectable or if we institute claims and/or collection proceedings by sending it to an outside collection agency or attorney for collection, we may, in our sole discretion, stop sending you billing statements.

You must notify us of a change in your address by contacting Customer Service by telephone or mail. We will mail or deliver the billing statement to only one address.

**How We Determine the New Balance:**
The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine the New Balance, we begin with the outstanding balance on your account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any purchases, cash advances and other debits and subtract any credits and payments credited as of that billing period. We then add the appropriate finance charges and fees and make other applicable adjustments.

**Periodic Finance Charges:**
You will pay a daily periodic rate on the daily balance for purchases and the daily balance for cash advances. The total periodic finance charge for each billing period is the sum of the daily periodic rate charges on the daily balance for purchases and the daily balance for cash advances for each day in the billing period. The daily periodic rate used in determining the periodic finance charge will be a variable rate, which may change from month to month. The daily periodic rate during each billing period will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal within the 90 calendar days immediately preceding, but not including, the first day of each billing period. The Margin for purchases and cash advances will be 14.99%. The initial daily periodic rate on your account, based on an Index of 4.75% as of March 13, 2002, will be a daily periodic rate of 0.05406% (19.74% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable daily periodic rate, which may increase the minimum payment due on your account. If you pay the full amount of the New Balance each month by the due date, no periodic finance charges will be assessed on new purchases. Your account will have a different rate of periodic finance charge after it is closed because of default or is 60 days or more past due. In that event, the Margin for purchases and cash advances will increase to 18.99%.

**Daily Balance Calculation:**
To get the daily balance for purchases and cash advances for each day, we take the beginning balance of purchases and cash advances on your account each day, including any accrued but unpaid finance charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) to the daily balance for purchases), cash advances (to the daily balance for cash advances), or debit adjustments, and subtract any payments, credits or credit adjustments. Purchases and cash advances are included in the daily balance as of the later of the date of the transaction or the first day of the billing period in which the purchase or cash advance is entered on your account. However, if you pay the New Balance shown on your previous billing statement in full on or before the due date shown on that billing statement, new purchases will not be included in the daily balance for purchases.

**Minimum Finance Charge:**
You will pay a minimum periodic FINANCE CHARGE of $1.50 for each billing period during which any finance charge accrues on your account as a result of application of the daily periodic rate. We add this amount to the purchase balance if that balance is being assessed a finance charge. We add this amount to the cash advance balance if that balance is being assessed a finance charge. If a finance charge is being assessed on purchases and cash advances, we may add the minimum finance charge to either balance at our discretion.

**Transaction Fee for Cash Advances:**
You have obtained a cash advance if you obtain funds from an automated teller machine (ATM), through use of a convenience check or through a financial institution, or engage in another similar transaction. For each cash advance, we add an additional FINANCE CHARGE of 5.0% of the amount of the advance, but not less than $5. This fee will be added to the cash advance balance. (The amount of this cash advance may also include a surcharge that the ATM owner imposes.) The cash advance transaction fee may cause the annual percentage rate on the billing statement on which the cash advance first appears to exceed the corresponding annual percentage rate.

Citi Prod (Cox v. Hannah) 000032

**Credit Balance:**
You may not maintain a credit balance on your account in excess of any assigned credit limit. We will return to you any credit amount over $1 if the amount has been on your account longer than three months. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges posted to your account.

**Minimum Amount Due:**
Each month you must pay a minimum amount that is equal to the sum of the following amounts:

* The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

* The greater of amounts which exceed your credit limits or amounts which are past due; and

* Installment amounts due for mail and telephone order merchandise.

**Payments:**
You must pay at least the minimum amount by the payment due date, and you may pay more at any time without a penalty. The New Balance shown on your billing statement may include amounts subject to different periodic rates. We will allocate your payments and credits to pay off balances at low periodic rates before paying off balances at higher periodic rates. The sooner you pay the New Balance, the less you will pay in finance charges.

Instructions for making payments are on your billing statement. Do not send cash payments. We can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. You agree to pay us in U.S. dollars drawn on funds on deposit in the United States using a payment check, similar instrument, or automatic debit that will be processed and honored by your bank. Payments received by 2:00 p.m. will be credited to your account as of the date received. Payments received after 2:00 p.m. will be credited to your account as of the next business day.

**Late Fee:**
We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $20 if your account balance is $200.00 or more.

**Returned Payment Fee:**
We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:**
We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Payment Services Fee:**
We will add a $5 fee (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for payment services we may offer which allow you, at your option, to make payments other than by mailing them to the payment address shown on your billing statement. In the event you request optional payment services, we will advise you of the fee associated with your request, and your use of the optional payment services thereafter constitutes your agreement to pay the associated fee. This fee does not apply to payments made through Account Online or other electronic bill payment options.

**Photocopy Fee:**
We will add a $5 fee per copy (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for each copy you request of your billing statements, checks, sales slips and/or memoranda of transactions, other than copies requested for purposes of investigating a billing error. In the event you request copies, we will advise you of the fee associated with your request, and your use of the copy services thereafter constitutes your agreement to pay the associated fee.

**Convenience Checks:**
Convenience checks may be used to purchase goods and services or to obtain cash up to the amount of your cash advance credit limit. We will treat convenience checks as a cash advance and charge them against your cash advance line. Each convenience check must be in the form we have issued and must be used according to any instructions we give you. Convenience checks may be used only by the person whose name is printed on them. Convenience checks may not be used to pay any amount owed to us under this Agreement or any other Citibank credit card agreement. We will not certify any convenience checks, nor will we return paid convenience checks.

**Lost or Stolen Cards, Account Numbers, or Convenience Checks:**
If any card, account number, or check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling 1-800-756-2484 or Customer Service at the telephone number shown on your billing statement. We may require you to provide certain information in writing to help us find out what happened, and to comply with such procedures as we may require in connection with our investigation. You may be liable for unauthorized use of the account, but not for more than $50. You won't be liable for unauthorized purchases or cash advances made after we've been notified of the loss or the theft; however, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

**Default:**
You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make a payment in any other creditor when due, file for bankruptcy, exceed any credit limit, pay by a check or similar instrument that is not honored or that we must return because it cannot be processed, or pay by automatic debit that is returned unpaid. If you default, we may close your account and demand immediate payment of the full balance.

**Preauthorized Charges:**
If you default, if the card is lost or stolen, or we change your account or account number for any reason, we may suspend automatic charges on that account to third party vendors for insurance premiums or other goods or services. If preauthorized charges are suspended, you must contact the third party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

**Collection Costs:**
If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

---

**ARBITRATION:**
PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

**Agreement to Arbitrate:**
Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**Claims Covered:**
* **What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

* **Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

* **What time frame applies to Claims subject to arbitration?** Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

* **Broadest interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

* **What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

**How Arbitration Works:**
* **How does a party initiate arbitration?** The party filing an arbitration must choose one of the following three arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association, JAMS, and National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605          Web site:   www.adr.org

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610                Web site:   www.jamsadr.com

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405           Web site:   www.arbitration-forum.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

* **What procedures and law are applicable in arbitration?** A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will

Citi Prod (Cox v. Hannah) 000033

apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

- **Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

- **Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

- **When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

**Survival and Severability of Terms:**
- This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, and the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. Any different agreement regarding arbitration must be agreed to in writing.

**Credit Reporting:**
We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional cards on your account for others, you understand that we may report account information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on you for example, when we review your account for a credit limit increase). If you wish to know the names of the agencies we have contacted, write us at the address listed on the billing statement. We will try to notify you by telephone or by mail of any legal process served on us in order to give you an opportunity to object to it, unless the law prohibits the notice.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address shown on your billing statement. We will promptly investigate the matter and if our investigation shows we are right, we will contact each credit reporting agency to whom we reported and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone and instruct you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

**Telephone Monitoring and Recording:**
From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

**Closing Your Account:**
You may close your account at any time by notifying us in writing. However, you remain responsible to pay the balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time for any reason without prior notice. We may also reissue a different card, account number, or different checks at any time. You must return the card or the checks to us upon request.

**Refusal of the Card:**
We are not responsible if a transaction on your account is not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity.

**Changing the Agreement:**
We can change this Agreement, including all fees and the annual percentage rate, at any time. We can also add or delete provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the balance, either at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

**Enforcing this Agreement:**
We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Assignment:**
We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

**Applicable Law:**
The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**For Further Information:**
Call us at the telephone number shown on your billing statement. You can also call toll-free at 1-800-756-2484.

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

©2002 Citibank (South Dakota), N.A.

## What To Do If There's An Error In Your Bill.

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address provided in the Billing Rights Summary portion on the back of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we send you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.
- Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:
- You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and
- The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

CITGO 3702

CITGO Credit Card Center
P.O. Box 9090
Des Moines, IA 50368-9090

Presorted
First-Class Mail
U.S. Postage Paid
Wheeling IL
Permit # 214

**Important information about your account enclosed.**

**Reidentified
CITGO Base & E-Bill**

Mailed 113,770
3/18-3/22

Citi Prod (Cox v. Hannah) 000035

Dear CITGO Cardmember,

The issuer of your CITGO credit card account, Associates National Bank (Delaware), has merged with Citibank (South Dakota), N.A. As a result, the words "we, us, and either" as used in your existing Cardmember Agreement now refer to Citibank (South Dakota), N.A., and the terms and enforcement of your Cardmember Agreement will be governed by federal law and the law of South Dakota.

For additional changes regarding your account, see the Notice of Change in Terms below.

Sincerely,

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

## NOTICE OF CHANGE IN TERMS

Effective as of the first day of your first billing period that begins on or after May 1, 2002 ("Effective Date"), we are changing the terms of your account by amending and restating your existing Cardmember Agreement, including substituting or adding the provisions below. The terms and provisions contained in the attached Cardmember Agreement replace the terms and provisions of your existing Cardmember Agreement. We encourage you to read this notice and the attached Cardmember Agreement and save it for future reference.

**Margin Used to Calculate Periodic Finance Charges:** The Margin for purchase and cash advances will be 14.59%. If your account is in pass-due because of default or becomes 60 days or more past due, the Margin for purchases and cash advances will increase to 18.99%. Please read the "Periodic Finance Charges" paragraph in the attached Cardmember Agreement.

**Late Fee:** We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $15 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $20 if your account balance is $200.00 or more.

**Minimum Amount Due:** Each month you must pay a minimum amount that is equal to the sum of the following amounts:

- The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

- The greater of amounts which exceed your credit limits or amounts which are past due; and

- Installment amounts due for mail and telephone order merchandise.

**Statement Payment Fee:** We will add a $25 fee to the purchase balance where a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned/Convenience Check Fee:** We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you do not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Arbitration:** We are substituting a new arbitration provision which will replace the arbitration provision contained in your existing Cardmember Agreement. Please read the new arbitration provision carefully.

You have the right to reject the changes described in this Notice of Change in Terms. If you choose to reject the changes, you must notify us by writing to us at CITGO Credit Card Center, P.O. Box 6090, Des Moines, Iowa 50306-9090, within 25 days after the Effective Date. If you choose to reject the changes, your account will be closed and you may pay off the balance of your account under the existing terms. If you choose to reject the changes and your account has an annual fee, you will receive a pro rata refund of the fee as a credit to your account. If you use your account on or after the Effective Date, you agree to the changes even if you sent us notice rejecting the changes. The terms and enforcement of your account will be governed by federal law and the law of South Dakota even if you choose to reject the changes described in this Notice of Change in Terms.

The above is a summary of certain of the changes being made to your account. For more detailed information, please review the attached Cardmember Agreement carefully and keep it with your important records.

## Citibank (South Dakota), N.A.
### CARDMEMBER AGREEMENT

This Agreement is your Citibank (South Dakota), N.A. Cardmember Agreement. Please read and keep this Agreement for your records. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of your account.

To simplify this Agreement for you, the following definitions will apply. The words you, your, and yours mean all persons responsible for complying with this Agreement, including the person who applied to open the account and the person to whom we address billing statements. The word card means one or more cards or other access checks, such as account numbers, that we have issued to permit you to obtain credit under this Agreement. The words we, us, and our mean Citibank (South Dakota), N.A. The words authorized user means any person to whom you give permission to use your account. The words convenience checks mean one or more checks that we may provide for you to obtain a cash advance.

**Using Your Account and Your Credit Line:**
The card must be signed to be used. Whether you sign the card or not, you are fully responsible for complying with all the terms of this Agreement, including the obligation to pay us for all balances due on your account as specified in this Agreement. Your card must only be used for lawful transactions.

Your account will have separate credit lines for purchases and cash advances. Your initial purchase and cash advance credit limits appear on the card carrier. At our discretion and at any time, we may change your purchase or cash advance credit limit. We will notify you of any new limit, either by sending you a notice or through your billing statement. A charge may take effect before you receive notification from us. You may request a change to your purchase or cash advance credit limit by contacting Customer Service by telephone or mail.

The credit line for purchases is available to buy goods or services whenever the card is honored. Your cash advance line is available for cash through any bank or automated teller machine that accepts the card or by using convenience checks. The amount charged on your account, including purchases, cash advances, finance charges, fees, or other charges, must always remain below your applicable credit limit. However, if you exceed your purchase or cash advance credit limit you must still pay us. We may approve transactions that cause the balance to exceed your purchase or cash advance credit limit without waiving any of our rights under this Agreement.

**Additional Cards:**
You may request additional cards on your account for yourself or others and you may permit an authorized user to have access to the card or account number. However, if you do, you must pay us for all charges made by those persons, including charges for which you may not have intended to be responsible. You must notify us to revoke an authorized user's permission to use your account. If you do so, we may close the account and issue a new card or cards with a different account number. You are responsible for the use of each card issued on your account according to the terms of this Agreement.

**Membership Fee:**
If your card is a CITGO CELEBRITY card you will pay a $25 annual fee. The fee is added to the purchase balance and is non-refundable unless you notify us to cancel your account within 30 days from the mailing or delivery date of the billing statement on which the fee is billed.

**Billing:**
Your billing statement shows the balance, any finance charges, fees, the minimum payment, and the payment due date. It also shows your current purchases and cash advance credit limits, an itemized list of current charges, debits, payments and credits; a summary of the purchase and cash advance activity, including the finance charges; a rate summary, and other important information. If we deem your account uncollectible or if we institute delinquency collection proceedings by sending it to an outside collection agency or attorney for collection, we may, in our sole discretion, stop sending you billing statements.

You must notify us of a change in your address by contacting Customer Service by telephone or mail. We will mail or deliver the billing statement to only one address.

**How We Determine the New Balance:**
The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine the New Balance, we begin with the outstanding balance on your account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any finance charges, cash advances and other debits and subtract any credits and payments credited as of that billing period. We then add the appropriate finance charges and fees and make other applicable adjustments.

**Periodic Finance Charges:**
You will pay a daily periodic rate on the daily balance for purchases and the daily balance for cash advances. The total periodic finance charge for each billing period is the sum of the daily periodic rate charges on the daily balance for purchases and the daily balance for cash advances for each day in the billing period. The daily periodic rate used in determining the periodic finance charge will be a variable rate, which may change from month to month. The daily periodic rate during each billing period will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal within the 90 calendar days immediately preceding, but not including, the first day of each billing period. The Margin for purchases and cash advances will be 14.59%. The initial daily periodic rate on your account, based on an Index of 4.75% as of March 10, 2002, will be a daily periodic rate of 0.05408% (19.74% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable daily periodic rate, which may increase the minimum payment due on your account. If you pay the full amount of the New Balance each month by the due date, no periodic finance charges will be assessed on new purchases. Your account will have a different rate of periodic finance charge after it is closed because of default or is 60 days or more past due. In that event, the Margin for purchases and cash advances will increase to 18.99%.

**Daily Balance Calculation:**
To get the daily balance for purchases and cash advances for each day, we take the beginning balance of purchases and cash advances on your account each day, including any accrued but unpaid finance charges and other fees through the previous day, add any new purchase (including amounts advanced for insurance) (to the daily balance for purchases), cash advances (to the daily balance for cash advances), or debit adjustments, and subtract any payments, credits or credit adjustments. Purchases and cash advances are included in the daily balance as of the later of the date of the transaction or the first day of the billing period in which the purchase or cash advance is entered on your account. However, if you pay the New Balance shown on your previous billing statement in full on or before the due date shown on that billing statement, new purchases will not be included in the daily balance for purchases.

**Minimum Finance Charge:**
You will pay a minimum periodic FINANCE CHARGE of $1.50 for each billing period during which any finance charge accrues on your account as a result of application of the daily periodic rate. We add the amount to the purchase balance if that balance is being assessed a finance charge. We add the amount to the cash advance balance if that balance is being assessed a finance charge. If a finance charge is being assessed on purchases and cash advances, we may add the minimum finance charge to either balance at our discretion.

**Transaction Fee for Cash Advances:**
You have obtained a cash advance if you obtain funds from an automated teller machine (ATM), through use of a convenience check or through a financial institution, or engage in another similar transaction. For each cash advance, we add an additional FINANCE CHARGE of 3.0% of the amount of the advance, but not less than $5. This fee will be added to the cash advance balance. (The amount of the cash advance may also include a surcharge that the ATM owner imposes.) The cash advance transaction fee may cause the annual percentage rate on the billing statement on which the cash advance first appears to exceed the corresponding annual percentage rate.

Citi Prod (Cox v. Hannah) 000036

**Credit Balance:**
You may not maintain a credit balance on your account in excess of any assigned credit limit. We will return to you any credit amount over $1 if the amount has been on your account longer than three months. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges posted to your account.

**Minimum Amount Due:**
Each month you must pay a minimum amount that is equal to the sum of the following amounts:

- The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

- The greater of amounts which exceed your credit limits or amounts which are past due; and

- Installment amounts due for mail and telephone order merchandise.

**Payments:**
You must pay at least the minimum amount by the payment due date, and you may pay more at any time without a penalty. The New Balance shown on your billing statement may include amounts subject to different periodic rates. We will allocate your payments and credits to pay off balances at low periodic rates before paying off balances at higher periodic rates. The sooner you pay the New Balance, the less you will pay in finance charges.

Instructions for making payments are on your billing statement. Do not send cash payments. We can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. You agree to pay us in U.S. dollars drawn on funds on deposit in the United States using a payment check, similar instrument, or automatic debit that will be processed and honored by your bank. Payments received by 2:00 p.m. will be credited to your account as of the date received. Payments received after 2:00 p.m. will be credited to your account as of the next business day.

**Late Fee:**
We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $39 if your account balance is $200.00 or more.

**Returned Payment Fee:**
We will add a $35 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:**
We will add a $35 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the check has expired.

**Payment Services Fee:**
We will add a $5 fee for the maximum amount permitted by applicable law, whichever is less) to the purchase balance for payment services we may offer which allow you, at your option, to make payments other than by mailing them to the payment address shown on your billing statement. In the event you request optional payment services, we will advise you of the fee associated with your request, and your use of the optional payment services thereafter constitutes your agreement to pay the associated fee. This fee does not apply to payments made through Account Online or other electronic bill payment options.

**Photocopy Fee:**
We will add a $5 fee per copy for the maximum amount permitted by applicable law, whichever is less) to the purchase balance for each copy you request of your billing statements, checks, sales slips and/or memoranda of transactions, other than copies requested for purposes of investigating a billing error. In the event you request copies, we will advise you of the fee associated with your request, and your use of the copy services thereafter constitutes your agreement to pay the associated fee.

**Convenience Checks:**
Convenience checks may be used to purchase goods and services or to obtain cash up to the amount of your cash advance credit limit. We will treat convenience checks as a cash advance and charge them against your cash advance line. Each convenience check must be in the form we have issued and must be used according to any instructions we give you. Convenience checks may be used only by the person whose name is printed on them. Convenience checks may not be used to pay any amount owed to us under this Agreement or any other Citibank credit card agreement. We will not certify any convenience checks, nor will we return paid convenience checks.

**Lost or Stolen Cards, Account Numbers, or Convenience Checks:**
If any card, account number, or check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling 1-800-756-2484 or Customer Service at the telephone number shown on your billing statement. We may require you to provide certain information in writing to help us find out what happened, and to comply with such procedures as we may require in connection with our investigation. You may be liable for unauthorized use of the account, but not for more than $50. You won't be liable for unauthorized purchase or cash advances made after we've been notified of the loss or the theft, however, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

**Default:**
You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make a payment to any other creditor when due, file for bankruptcy, exceed your credit limit, pay by a check or similar instrument that is not honored or that we must return because it cannot be processed, or pay by automatic debit that is returned unpaid. If you default, we may close your account and demand immediate payment of the full balance.

**Preauthorized Charges:**
If you default, if the card is lost or stolen, or we change your account or account number for any reason, we may suspend automatic charges on that account to third party vendors for insurance premiums or other goods or services. If preauthorized charges are suspended, you must contact the third party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

**Collection Costs:**
If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

**ARBITRATION:**
PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

**Agreement to Arbitrate:**
Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**Claims Covered:**
- What Claims are subject to arbitration? All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law. Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

- Whose Claims are subject to arbitration? Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

- What time frame applies to Claims subject to arbitration? Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

- Broadest interpretation. Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

- What about Claims filed in Small Claims Court? Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only on an individual (non-class, non-representative) basis.

**How Arbitration Works:**
- How does a party initiate arbitration? The party filing an arbitration must choose one of the following three arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association, JAMS, and National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605          Web site:   www.adr.org

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610               Web site:   www.jamsadr.com

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405           Web site:   www.arbitration-forum.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

- What arbitration procedures and law are applicable in arbitration? A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will

3/18-3/22    CITGO Base & E-Bill

Citi Prod (Cox v. Hannah) 000037

apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

- **Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

- **Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account or other related accounts, or corporate affiliates are here considered as one person.

- **When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

**Survival and Severability of Terms:**

- This arbitration provision shall survive: **i)** termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; **ii)** the bankruptcy of any party; and **iii)** any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. Any different agreement regarding arbitration must be agreed to in writing.

**Credit Reporting:**

We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional cards on your account for others, you understand that we may report account information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on your (for example, when we review your account for a credit limit increase). If you wish to know the names of the agencies we have contacted, write us at the address listed on the billing statement. We will try to notify you by telephone or by mail of any legal process served on us in order to give you an opportunity to object to it, unless the law prohibits this notice.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address shown on your billing statement. We will promptly investigate the matter and if our investigation shows you are right, we will contact each credit reporting agency to whom we reported and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone and instruct you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

**Telephone Monitoring and Recording:**

From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

**Closing Your Account:**

You may close your account at any time by notifying us in writing. However, you remain responsible to pay the balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time for any reason without prior notice. We may also reissue a different card, account number, or different checks at any time. You must return the card or the checks to us upon request.

**Refusal of the Card:**

We are not responsible if a transaction on your account is not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity.

**Changing this Agreement:**

We can change this Agreement, including all fees and the annual percentage rate, at any time. We can also add or delete provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the balance, either all at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

**Enforcing this Agreement:**

We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Assignment**

We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

**Applicable Law:**

The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**For Further Information:**

Call us at the telephone number shown on your billing statement. You can also call toll-free at 1-800-756-2484.

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

©2002 Citibank (South Dakota), N.A.

## What To Do If There's An Error in Your Bill

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address provided in the Billing Rights Summary portion on the back of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.
- Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

- You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and
- The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Presorted
First-Class Mail
U.S. Postage Paid
Wheeling IL
Permit # 214

**Important information about your account enclosed.**

Reidentified
CITGO Base & E-Bill

Mailed 113,770
3/18-3/22

CITGO Credit Card Center
P.O. Box 6350
Des Moines, IA 50389-9030

3/02 CITGO5EB

Citi Prod (Cox v. Hannah) 000039

Dear CITGO Cardmember,

The issuer of your CITGO credit card account, Associates National Bank (Delaware), has merged with Citibank (South Dakota), N.A. As a result, the words "we, us, and our" as used in your existing Cardmember Agreement now refer to Citibank (South Dakota), N.A. and the terms and enforcement of your Cardmember Agreement will be governed by federal law and the law of South Dakota.

For additional changes regarding your account, see the Notice of Change in Terms below.

Sincerely,

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

## NOTICE OF CHANGE IN TERMS

Effective as of the first day of your first billing period that begins on or after May 1, 2002 ("Effective Date"), we are changing the terms of your account by amending and restating your existing Cardmember Agreement, including substituting or adding the provisions below. The terms and provisions contained in the attached Cardmember Agreement replace the terms and provisions of your existing Cardmember Agreement. We encourage you to read this notice and the attached Cardmember Agreement and save it for future reference.

**Margin Used to Calculate Periodic Finance Charges:** The Margin for purchases and cash advances will be 14.99%. If your account is closed because of default or becomes 60 days or more past due, the Margin for purchases and cash advances will increase to 18.99%. Please read the "Periodic Finance Charges" paragraph in the attached Cardmember Agreement.

**Late Fees:** We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $20 if your account balance is $200.00 or more.

**Minimum Amount Due:** Each month you must pay a minimum amount that is equal to the sum of the following amounts:

- The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

- The greater of amounts which exceed your credit limits or amounts which are past due; and

- Installment amounts due for mail and telephone order merchandise.

**Returned Payment Fee:** We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned/Convenience Check Fee:** We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Arbitration:** We are substituting a new arbitration provision which will replace the arbitration provision contained in your existing Cardmember Agreement. Please read the new arbitration provision carefully.

You have the right to reject the changes described in this Notice of Change in Terms. If you choose to reject the changes, you must notify us by writing to us at CITGO Credit Card Center, P.O. Box 9090, Des Moines, Iowa 50368-9090, within 25 days after the Effective Date. If you choose to reject the changes, your account will be closed and you may pay off the balance of your account under the existing terms. If you choose to reject the changes and your account has an annual fee, you will receive a pro rata refund of the fee as a credit to your account. If you use your account on or after the Effective Date, you agree to the changes even if you sent us notice rejecting the changes. The terms and enforcement of your account will be governed by federal law and the law of South Dakota even if you choose to reject the changes described in this Notice of Change in Terms.

The above is a summary of certain of the changes being made to your account. For more detailed information, please review the attached Cardmember Agreement carefully and keep it with your important records.

## Citibank (South Dakota), N.A.
## CARDMEMBER AGREEMENT

This Agreement is your Citibank (South Dakota), N.A. Cardmember Agreement. Please read and keep this Agreement for your records. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of your account.

To simplify this Agreement for you, the following definitions will apply. The words you, your, and yours mean all persons responsible for complying with this Agreement, including the person who applied to open the account and the person to whom we address billing statements. The word card means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this Agreement. The words we, us, and our mean Citibank (South Dakota), N.A. The words authorized user means any person to whom you give permission to use your account. The words convenience checks mean any more checks that we may provide for you to obtain a cash advance.

**Using Your Account and Your Credit Line:**
The card must be signed to be used. Whether you sign the card or not, you are fully responsible for complying with all the terms of this Agreement, including the obligation to pay us for all balances due on your account as specified in this Agreement. Your card must only be used for lawful transactions.

Your account will have separate credit lines for purchases and cash advances. Your initial purchase and cash advance credit limits appear on the card carrier. At our discretion and at any time, we may change your purchase or cash advance credit limit. We will notify you of any new limit amount either by sending you a notice or through your billing statement. A change may take effect before you receive notification from us. You may request a change to your purchase or cash advance credit limit by contacting Customer Service by telephone or mail.

The credit line for purchases is available to buy goods or services wherever the card is honored. Your cash advance line is available for cash through any bank or automated teller machine that accepts the card or by using convenience checks. The amount charged on your account, including purchases, cash advances, finance charges, fees, or other charges, must always remain below your applicable credit limit. However, if you exceed your purchase or cash advance credit limit you must still pay us. We may approve transactions that cause the balance to exceed your purchase or cash advance credit limit without waiving any of our rights under this Agreement.

**Additional Cards:**
You may request additional cards on your account for yourself or others and you may permit an authorized user to have access to the card or account number. However, if you do, you must pay us for all charges made by those persons, including charges for which you may not have intended to be responsible. You must notify us to revoke an authorized user's permission to use your account. If you do so, we may close the account and issue a new card or cards with a different account number. You are responsible for the use of each card issued on your account according to the terms of this Agreement.

**Membership Fee:**
If your card is a CITGO CELEBRITY card you will pay a $25 annual fee. The fee is added to the purchase balance and is non-refundable unless you notify us to cancel your account within 30 days from the mailing or delivery date of the billing statement on which the fee is billed.

**Billing:**
Your billing statement shows the balance, any finance charges, fees, the minimum payment, and the payment due date. It also shows your current purchase and cash advance credit limits; an itemized list of current charges, debits, payments and credits; a summary of the purchase and cash advance activity, including the finance charges; a rate summary; and other important information. If we deem your account uncollectible or if we institute delinquency collection proceedings by sending it to an outside collection agency or attorney for collection, we may, in our sole discretion, stop sending you billing statements.

You must notify us of a change in your address by contacting Customer Service by telephone or mail. We will mail or deliver the billing statement to only one address.

**How We Determine the New Balance:**
The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine the New Balance, we begin with the outstanding balance on your account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any purchases, cash advances and other debits and subtract any credits and payments credited as of that billing period. We then add the appropriate finance charges and fees and make other applicable adjustments.

**Periodic Finance Charges:**
You will pay a daily periodic rate on the daily balance for purchases and the daily balance for cash advances. The total periodic finance charge for each billing period is the sum of the daily periodic rate charges on the daily balance for purchases and the daily balance for cash advances for each day in the billing period. The daily periodic rate used in determining the periodic finance charge will be a variable rate, which may change from month to month. The daily periodic rate during each billing period will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal within the 90 calendar days immediately preceding, but not including, the first day of each billing period. The Margin for purchases and cash advances will be 14.99%. The initial daily periodic rate on your account, based on an Index of 4.75% as of March 13, 2002, will be a daily periodic rate of 0.05408% (19.74% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable daily periodic rate, which may increase the minimum payment due on your account. If you pay the full amount of the New Balance each month by the due date, no periodic finance charges will be assessed on new purchases. Your account will have a different rate of periodic finance charge after it is closed because of default or is 60 days or more past due. In that event, the Margin for purchases and cash advances will increase to 18.99%.

**Daily Balance Calculation:**
To get the daily balance for purchases and cash advances for each day, we take the beginning balance of purchases and cash advances on your account each day, including any accrued but unpaid finance charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) (to the daily balance for purchases), cash advances (to the daily balance for cash advances), or debit adjustments, and subtract any payments, credits or credit adjustments. Purchases and cash advances are included in the daily balance as of the later of the date of the transaction or the first day of the billing period in which the purchase or cash advance is entered on your account. However, if you pay the New Balance shown on your previous billing statement in full on or before the due date shown on that billing statement, new purchases will not be included in the daily balance for purchases.

**Minimum Finance Charge:**
You will pay a minimum periodic FINANCE CHARGE of $1.50 for each billing period during which any finance charge accrues on your account as a result of application of the daily periodic rate. We add the amount to the purchase balance if that balance is being assessed a finance charge. We add the amount to the cash advance balance if that balance is being assessed a finance charge. If a finance charge is being assessed on purchases and cash advances, we may add the minimum finance charge to either balance at our discretion.

**Transaction Fee for Cash Advances:**
You have obtained a cash advance if you obtain funds from an automated teller machine (ATM); through use of a convenience check or through a financial institution; or engage in another similar transaction. For each cash advance, we add an additional FINANCE CHARGE of 3.0% of the amount of the advance, but not less than $5. This fee will be added to the cash advance balance. (The amount of the cash advance may also include a surcharge that the ATM owner imposes.) The cash advance transaction fee may cause the annual percentage rate on the billing statement on which the cash advance first appears to exceed the corresponding annual percentage rate.

Citi Prod (Cox v. Hannah) 000040

**Credit Balances:**
You may not maintain a credit balance on your account in excess of any assigned credit limit. We will return to you any credit amount over $1 if the amount has been on your account longer than three months. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges posted to your account.

**Minimum Amount Due:**
Each month you must pay a minimum amount that is equal to the sum of the following amounts:

- The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;
- The greater of amounts which exceed your credit limits or amounts which are past due; and
- Installment amounts due for mail and telephone order merchandise.

**Payments:**
You must pay at least the minimum amount by the payment due date, and you may pay more at any time without a penalty. The New Balance shown on your billing statement may include amounts subject to different periodic rates. We will allocate your payments and credits to pay off balances of low periodic rates before paying off balances at higher periodic rates. The sooner you pay the New Balance, the less you will pay in finance charges.

Instructions for making payments are on your billing statement. Do not send cash payments. We can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. You agree to pay us in U.S. dollars drawn on funds on deposit in the United States using a payment check, similar instrument, or automatic debit that will be processed and honored by your bank. Payments received by 2:00 p.m. will be credited to your account as of the date received. All payments received after 2:00 p.m. will be credited to your account as of the next business day.

**Late Fee:**
We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $20 if your account balance is $200.00 or more.

**Returned Payment Fee:**
We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:**
We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Payment Services Fee:**
We will add a $5 fee (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for payment services we may offer which allow you, at your option, to make payments other than by mailing them to the payment address shown on your billing statement. In the event you request optional payment services, we will advise you of the fee associated with your request, and your use of the optional payment services thereafter constitutes your agreement to pay the associated fee. This fee does not apply to payments made through Account Online or other electronic bill payment options.

**Photocopy Fee:**
We will add a $5 fee per copy (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for each copy you request of your billing statements, checks, sales slips and/or memoranda of transactions, other than copies requested for purposes of investigating a billing error. In the event you request copies, we will advise you of the fee associated with your request, and your use of the copy services thereafter constitutes your agreement to pay the associated fee.

**Convenience Checks:**
Convenience checks may be used to purchase goods and services or to obtain cash up to the amount of your cash advance credit limit. We will treat convenience checks as a cash advance and charge them against your cash advance line. Each convenience check must be in the form we have issued and must be used according to any instructions we give you. Convenience checks may be used only by the person whose name is printed on them. Convenience checks may not be used to pay any amount owed to us under this Agreement or any other Citibank credit card agreement. We will not certify any convenience checks, nor will we make paid convenience checks.

**Lost or Stolen Cards, Account Numbers, or Convenience Checks:**
If any card, account number, or check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling 1-800-756-2484 or Customer Service at the telephone number shown on your billing statement. We may require you to provide certain information in writing to help us find out what happened, and to comply with such procedures as we may require in connection with our investigation. You may be liable for unauthorized use of the account, but not for more than $50. You won't be liable for unauthorized purchases or cash advances made after we've been notified of the loss or the theft; however, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

**Default:**
You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make a payment to any other creditor when due, file for bankruptcy, exceed any credit limit, pay by a check or similar instrument that is not honored or that we must return because it cannot be processed, or pay by automatic debit that is returned unpaid. If you default, we may close your account and demand immediate payment of the full balance.

**Preauthorized Charges:**
If you default, if the card is lost or stolen, or we change your account or account number for any reason, we may suspend automatic charges on that account to third party vendors for insurance premiums or other goods or services. If preauthorized charges are suspended, you must contact the third party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

**Collection Costs:**
If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

---

## ARBITRATION:

PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

**Agreement to Arbitrate:**
Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**Claims Covered:**
- What Claims are subject to arbitration? All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

- Whose Claims are subject to arbitration? Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

- What time frame applies to Claims subject to arbitration? Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

- Broadest Interpretation. Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

- What about Claims filed in Small Claims Court? Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only on an individual (non-class, non-representative) Claim.

**How Arbitration Works:**
- How does a party initiate arbitration? The party filing an arbitration must choose one of the following three arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association, JAMS, and National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605        Web site:   www.adr.org

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610        Web site:   www.jamsadr.com

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405        Web site:   www.arbitration-forum.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

- What procedures and law are applicable in arbitration? A single, neutral arbitrator will resolve Claims. The arbitrator will be a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will

3/18-3/22   CITIGO Base & E-Bill

apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. In an arbitration of arbitration, that determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

- **Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If your have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

- **Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we execute arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

- **When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days have passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

**Survival and Severability of Terms:**
- This arbitration provision shall survive: (i) termination or changes in this Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. Any different agreement regarding arbitration must be agreed to in writing.

### Credit Reporting:
We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional cards on your account for others, you understand that we may report account information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit limit increase). If you wish to know the names of the agencies we have contacted, write us at the address listed on the billing statement. We will try to notify you by telephone or by mail of any legal process served on us in order to give you an opportunity to object to it, unless the law prohibits this notice.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address shown on your billing statement. We will promptly investigate the matter and if our investigation shows you are right, we will contact each credit reporting agency to whom we reported and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone and instruct you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

### Telephone Monitoring and Recording:
From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

### Closing Your Account:
You may close your account at any time by notifying us in writing. However, you remain responsible to pay the balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time for any reason without prior notice. We may also reissue a different card, account number, or different checks at any time. You must return the card or the checks to us upon request.

### Refusal of the Cards
We are not responsible if a transaction on your account is not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity.

### Changing this Agreement
We can change this Agreement, including all fees and the annual percentage rate, at any time. We can also add or delete provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the balance, either at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

### Enforcing this Agreement:
We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

### Assignment:
We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

### Applicable Law:
The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

### For Further Information:
Call us at the telephone number shown on your billing statement. You can also call toll-free at 1-800-755-2484.

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

@2002 Citibank (South Dakota), N.A.

## What To Do If There's An Error In Your Bill

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address provided in the Billing Rights Summary portion on the back of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.
- Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:
- You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and
- The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Citi Prod (Cox v. Hannah) 000043

SPM2D 30'E

CITGO Credit Card Center
P.O. Box 9090
Des Moines, IA 50368-9090

Presorted
First-Class Mail
U.S. Postage Paid
Wheeling IL
Permit # 214

**Important information about your account enclosed.**

A000000000

SAMPLE A. SAMPLE
123 ANY STREET
ANYTOWN, U.S.  12345-6789



**Citgo**
**Never Notified &/or**
**Debit Ratified**

Mailed 174,490
3/4-3/6

## IMPORTANT NOTICE REGARDING YOUR ACCOUNT

Dear CITGO Cardmember,

Your CITGO credit card account has been transferred to Citibank (South Dakota), N.A. Please read this notice carefully for changes regarding your account. This Notice supersedes and replaces any prior notice you may have received regarding changes to your CITGO credit card account.

As a result of the transfer, and the inactivity of your account, your account will be closed on April 15, 2002. However, you can open a new CITGO credit card account simply by using your existing card on or after April 16, 2002. If you use your card on or after that date, your existing account balance will be transferred to your new account. You may continue to use your existing CITGO credit card to access your new account until we issue you a replacement card. Below is the Cardmember Agreement and Credit Card Information with full details of the terms and conditions of the new account. We encourage you to read this Notice and Cardmember Agreement and save it for future reference.

If you do not want a new account under the terms and conditions described in the Cardmember Agreement below, do not use your CITGO credit card on or after April 15, 2002. You may then pay off any existing account balance in accordance with the terms of your previous cardmember agreement.

As a valued CITGO cardmember, we appreciate your business and look forward to serving you in the years ahead.

Sincerely,

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

### Citibank (South Dakota), N.A.
### CARDMEMBER AGREEMENT

This Agreement is your Citibank (South Dakota), N.A. Cardmember Agreement. Please read and keep this Agreement for your records. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of your account.

To simplify this Agreement for you, the following definitions will apply. The words you, your, and yours mean all persons responsible for complying with this Agreement, including the person who applied to open this Account and any person to whom we address billing statements. The word card means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this Agreement. The words we, us, and our mean Citibank (South Dakota), N.A. The words authorized user means any person to whom you give permission to use your account. The words convenience checks mean one or more checks that we may provide for you to obtain a cash advance.

**Using Your Account and Your Credit Line**

The card must be signed to be used. Whether you sign the card or not, you are fully responsible for complying with all the terms of this Agreement, including the obligation to pay us for all balances due on your account as specified in this Agreement. Your card must only be used for lawful transactions.

Your account will have separate credit lines for purchases and cash advances. Your initial purchase and cash advance credit limits appear on the card carrier. At our discretion and at any time, we may change your purchase or cash advance credit limit. We will notify you of any new limit amount either by sending you a notice or through our billing statement. A change may take effect before you receive notification from us. You may request a change to your purchase or cash advance credit limit by contacting Customer Service by telephone or mail.

The credit line for purchases is available to buy goods or services wherever the card is honored. Your cash advance line is available for cash through any bank or automated teller machine that accepts the card or by using convenience checks. The amount charged on your account, including purchases, cash advances, finance charges, fees, or other charges, must always remain below your applicable credit limit. However, if you exceed your purchase or cash advance credit limit you must still pay us. We may approve transactions that cause the balance to exceed your purchase or cash advance credit limit without waiving any of our rights under this Agreement.

**Additional Cards**

You may request additional cards on your account for yourself or others and you may permit an authorized user to have access to the card or account number. However, if you do, you must pay us for all charges made by these persons, including charges for which you may not have intended to be responsible. You must notify us to revoke an authorized user's permission to use your account. If you do so, we may close the account and issue a new card or cards with a different account number. You are responsible for the use of each card issued on your account according to the terms of this Agreement.

**Membership Fee:**

Your card is a CITGO CELEBRITY card you will pay a $25 annual fee. The fee is added to the purchase balance and is non-returnable unless you notify us to cancel your account within 30 days from the mailing or delivery date of the billing statement on which the fee is billed.

**Billing:**

Your billing statement shows the balance, any finance charges, fees, the minimum payment, and the payment due date. It also shows your current purchase and cash advance credit limits; an itemized list of current charges, debits, payments and credits; a summary of the purchase and cash advance activity, including the finance charges; a rate summary; and other important information. If we deem your account uncollectible or if we institute delinquency collection proceedings by sending it to an outside collection agency or attorney for collection, we may, in our sole discretion, stop sending you billing statements.

You may notify us of a change in your address by contacting Customer Service by telephone or mail. We will mail or deliver the billing statement to only one address.

**How We Determine the New Balance**

The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine the New Balance, we begin with the outstanding balance on your account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any purchases, cash advances and other debits and subtract any credits and payments credited as of that billing period. We then add the appropriate finance charges and fees and make other applicable adjustments.

**Periodic Finance Charges:**

We will pay a daily periodic rate on the daily balance for purchases and the daily balance for cash advances. The total periodic finance charge for each billing period is the sum of the daily periodic rate charges on the daily balance for purchases and the daily balance for cash advances for each day in the billing period. The daily periodic rate used in determining the periodic finance charge will be a variable rate, which may change from month to month. The daily periodic rate during each billing period will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal within the 90 calendar days immediately preceding, but not including, the first day of each billing period. The Margin for purchases and cash advances will be 14.99%. The initial daily periodic rate on your account, based on an Index of 5.0% as of February 6, 2002, will be a daily periodic rate of 0.05479% (19.99% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable daily periodic rate, which may increase the minimum payment due on your account. If you pay the full amount of the New Balance each month by the due date, no periodic finance charges will be assessed on new purchases. Your account will have a different rate of periodic finance charge after it is closed because of default or is 60 days or more past due. In that event, the Margin for purchases and cash advances will increase to 18.99%.

**Daily Balance Calculation:**

To get the daily balance for purchases and cash advances for each day, we take the beginning balance of purchases and cash advances on your account each day, including any accrued but unpaid finance charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) (to the daily balance for purchases), cash advances (to the daily balance for cash advances), or debit adjustments, and subtract any payments, credits or credit adjustments. Purchases and cash advances are included in the daily balance as of the later of the date of the transaction or the first day of the billing period in which the purchase or cash advance is entered on your account. However, if you pay the New Balance shown on your previous billing statement in full on or before the due date shown on that billing statement, new purchases will not be included in the daily balance for purchases.

**Minimum Finance Charge:**

You will pay a minimum periodic FINANCE CHARGE of $1.50 for each billing period during which any finance charge accrues on your account as a result of application of the daily periodic rate. We add the amount to the purchase balance if that balance is being assessed a finance charge. We add this amount to the cash advance balance if that balance is being assessed a finance charge. If a finance charge is being assessed on purchases and cash advances, we may add the minimum finance charge to either balance at our discretion.

**Transaction Fee for Cash Advances:**

You have obtained a cash advance if you obtain funds from an automated teller machine (ATM); through use of a convenience check or through a financial institution; or engage in another similar transaction. For each cash advance, we add an additional FINANCE CHARGE of 5.0% of the amount of the advance, but not less than $5. This fee will be added to the cash advance balance. (The amount of the cash advance may also include a surcharge that the ATM owner imposes.) The cash advance transaction fee may cause the annual percentage rate on the billing statement on which the cash advance first appears to exceed the corresponding annual percentage rate.

**Credit Balance:**

You may not maintain a credit balance on your account in excess of any assigned credit limit. We will return to you any credit amount over $1 if the amount has been on your account longer than three months. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges posted to your account.

**Minimum Amount Due:**

Each month you must pay a minimum amount that is equal to the sum of the following amounts:

- The greater of 2.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

- The greater of amounts which exceed your credit limits or amounts which are past due; and

- Installment amounts due for mail and telephone order merchandise.

**Payments:**

You must pay at least the minimum amount by the payment due date, and you may pay more at any time without a penalty. The New Balance shown on your billing statement may include amounts subject to different periodic rates. We will allocate your payments and credits to pay off balances at low periodic rates before paying off balances at higher periodic rates. The sooner you pay the New Balance, the less you will pay in finance charges.

Instructions for making payments are on your billing statement. Do not send cash payments. We can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. You agree to pay us in U.S. dollars drawn on funds on deposit in the United States using a payment check, similar instrument, or automatic debit that will be processed and honored by your bank. Payments received by 2:00 p.m. will be credited to your account as of the date received. Payments received after 2:00 p.m. will be credited to your account as of the next business day.

Citi Prod (Cox v. Hannah) 000044

**Late Fees:**
We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $30 if your account balance is $200.00 or more.

**Returned Payment Fee:**
We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:**
We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Payment Services Fee:**
We will add a $5 fee (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for payment services we may offer which allow you, at your option, to make payments other than by mailing them to the payment address shown on your billing statement. In the event you request optional payment services, we will advise you of the fee associated with your request, and your use of the optional payment services thereafter constitutes your agreement to pay the associated fee. This fee does not apply to payments made through Account Online or other electronic bill payment options.

**Photocopy Fee:**
We will add a $5 fee per copy (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for each copy you request of your billing statements, checks, sales slips and/or memoranda of transactions, other than copies requested for purposes of investigating a billing error. In the event you request copies, we will advise you of the fee associated with your request, and your use of the copy services thereafter constitutes your agreement to pay the associated fee.

**Convenience Checks:**
Convenience checks may be used to purchase goods and services or to obtain cash up to the amount of your cash advance credit limit. We will treat convenience checks as a cash advance and charge them against your cash advance line. Each convenience check must be in the form we have issued and must be used according to any instructions we give you. Convenience checks may be used only by the person whose name is printed on them. Convenience checks may not be used to pay any amount owed to us under this Agreement or any other Citibank credit card agreement. We will not certify any convenience checks, nor will we return paid convenience checks.

**Lost or Stolen Cards, Account Numbers, or Convenience Checks:**
If any card, account number, or check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling 1-800-756-2484 or Customer Service at the telephone number shown on your billing statement. We may require you to provide certain information in writing to help us find out what happened, and to comply with such procedures as we may require in connection with our investigation. You may be liable for unauthorized use of the account, but not for more than $50. You won't be liable for unauthorized purchases or cash advances made after we've been notified of the loss or the theft; however, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

**Default:**
You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make a payment to any other creditor when due, file for bankruptcy, exceed any credit limit, pay by a check or similar instrument that is not honored or that we must return because it cannot be processed, or pay by automatic debit that is returned unpaid. If you default, we may close your account and demand immediate payment of the full balance.

**Preauthorized Charges:**
If you default, if the card is lost or stolen, or we change your account or account number for any reason, we may suspend automatic charges on that account to third party vendors for insurance premiums or other goods or services. If preauthorized charges are suspended, you must contact the third party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

**Collection Costs:**
If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

---

**ARBITRATION:**
PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

**Agreement to Arbitrate:**
Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**Claims Covered:**
• What Claims are subject to arbitration? All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence,

statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

• Whose Claims are subject to arbitration? Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

• What time frame applies to Claims subject to arbitration? Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

• Broadest interpretation. Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

• What about Claims filed in Small Claims Court? Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only on individual (non-class, non-representative) basis.

**How Arbitration Works:**
• How does a party initiate arbitration? The party filing an arbitration must choose one of the following three arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association, JAMS, and National Arbitration Forum. Any arbitrators hearing that you utilized will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration by contacting the firms as follows:

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605         Web site:   www.adr.org

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610               Web site:   www.jamsadr.com

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405          Web site:   www.arbitration-forum.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, the party can still require arbitration at a later time or in connection with any other Claims.

• What procedures and law are applicable in arbitration? A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with the Agreement, in which case the Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

• Who pays? Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay; unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from the other party if the arbitrator, applying applicable law, so determines.

• Who can be a party? Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

• When is an arbitration award final? The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a

Citi Prod (Cox v. Hannah) 000045

proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

- **Survival and Severability of Terms:**
  - This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, and the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. Any different agreement regarding arbitration must be agreed to in writing.

**Credit Reporting:**
We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional cards on your account for others, you understand that we may report account information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit limit increase). If you wish to know the names of the agencies we have contacted, write us at the address listed on the billing statement. We will try to notify you by telephone or by mail of any legal process served on us in order to give you an opportunity to object to it, unless the law prohibits this notice.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address shown on your billing statement. We will promptly investigate the matter and if our investigation shows you are right, we will contact each credit reporting agency to whom we reported and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone and instruct you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

**Telephone Monitoring and Recording:**
From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

**Closing Your Account:**
You may close your account at any time by notifying us in writing. However, you remain responsible to pay the balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time for any reason without prior notice. We may also reissue a different card, account number, or different checks at any time. You must return that card or the checks to us upon request.

**Refusal of the Card:**
We are not responsible if a transaction on your account is not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity.

**Changing this Agreement:**
We can change this Agreement, including all fees and the annual percentage rate, at any time. We can also add or delete provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the balance, either at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

**Enforcing this Agreement:**
We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Assignment:**
We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

**Applicable Law:**
The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**For Further Information:**
Call us at the telephone number shown on your billing statement. You can also call toll-free at 1-800-756-2484.

Kendal E. Stork
President & CEO
Citibank (South Dakota), N.A.

©2002 Citibank (South Dakota), N.A.

---

## What To Do If There's An Error In Your Bill.

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us on a separate sheet at the address provided in the Billing Rights Summary portion on the back of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.
- Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report you account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:
- You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and
- The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

### Credit Card Information

| | |
|---|---|
| Annual percentage rate (APR) for purchases | 19.99% |
| Other APRs | Cash advance APR: 19.99% Default rate: 23.99%. See explanation below.* |
| Variable rate information | Your APRs may vary. The rate for purchases and cash advances is determined monthly by adding 14.99% to the Index.** The default rate is determined monthly by adding 18.99% to the Index.** |
| Grace period for repayment of balances for purchases | 25 days if you pay your balance in full by the due date. |
| Method of computing the balance for purchases | Average daily balance (including new purchases) |
| Annual fees | CITGO Plus Card: None CITGO Celebrity Card: $25 |
| Minimum finance charge | $1.50 |

Transaction fee for cash advances: 5% of the amount of each cash advance, but not less than $5.00.
Late fee: $10.00 if your account balance is between $25.00 and $99.99; $15.00 if your account balance is between $100.00 and $199.99; $20.00 if your account balance is $200.00 or more.

*Your purchase and cash advance APRs will increase to the default rate if your account becomes 60 days past due or is closed because of default.
**The Index will be the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal within the 90 calendar days immediately preceding the first day of each billing cycle.