Citi Prod (Cox v. Hannah) 000047

CITGO Credit Card Center
P.O. Box 9090
Des Moines, IA 50368-9090

Presorted
First-Class Mail
U.S. Postage Paid
Wheeling IL
Permit # 214

**Important information about your account enclosed.**

A000000000

SAMPLE A. SAMPLE
123 ANY STREET
ANYTOWN, U.S.  12345-6789



**Citgo**
**Never Notified &/or**
**Debit Ratified**

Mailed 174,490
3/4-3/6

## IMPORTANT NOTICE REGARDING YOUR ACCOUNT

Dear CITGO Cardmember,

Your CITGO credit card account has been transferred to Citibank (South Dakota), N.A. Please read this notice carefully for changes regarding your account. This Notice supersedes and replaces any prior notice you may have received regarding changes to your CITGO credit card account.

As a result of the transfer, and the inactivity of your account, your account will be closed on April 15, 2002. However, you can open a new CITGO credit card account simply by using your existing card on or after April 15, 2002. If you use your card on or after that date, your existing account balance will be transferred to your new account. You may continue to use your existing CITGO credit card to access your new account until we issue you a replacement card. Below is the Cardmember Agreement and Credit Card Information with full details of the terms and conditions of the new account. We encourage you to read this Notice and Cardmember Agreement and save it for future reference.

If you do not want a new account under the terms and conditions described in the Cardmember Agreement below, do not use your CITGO credit card on or after April 15, 2002. You may then pay off any existing account balance in accordance with the terms of your previous cardmember agreement.

As a valued CITGO cardmember, we appreciate your business and look forward to serving you in the years ahead.

Sincerely,

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

### Citibank (South Dakota), N.A.
### CARDMEMBER AGREEMENT

This Agreement is your Citibank (South Dakota), N.A. Cardmember Agreement. Please read and keep this Agreement for your records. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of your account.

To simplify this Agreement for you, the following definitions will apply. The words you, your, and yours mean all persons responsible for complying with this Agreement, including the person who applied to open the account and the person to whom we address billing statements. The word card means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this Agreement. The words we, us, and our mean Citibank (South Dakota), N.A. The words authorized user means any person to whom you give permission to use your account. The words convenience checks mean one or more checks that we may provide for you to obtain a cash advance.

**Using Your Account and Your Credit Line:**
The card must be signed to be used. Whether you sign the card or not, you are fully responsible for complying with all the terms of this Agreement, including the obligation to pay us for all balances due on your account as specified in this Agreement. Your card must only be used for lawful transactions.

Your account will have separate credit lines for purchases and cash advances. Your initial purchase and cash advance credit limits appear on the card carrier. At our discretion and at any time, we may change your purchase or cash advance credit limit. We will notify you of any new limit amount either by sending you a notice or through your billing statement. A change may take effect before you receive notification from us. You may request a change to your purchase or cash advance credit limit by contacting Customer Service by telephone or mail.

The credit line for purchases is available to buy goods or services wherever the card is honored. Your cash advance line is available for cash through any bank or automated teller machine that accepts the card or by using convenience checks. The amount charged on your account, including purchases, cash advances, finance charges, fees, or other charges, must always remain below your applicable credit limit. However, if you exceed your purchase or cash advance credit limit you must still pay us. We may approve transactions that cause the balance to exceed your purchase or cash advance credit limit without waiving any of our rights under this Agreement.

**Additional Cards:**
You may request additional cards on your account or yourself or others and you may permit an authorized user to have access to the card or account number. However, if you do, you must pay us for all charges made by those persons, including charges for which you may not have intended to be responsible. You must notify us to revoke an authorized users permission to use your account. If you do so, we may close the account and issue a new card with a different account number. You are responsible for the use of each card issued on your account according to the terms of this Agreement.

**Membership Fee:**
Your card is a CITGO CELEBRITY card you will pay a $25 annual fee. The fee is added to the purchase balance and is non-refundable unless you notify us to cancel your account within 30 days from the mailing or delivery date of the billing statement on which the fee is billed.

**Billing:**
Your billing statement shows the balance, any finance charge, fees, the minimum payment, and the payment due date. It also shows your current purchase and cash advance credit limits; an itemized list of current charges, debits, payments and credits; a summary of the purchase and cash advance activity, including the finance charges; a rate summary; and other important information. If we deem your account uncollectible or if we institute delinquency collection proceedings by sending it to an outside collection agency or attorney for collection, we may, in our sole discretion, stop sending you billing statements.

You must notify us of a change in your address by contacting Customer Service by telephone or mail. We will mail or deliver the billing statement to only one address.

**How We Determine the New Balance:**
The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine the New Balance, we begin with the outstanding balance on your account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any purchases, cash advances and other debits and subtract any credits and payments credited as of that billing period. We then add the appropriate finance charges and fees and make other applicable adjustments.

**Periodic Finance Charges:**
You will pay a daily periodic rate on the daily balance for purchases and the daily balance for cash advances. The total periodic finance charge for each billing period is the sum of the daily periodic rate charges on the daily balance for purchases and the daily balance for cash advances for each day in the billing period. The daily periodic rate used in determining the periodic finance charge will be a variable rate, which may change from month to month. The daily periodic rate during each billing period will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal within the 90 calendar days immediately preceding, but not including, the first day of each billing period. The Margin for purchases and cash advances will be 14.99%. The initial daily periodic rate on your account, based on an Index of 5.0% as of February 6, 2002, will be a daily periodic rate of 0.05476% (19.99% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable daily periodic rate, which may increase the minimum payment due on your account. If you pay the full amount of the New Balance each month by the due date, no periodic finance charges will be assessed on new purchases. Your account will have a different rate of periodic finance charge after it is closed because of default, or is 60 days or more past due. In that event, the Margin for purchases and cash advances will increase to 18.99%.

**Daily Balance Calculation:**
To get the daily balance for purchases and cash advances for each day, we take the beginning balance of purchases and cash advances on your account each day, including any accrued but unpaid finance charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) (to the daily balance for purchases), cash advances (to the daily balance for cash advances), or debit adjustments, and subtract any payments, credits or credit adjustments. Purchases and cash advances are included in the daily balance as of the date of the transaction or the first day of the billing period in which the purchase or cash advance is entered on your account. However, if you pay the New Balance shown on your previous billing statement in full on or before the due date shown on that billing statement, new purchases will not be included in the daily balance for purchases.

**Minimum Finance Charge:**
You will pay a minimum periodic FINANCE CHARGE of $1.50 for each billing period during which any finance charge accrues on your account as a result of application of the daily periodic rate. We add the amount to the purchase balance if that balance is being assessed a finance charge. We add the amount to the cash advance balance if that balance is being assessed a finance charge. If a finance charge is being assessed on purchases and cash advances, we may add the minimum finance charge to either balance at our discretion.

**Transaction Fee for Cash Advances:**
You have obtained a cash advance if you obtain funds from an automated teller machine (ATM) through use of a convenience check or through a financial institution, or engage in another similar transaction. For each cash advance, we add an additional FINANCE CHARGE of 5.0% of the amount of the advance, but not less than $5. This fee will be added to the cash advance balance. (The amount of the cash advance may also include a surcharge that the ATM owner imposes.) The cash advance transaction fee may cause the finance charge annual percentage rate on the billing statement on which the cash advance first appears to exceed the corresponding annual percentage rate.

**Credit Balance:**
You may not maintain a credit balance on your account in excess of any assigned credit limit. We will return to you any credit amount over $1 if the amount has been on your account longer than three months. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges posted to your account.

**Minimum Amount Due:**
Each month you must pay a minimum amount that is equal to the sum of the following amounts:

- The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;
- The greater of amounts which exceed your credit limits or amounts which are past due; and
- Installment amounts due for mail and telephone order merchandise.

**Payments:**
You must pay at least the minimum amount by the payment due date, and you may pay more at any time without a penalty. The New Balance shown on your billing statement may include amounts subject to different periodic rates. We will allocate your payments and credits to pay off balances at low periodic rates before paying off balances at higher periodic rates. The sooner you pay the New Balance, the less you will pay in finance charges.

Instructions for making payments are on your billing statement. Do not send cash payments. We accept legal late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. You agree to pay us in U.S. dollars drawn on funds on deposit in the United States using a personal check, similar instrument, or automatic debit that will be processed and honored by your bank. Payments received by 2:00 p.m. will be credited to your account as of the date received. Payments received after 2:00 p.m. will be credited to your account as of the next business day.

**Late Fee:**
We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99, $15 if your account balance is between $100.00 and $199.99, and $30 if your account balance is $200.00 or more.

**Returned Payment Fee:**
We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:**
We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if your account has been closed, or if the card has expired.

**Payment Services Fee:**
We will add a $5 fee (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for payment services we may offer which allow you, at your option, to make payments other than by mailing them to the payment address shown on your billing statement. In the event you request optional payment services, we will advise you of the fee associated with your request, and your use of the optional payment services thereafter constitutes your agreement to pay the associated fee. This fee does not apply to payments made through Account Online or other electronic bill payment options.

**Photocopy Fee:**
We will add a $5 fee per copy (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for each copy you request of your billing statements, checks, sales slips and/or memoranda of transactions, other than copies requested for purposes of investigating a billing error. In the event you request copies, we will advise you of the fee associated with your request, and your use of the copy services thereafter constitutes your agreement to pay the associated fee.

**Convenience Checks:**
Convenience checks may be used to purchase goods and services or to obtain cash up to the amount of your cash advance credit limit. We will treat convenience checks as a cash advance and charge them against your cash advance fine. Each convenience check must be in the form we have issued and must be used according to any instructions we give you. Convenience checks may be used only by the person whose name is printed on them. Convenience checks may not be used to pay any amount owed to us under this Agreement or any other Citibank credit card agreement. We will not certify any convenience checks, nor will we return paid convenience checks.

**Lost or Stolen Cards, Account Numbers, or Convenience Checks:**
If any card, account number, or check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling 1-800-755-2484 or Customer Service at the telephone number shown on your billing statement. We may require you to provide certain information in writing to help us find out what happened, and to comply with such procedures as we may require in connection with our investigation. You may be liable for unauthorized use of the account, but not for more than $50. You won't be liable for unauthorized purchases or cash advances made after we have been notified of the loss or the theft; however, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

**Default:**
You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make a payment to any other creditor when due, file for bankruptcy, exceed any credit limit, pay by a check or similar instrument that is not honored or that we must return because it cannot be processed, or pay by automatic debit that is returned unpaid. If you default, we may close your account and demand immediate payment of the full balance.

**Preauthorized Charges:**
If you default, if the card is lost or stolen, or we change your account or account number for any reason, we may suspend automatic charges on that account to third party vendors for insurance premiums or other goods or services. If preauthorized charges are suspended, you must contact the third party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

**Collection Costs:**
If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

---

**ARBITRATION:**
PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

**Agreement to Arbitrate:**
Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**Claims Covered:**
- What Claims are subject to arbitration? All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence,

statutory or regulatory provisions, or other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

- Whose Claims are subject to arbitration? Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

- What time frame applies to Claims subject to arbitration? Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

- Broadest interpretation. Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

- What about Claims filed in Small Claims Court? Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only on an individual (non-class, non-representative) Claim.

**How Arbitration Works:**
- How does a party initiate arbitration? The party filing an arbitration must choose one of the following three arbitration firms and follow its rules and procedures for initiating arbitration. American Arbitration Association, JAMS, and National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

| | |
|---|---|
| American Arbitration Association 335 Madison Avenue, Floor 10 New York, NY 10017-4605 | Web site: www.adr.org |
| JAMS 1920 Main Street, Suite 300 Irvine, CA 92610 | Web site: www.jamsadr.com |
| National Arbitration Forum P.O. Box 50191 Minneapolis, MN 55405 | Web site: www.arbitration-forum.com |

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

- What procedures and law are applicable in arbitration? A single, neutral arbitrator will resolve Claims. The arbitrator will be a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

- Who pays? Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

- Who can be a party? Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including alleged Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

- When is an arbitration award final? The arbitration's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a

Citi Prod (Cox v. Hannah) 000049

proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

**Survival and Severability of Terms:**
This arbitration provision shall survive: (i) termination or changes in this Agreement, the account, and the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. Any different agreement regarding arbitration must be agreed to in writing.

**Credit Reporting:**
We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional cards on your account for others, you understand that we may report account information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit limit increase). If you wish to know the names of the agencies we have contacted, write us at the address listed on the billing statement. We will try to notify you by telephone or by mail of any legal process served on us in order to give you an opportunity to object to it, unless the law prohibits the notice.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address shown on your billing statement. We will promptly investigate the matter and if our investigation shows you are right, we will contact each credit reporting agency to whom we reported and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone and instruct you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

**Telephone Monitoring and Recording:**
From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

**Closing Your Account:**
You may close your account at any time by notifying us in writing. However, you remain responsible to pay the balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time for any reason without prior notice. We may also reissue a different card, account number, or different checks at any time. You must return the card or the checks to us upon request.

**Refusal of the Card:**
We are not responsible if a transaction on your account is not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity.

**Changing this Agreement:**
We can change this Agreement, including all fees and the annual percentage rate, at any time. We can also add or delete provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the balance, either at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

**Enforcing this Agreement:**
We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Assignment:**
We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

**Applicable Law:**
The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**For Further Information:**
Call us at the telephone number shown on your billing statement. You can also call toll-free at 1-800-758-2484.

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

©2002 Citibank (South Dakota), N.A.

## What To Do If There's An Error In Your Bill.

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address provided in the Billing Rights Summary portion on the back of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.
- Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:
- You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and
- The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

### Credit Card Information

| | |
|---|---|
| Annual percentage rate (APR) for purchases | 19.99% |
| Other APRs | Cash advance APR: 19.99%. Default rate: 23.99%. See explanation below.* |
| Variable rate information | Your APRs may vary. The rate for purchases and cash advances is determined monthly by adding 14.99% to the Index.** The default rate is determined monthly by adding 18.99% to the Index.** |
| Grace period for repayment of balances for purchases | 25 days if you pay your balance in full by the due date. |
| Method of computing the balance for purchases | Average daily balance (including new purchases) |
| Annual fees | CITGO Plus Card: None CITGO Celebrity Card: $25 |
| Minimum finance charge | $1.50 |

Transaction fee for cash advances: 5% of the amount of each cash advance, but not less than $5.00.
Late fee: $10.00 if your account balance is between $25.00 and $99.99; $15.00 if your account balance is between $100.00 and $199.99; $20.00 if your account balance is $200.00 or more.

*Your purchase and cash advance APRs will increase to the default rate if your account becomes 60 days past due or is closed because of default.
**The Index is the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal within the 90 calendar days immediately preceding the first day of each billing cycle.

Citi Prod (Cox v. Hannah) 000050

Citi Prod (Cox v. Hannah) 000051

2/02 CITGO25

CITGO Credit Card Center
P.O. Box 9090
Des Moines, IA 50368-9090

Presorted
First-Class Mail
U.S. Postage Paid
Wheeling IL
Permit # 214

**Important information about your account enclosed.**

A000000000

SAMPLE A SAMPLE
123 ANY STREET
ANYTOWN, US 12345-6789



**CITGO**
**Low Fico ($25)**

Mailed 12,805
2/13-2/15

Dear CITGO Cardmember,

The issuer of your CITGO credit card account, Associates National Bank (Delaware), has merged with Citibank (South Dakota), N.A. As a result, the words "we, us, and our" as used in your existing Cardmember Agreement now refer to Citibank (South Dakota), N.A. and the terms and enforcement of your Cardmember Agreement will be governed by federal law and the law of South Dakota.

For additional changes regarding your account, see the Notice of Change in Terms below.

Sincerely,

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

## NOTICE OF CHANGE IN TERMS

Effective as of the first day of your first billing period that begins on or after March 15, 2002 ("Effective Date"), we are changing the terms of your account by amending and restating your existing Cardmember Agreement, including substituting or adding the provisions below. The terms and provisions contained in the attached Cardmember Agreement replace the terms and provisions of your existing Cardmember Agreement. We encourage you to read this notice and the attached Cardmember Agreement and save it for future reference.

**Margin Used to Calculate Periodic Finance Charges:** The Margin for purchases and cash advances will be 14.99%. If your account is closed because of default or becomes 60 days or more past due, the Margin for purchases and cash advances will increase to 18.99%. Please read the "Periodic Finance Charges" paragraph in the attached Cardmember Agreement.

**Late Fee:** We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $20 if your account balance is $200.00 or more.

**Minimum Amount Due:** Each month you must pay a minimum amount that is equal to the sum of the following amounts:

• The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

• The greater of amounts which exceed your credit limits or amounts which are past due; and

• Installment amounts due for mail and telephone order merchandise.

**Returned Payment Fee:** We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:** We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Arbitration:** We are substituting a new arbitration provision which will replace the arbitration provision contained in your existing Cardmember Agreement. Please read the new arbitration provision carefully.

You have the right to reject the changes described in this Notice of Change in Terms. If you choose to reject the changes, you must notify us by writing to us at CITGO Credit Card Center, P.O. Box 9230, Des Moines, Iowa 50368-9230, within 25 days after the Effective Date. If you choose to reject the changes, your account will be closed and you may pay off the balance of your account under the existing terms. If you choose to reject the changes and your account has an annual fee, you will receive a pro rata refund of the fee as a credit to your account. If you use your account on or after the Effective Date, you agree to the changes even if you sent us notice rejecting the changes. The terms and enforcement of your account will be governed by federal law and the law of South Dakota even if you choose to reject the changes described in this Notice of Change in Terms.

The above is a summary of certain of the changes being made to your account. For more detailed information, please review the attached Cardmember Agreement carefully and keep it with your important records.

## Citibank (South Dakota), N.A. CARDMEMBER AGREEMENT

This Agreement is your Citibank (South Dakota), N.A. Cardmember Agreement. Please read and keep this Agreement for your records. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of your account.

To simplify this Agreement for you, the following definitions will apply. The words you, your, and yours mean all persons responsible for complying with this Agreement, including the person who applied to open the account and the person to whom we address billing statements. The word card means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this Agreement. The words we, us, and our mean Citibank (South Dakota), N.A. The words authorized user means any person to whom you give permission to use your account. The words convenience checks mean one or more checks that we may provide for you to obtain a cash advance.

**Using Your Account and Your Credit Line:**
The card must be signed to be used. Whether you sign the card or not, you are fully responsible for complying with all the terms of this Agreement, including the obligation to pay us for all balances due on your account as specified in this Agreement. Your card must only be used for lawful transactions.

Your account will have separate credit lines for purchases and cash advances. Your initial purchase and cash advance credit limits appear on the card carrier. At our discretion and at any time, we may change your purchase or cash advance credit limit. We will notify you of any new limit amount either by sending you a notice or through your billing statement. A change may take effect before you receive notification from us. You may request a change to your purchase or cash advance credit limit by contacting Customer Service by telephone or mail.

The credit line for purchases is available to buy goods or services whenever the card is honored. Your cash advance line is available for cash through any bank or automated teller machine that accepts the card or by using convenience checks. The amount charged on your account, including purchases, cash advances, finance charges, fees, or other charges, must always remain below your applicable credit limit. However, if you exceed your purchase or cash advance credit limit you must still pay us. We may approve transactions that cause the balance to exceed your purchase or cash advance credit limit without waiving any of our rights under this Agreement.

**Additional Cards:**
You may request additional cards on your account for yourself or others and you may permit an authorized user to have access to the card or account number. However, if you do, you must pay us for all charges made by those persons, including charges for which you may not have intended to be responsible. You must notify us to revoke an authorized user's permission to use your account. If you do so, we may close the account and issue a new card or cards with a different account number. You are responsible for the use of each card issued on your account according to the terms of this Agreement.

**Membership Fee:**
You will pay an annual fee of $25. The fee is added to the purchase balance and is non-refundable unless you notify us to cancel your account within 30 days from the mailing or delivery date of the billing statement on which the fee is billed.

**Billing:**
Your billing statement shows the balance, any finance charges, fees, the minimum payment, and the payment due date. It also shows your current purchase and cash advance credit limits; an itemized list of current charges, debits, payments and credits; a summary of the purchase and cash advance activity, including the finance charges; a rate summary; and other important information. If we deem your account uncollectible or if we institute delinquency collection proceedings by sending it to an outside collection agency or attorney for collection, we may, in our sole discretion, stop sending you billing statements.

You must notify us of a change in your address by contacting Customer Service by telephone or mail. We will mail or deliver the billing statement to only one address.

**How We Determine the New Balance:**
The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine the New Balance, we begin with the outstanding balance on your account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any purchases, cash advances and other debits and subtract any credits and payments credited as of that billing period. We then add the appropriate finance charges and fees and make other applicable adjustments.

**Periodic Finance Charges:**
You will pay a daily periodic rate on the daily balance for purchases and the daily balance for cash advances. The total periodic finance charge for each billing period is the sum of the daily periodic rate charges on the daily balance for purchases and the daily balance for cash advances for each day in the billing period. The daily periodic rate used in determining the periodic finance charge will be a variable rate, which may change from month to month. The daily periodic rate during each billing period will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal within the 90 calendar days immediately preceding, but not including, the first day of each billing period. The Margin for purchases and cash advances will be 14.99%. The initial daily periodic rate on your account, based on an Index of 5.0% as of February 6, 2002, will be a daily periodic rate of 0.05476% (19.99% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable daily periodic rate, which may increase the minimum payment due on your account. If you pay the full amount of the New Balance each month by the due date, no periodic finance charges will be assessed on new purchases. Your account will have a different rate of periodic finance charge after it is closed because of default or is 60 days or more past due. In that event, the Margin for purchases and cash advances will increase to 18.99%.

**Daily Balance Calculation:**
To get the daily balance for purchases and cash advances for each day, we take the beginning balance of purchases and cash advances on your account each day, including any accrued but unpaid finance charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) (to the daily balance for purchases), cash advances (to the daily balance for cash advances), or debit adjustments, and subtract any payments, credits or credit adjustments. Purchases and cash advances are included in the daily balance as of the later of the date of the transaction or the first day of the billing period in which the purchase or cash advance is entered on your account. However, if you pay the New Balance shown on your previous billing statement in full on or before the due date shown on that billing statement, new purchases will not be included in the daily balance for purchases.

**Minimum Finance Charge:**
You will pay a minimum periodic FINANCE CHARGE of $1.50 for each billing period during which any finance charge accrues on your account as a result of application of the daily periodic rate. We add the amount to the purchase balance if that balance is being assessed a finance charge. If a finance charge is being assessed on purchases and cash advances, we may add the minimum finance charge to either balance at our discretion.

**Transaction Fee for Cash Advances:**
You have obtained a cash advance if you obtain funds from an automated teller machine (ATM), through use of a convenience check or through a financial institution, or engage in another similar transaction. For each cash advance, we add an additional FINANCE CHARGE of 5.0% of the amount of the advance, but not less than $5. This fee will be added to the cash advance balance. (The amount of this cash advance may also include a surcharge that the ATM owner imposes.) This cash advance transaction fee may cause the annual percentage rate on the billing statement on which the cash advance first appears to exceed the corresponding annual percentage rate.

**Credit Balance:**
You may not maintain a credit balance on your account in excess of any assigned credit limit. We will remit to you any credit amount over $1 if the amount has been on your account longer than three months. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges posted to your account.

**Minimum Amount Due:**
Each month you must pay a minimum amount that is equal to the sum of the following amounts:

- The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

- The greater of amounts which exceed your credit limits or amounts which are past due; and

- Installment amounts due for mail and telephone order merchandise.

**Payments:**
You must pay at least the minimum amount by the payment due date, and you may pay more at any time without a penalty. The New Balance shown on your billing statement may include amounts subject to different periodic rates. We will allocate your payments and credits to pay off balances at low periodic rates before paying off balances at higher periodic rates. The sooner you pay the New Balance, the less you will pay in finance charges.

Instructions for making payments are on your billing statement. Do not send cash payments. We can accept late or partial payments, as well as payments that select "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. You agree to pay us in U.S. dollars drawn on funds on deposit in the United States using a payment check, similar instrument, or automatic debit that will be processed and honored by your bank. Payments received by 2:00 p.m. will be credited to your account as of the date received. Payments received after 2:00 p.m. will be credited to your account as of the next business day.

**Late Fee:**
We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $20 if your account balance is $200.00 or more.

**Returned Payment Fee:**
We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:**
We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Payment Services Fee:**
We will add a $5 fee (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for payment services we may offer which allow you, at your option, to make payments other than by mailing them to the payment address shown on your billing statement. In the event you request optional payment services, we will advise you of the fee associated with your request, and your use of the optional payment services thereafter constitutes your agreement to pay the associated fee. This fee does not apply to payments made through Account Online or other electronic bill payment options.

**Photocopy Fee:**
We will add a $5 fee per copy for the maximum amount permitted by applicable law, whichever is less) to the purchase balance for each copy you request of your billing statements, checks, sales slips and/or memoranda of transactions, other than copies requested for purposes of investigating a billing error. In the event you request copies, we will advise you of the fee associated with your request, and your use of the copy services thereafter constitutes your agreement to pay the associated fee.

**Convenience Checks:**
Convenience checks may be used to purchase goods and services or to obtain cash up to the amount of your cash advance credit limit. We will treat convenience checks as a cash advance and charge them against your cash advance line. Each convenience check must be in the form we have issued and must be used according to any instructions we give you. Convenience checks may be used only by the person whose name is printed on them. Convenience checks may not be used to pay any amount owed to us under this Agreement or any other Citibank credit card agreement. We will not certify any convenience checks, nor will we return paid convenience checks.

**Lost or Stolen Cards, Account Numbers, or Convenience Checks:**
any card, account number, or check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling 1-800-756-2484 or Customer Service at the telephone number shown on your billing statement. We may require you to provide certain information in writing to help us find out what happened, and to comply with such procedures as we may require in connection with our investigation. You may be liable for unauthorized use of the account, but not for more than $50. You won't be liable for unauthorized purchases or cash advances made after we've been notified of the loss or the theft; however, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

**Default:**
You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make a payment to any other creditor when due, file for bankruptcy, exceed any credit limit, pay by check or similar instrument that is not honored or that we must return because it cannot be processed, or pay by automatic debit that is returned unpaid. If you default, we may close your account and demand immediate payment of the full balance.

**Preauthorized Charges:**
If you default, if the card is lost or stolen, or we change your account or account number for any reason, we may suspend automatic charges on that account to third party vendors for insurance premiums or other goods or services. If preauthorized charges are suspended, you must contact the third party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

**Collection Costs:**
If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

---

**ARBITRATION:**
PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

**Agreement to Arbitrate:**
Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**Claims Covered:**
- **What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law. Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise, and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

- **Whose Claims are subject to arbitration?** Not only yours and ours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

- **What time frame applies to Claims subject to arbitration?** Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

- **Broadest interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

- **What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

**How Arbitration Works:**
- **How does a party initiate arbitration?** The party filing an arbitration must choose one of the following three arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association, JAMS, and National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605          Web site:   www.adr.org

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610          Web site:   www.jamsadr.com

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405          Web site:   www.arbitration-forum.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

- **What procedures and law are applicable in arbitration?** A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will

Citi Prod (Cox v. Hannah) 000053

apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claim in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

* **Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

* **Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representational) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

* **When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

**Survival and Severability of Terms:**

* This arbitration provision shall survive: (i) termination or changes in this Agreement, the account, and the relationship between you and us concerning the account, (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. Any different agreement regarding arbitration must be agreed to in writing.

---

**Credit Reporting:**

We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional cards on your account for others, you understand that we may report account information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit limit increase). If you wish to know the names of the agencies we have contacted, write us at the address listed on the billing statement. We will try to notify you by telephone or by mail of any legal process served on us in order to give you an opportunity to object to it, unless the law prohibits the notice.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address shown on your billing statement. We will promptly investigate the matter and if our investigation shows you are right, we will contact each credit reporting agency to whom we reported and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone and instruct you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

**Telephone Monitoring and Recording:**

From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

**Closing Your Account:**

You may close your account at any time by notifying us in writing. However, you remain responsible to pay the balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time for any reason without prior notice. We may also reissue a different card, account number, or different checks at any time. You must return the card or the checks to us upon request.

**Refusal of the Card:**

We are not responsible if a transaction on your account is not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity.

**Changing this Agreement:**

We can change this Agreement, including all fees and the annual percentage rate, at any time. We can also add or delete provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the balance, either at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

**Enforcing this Agreement:**

We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Assignment:**

We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

**Applicable Law:**

The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**For Further Information:**

Call us at the telephone number shown on your billing statement. You can also call toll-free at 1-800-756-2484.

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

©2002 Citibank (South Dakota), N.A.

---

## What To Do If There's An Error In Your Bill.

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address provided in the Billing Rights Summary portion on the back of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we send you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

* Your name and account number.

* The dollar amount of the suspected error.

* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

* Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must let anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

* You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and

* The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Citi Prod (Cox v. Hannah) 000054

Presorted
First-Class Mail
U.S. Postage Paid
Wheeling IL
Permit # 214

**Important information about your account enclosed.**

SAMPLE A SAMPLE
123 ANY STREET
ANYTOWN, US 12345-6789

CITGO
Low Fico ($25)

Mailed 12,805
2/13-2/15

CITGO Credit Card Center
P.O. Box 9300
Des Moines, IA 50368-9260

2/02 CITGO25

0000000000

Dear CITGO Cardmember,

The issuer of your CITGO credit card account, Associates National Bank (Delaware), has merged with Citibank (South Dakota), N.A. As a result, the words "we, us, and our" as used in your existing Cardmember Agreement now refer to Citibank (South Dakota), N.A. and the terms and enforcement of your Cardmember Agreement will be governed by federal law and the law of South Dakota.

For additional changes regarding your account, see the Notice of Change in Terms below.

Sincerely,

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

## NOTICE OF CHANGE IN TERMS

Effective as of the first day of your first billing period that begins on or after March 15, 2002 ("Effective Date"), we are changing the terms of your account by amending and restating your existing Cardmember Agreement, including substituting or adding the provisions below. The terms and provisions contained in the attached Cardmember Agreement replaces the terms and provisions of your existing Cardmember Agreement. We encourage you to read this notice and the attached Cardmember Agreement and save it for future reference.

**Margin Used to Calculate Periodic Finance Charges:** The Margin for purchases and cash advances will be 14.99%. If your account is closed because of default or becomes 60 days or more past due, the Margin for purchases and cash advances will increase to 18.99%. Please read the "Periodic Finance Charges" paragraph in the attached Cardmember Agreement.

**Late Fee:** We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $20 if your account balance is $200.00 or more.

**Minimum Amount Due:** Each month you must pay a minimum amount that is equal to the sum of the following amounts:

- The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

- The greater of amounts which exceed your credit limits or amounts which are past due; and

- Installment amounts due for mail and telephone order merchandise.

**Returned Payment Fee:** We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:** We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Arbitration:** We are substituting a new arbitration provision which will replace the arbitration provision contained in your existing Cardmember Agreement. Please read the new arbitration provision carefully.

You have the right to reject the changes described in this Notice of Change in Terms. If you choose to reject the changes, you must notify us by writing to us at CITGO Credit Card Center, P.O. Box 6060, Des Moines, Iowa 50366-6060, within 25 days after the Effective Date. If you choose to reject the changes, your account will be closed and you may pay off the balance of your account under the existing terms. If you choose to reject the changes and your account has an annual fee, you will receive a pro rata refund of the fee as a credit to your account. If you use your account on or after the Effective Date, you agree to the changes even if you sent us notice rejecting the changes. The terms and enforcement of your account will be governed by federal law and the law of South Dakota even if you choose to reject the changes described in this Notice of Change in Terms.

The above is a summary of certain of the changes being made to your account. For more detailed information, please review the attached Cardmember Agreement carefully and keep it with your important records.

## Citibank (South Dakota), N.A.
## CARDMEMBER AGREEMENT

This Agreement is your Citibank (South Dakota), N.A. Cardmember Agreement. Please read and keep this Agreement for your records. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of your account.

To simplify this Agreement for you, the following definitions will apply. The words you, your, and yours mean all persons responsible for complying with this Agreement, including the person who applied to open the account and the person to whom we address billing statements. The word card means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this Agreement. The words we, us, and our mean Citibank (South Dakota), N.A. The words authorized user means any person to whom you give permission to use your account. The words convenience checks mean one or more checks that we may provide for you to obtain a cash advance.

**Using Your Account and Your Credit Line:**
The card must be signed to be used. Whether you sign the card or not, you are fully responsible for complying with all the terms of this Agreement, including the obligation to pay us for all balances due on your account as specified in this Agreement. Your card must only be used for lawful transactions.

Your account will have separate credit lines for purchases and cash advances. Your initial purchase and cash advance credit limits appear on the card carrier. At our discretion and at any time, we may change your purchase or cash advance credit limit. We will notify you of any new limit amount either by sending you a notice or through your billing statement. A change may take effect before you receive notification from us. You may request a change to your purchase or cash advance credit limit by contacting Customer Service by telephone or mail.

The credit line for purchases is available to buy goods or services wherever the card is honored. Your cash advance line is available for cash through any bank or automated teller machine that accepts the card or by using convenience checks. The amount charged on your account, including purchases, cash advances, finance charges, fees, or other charges, must always remain below your applicable credit limit. However, if you exceed your purchase or cash advance credit limit, you must still pay us. We may approve transactions that cause the balance to exceed your purchase or cash advance credit limit without waiving any of our rights under this Agreement.

**Additional Cards:**
You may request additional cards on your account for yourself or others and you may permit an authorized user to have access to the card or account number. However, if you do, you must pay us for all charges made by those persons, including charges for which you may not have intended to be responsible. You must notify us to revoke an authorized user's permission to use your account. If you do so, we may close the account and issue a new card or cards with a different account number. You are responsible for the use of each card issued on your account according to the terms of this Agreement.

**Membership Fee:**
You will pay an annual fee of $25. The fee is added to the purchase balance and is non-refundable unless you notify us to cancel your account within 30 days from the mailing or delivery date of the billing statement on which the fee is billed.

**Billing:**
Your billing statement shows the balance, any finance charges, fees, the minimum payment, and the payment due date. It also shows your current purchase and cash advance credit limits; an itemized list of current charges, debits, payments and credits; a summary of the purchase and cash advance activity, including the finance charges, a rate summary, and other important information. If we deem your account uncollectible or if we institute delinquency collection proceedings by sending it to an outside collection agency or attorney for collection, we may, in our sole discretion, stop sending you billing statements.

You must notify us of a change in your address by contacting Customer Service by telephone or mail. We will mail or deliver the billing statement to only one address.

**How We Determine the New Balance:**
The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine the New Balance, we begin with the outstanding balance on your account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any purchases, cash advances and other debits and subtract any credits and payments credited as of that billing period. We then add the appropriate finance charges and fees and make other applicable adjustments.

**Periodic Finance Charges:**
You will pay a daily periodic rate on the daily balance for purchases and the daily balance for cash advances. The total periodic finance charge for each billing period is the sum of the daily periodic rate charges on the daily balance for purchases and the daily balance for cash advances for each day in the billing period. The daily periodic rate used in determining the periodic finance charge will be a variable rate, which may change from month to month. The daily periodic rate during each billing period will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal within the 90 calendar days immediately preceding, but not including, the first day of each billing period. The Margin for purchases and cash advances will be 14.99%. The initial daily periodic rate on your account, based on an Index of 5.0% as of February 6, 2002, will be a daily periodic rate of 0.05476% (19.99% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable daily periodic rate, which may increase the minimum payment due on your account. If you pay the full amount of the New Balance each month by the due date, no periodic finance charge will be assessed on new purchases. Your account will have a different rate of periodic finance charge after it is closed because of default or is 60 days or more past due. In that event, the Margin for purchases and cash advances will increase to 18.99%.

**Daily Balance Calculation:**
To get the daily balance for purchases and cash advances for each day, we take the beginning balance of purchases and cash advances on your account each day, including any accrued but unpaid finance charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) (to the daily balance for purchases), cash advances (to the daily balance for cash advances), or debit adjustments, and subtract any payments, credits or credit adjustments. Purchases and cash advances are included in the daily balance as of the later of the date of the transaction or the first day of the billing period in which the purchase or cash advance is entered on your account. However, if you pay the New Balance shown on your previous billing statement in full on or before the due date shown on that billing statement, new purchases will not be included in the daily balance for purchases.

**Minimum Finance Charge:**
You will pay a minimum periodic FINANCE CHARGE of $1.50 for each billing period during which any finance charge accrues on your account as a result of application of the daily periodic rate. We add the amount to the purchase balance if that balance is being assessed a finance charge. We add the amount to the cash advance balance if that balance is being assessed a finance charge. If a finance charge is being assessed on purchases and cash advances, we may add the minimum finance charge to either balance at our discretion.

**Transaction Fee for Cash Advances:**
You have obtained a cash advance if you obtain funds from an automatic teller machine (ATM) through use of a convenience check or through a financial institution, or engage in another similar transaction. For each cash advance, we add an additional FINANCE CHARGE of 0.5% of the amount of the advance, but not less than $5. This fee will be added to the cash advance balance. (The amount of the cash advance may also include a surcharge that the ATM owner imposes.) This cash advance transaction fee may cause the annual percentage rate on the billing statement on which the cash advance transaction fee appears to exceed the corresponding annual percentage rate.

Citi Prod (Cox v. Hannah) 000056

**Credit Balance:**
You may not maintain a credit balance on your account in excess of any assigned credit limit. We will return to you any credit amount over $1 if the amount has been on your account longer than three months. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges posted to your account.

**Minimum Amount Due:**
Each month you must pay a minimum amount that is equal to the sum of the following amounts:

* The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

* The greater of amounts which exceed your credit limits or amounts which are past due; and

* Installment amounts due for mail and telephone order merchandise.

**Payments:**
You must pay at least the minimum amount by the payment due date, and you may pay more at any time without a penalty. The New Balance shown on your billing statement may include amounts subject to different periodic rates. We will allocate your payments and credits to pay off balances at low periodic rates before paying off balances at higher periodic rates. The sooner you pay the New Balance, the less you will pay in finance charges.

Instructions for making payments are on your billing statement. Do not send cash payments. We can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. You agree to pay us in U.S. dollars drawn on funds on deposit in the United States using a payment check, similar instrument, or automatic debit that will be processed and honored by your bank. Payments received by 2:00 p.m. will be credited to your account as of the date received. Payments received after 2:00 p.m. will be credited to your account as of the next business day.

**Late Fee:**
We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $39 if your account balance is $200.00 or more.

**Returned Payment Fee:**
We will add a $35 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:**
We will add a $35 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Payment Services Fee:**
We will add a $35 fee for the maximum amount permitted by applicable law, whichever is less) to the purchase balance for payment services we may offer which allow you, at your option, to make payments other than by mailing them to the payment address shown on your billing statement. In the event you request optional payment services, we will advise you of the fee associated with your request, and your use of the optional payment services thereafter constitutes your agreement to pay the associated fee. This fee does not apply to payments made through Account Online or other electronic bill payment options.

**Photocopy Fee:**
We will add a $6 fee (or copy (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for each copy you request of your billing statements, checks, sales slips and/or memoranda of transactions, other than copies requested for purposes of investigating a billing error. In the event you request copies, we will advise you of the fee associated with your request, and your use of the copy services thereafter constitutes your agreement to pay the associated fee.

**Convenience Checks:**
Convenience checks may be used to purchase goods and services or to obtain cash up to the amount of our cash advance credit limit. We will treat convenience checks as a cash advance and charge them against your cash advance line. Each convenience check must be in the form we have issued and must be used according to any instructions we give you. Convenience checks may not be used by the person whose name is printed on them. Convenience checks may not be used to pay any amount owed to us under this Agreement or any other Citibank credit card agreement. We will not certify any convenience checks, nor will we return paid convenience checks.

**Lost or Stolen Cards, Account Numbers, or Convenience Checks:**
... any card, account number, or check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling 1-800-750-2484 or Customer Service at the telephone number shown on your billing statement. We may require you to provide certain information in writing to help us find out what happened, and to comply with such procedures as we may require in connection with our investigation. You may be liable for unauthorized use of the account, but not for more than $50. You won't be liable for unauthorized purchases or cash advances made after we've been notified of the loss or theft; however, you may be liable for any charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

**Default:**
You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make a payment to any other creditor when due, file for bankruptcy, exceed any credit limit, pay by check or similar instrument that is not honored or that we must return because it cannot be processed, or ... by automatic debit that is returned unpaid. If you default, we may close your account and demand immediate payment of the full balance.

**Preauthorized Charges:**
If you default, if the card is lost or stolen, or we change your account or account number for any reason, we may suspend automatic charges on that account to third party vendors for insurance premiums or other goods or services. If preauthorized charges are suspended, you must contact the third party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

**Collection Costs:**
If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

**ARBITRATION:**
PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

**Agreement to Arbitrate:**
Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**Claims Covered:**
* What Claims are subject to arbitration? All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

* Whose Claims are subject to arbitration? Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

* What time frame applies to Claims subject to arbitration? Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

* Broadest interpretation. Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

* What about Claims filed in Small Claims Court? Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

**How Arbitration Works:**
* How does a party initiate arbitration? The party filing an arbitration must choose one of the following three arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association, JAMS, and National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605       Web site:   www.adr.org

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610       Web site:   www.jamsadr.com

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405       Web site:   www.arbitration-forum.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

* What procedures and law are applicable in arbitration? A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will

apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claim in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

• **Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of their party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

• **Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

• **When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

**Survival and Severability of Terms:**
• This arbitration provision shall survive: (i) termination or changes in this Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. Any different agreement regarding arbitration must be agreed to in writing.

---

**Credit Reporting:**
We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional cards on your account for others, you understand that we may report account information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit limit increase). If you wish to know the names of the agencies we have contacted, write us at the address listed on the billing statement. We will try to notify you by telephone or by mail of any legal process served on us in order to give you an opportunity to object to it, unless the law prohibits this notice.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address shown on your billing statement. We will promptly investigate the matter and if our investigation shows you are right, we will contact each credit reporting agency to whom we reported and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone and instruct you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

**Telephone Monitoring and Recording:**
From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

**Closing Your Account:**
You may close your account at any time by notifying us in writing. However, you remain responsible to pay the balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time for any reason without prior notice. We may also reissue a different card, account number, or different checks at any time. You must return the card or the checks to us upon request.

**Refusal of the Card:**
We are not responsible if a transaction on your account is not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity.

**Changing this Agreement:**
We can change this Agreement, including all fees and the annual percentage rate, at any time. We can also add or delete provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the balance, either at once or under the terms of the unchanged Agreement. Unless you notify us otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

**Enforcing this Agreement:**
We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Assignment:**
We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

**Applicable Law:**
The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**For Further Information:**
Call us at the telephone number shown on your billing statement. You can also call toll-free at 1-800-755-2484.

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

©2002 Citibank (South Dakota), N.A.

---

## What To Do If There's An Error In Your Bill.

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us in Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address provided in the Billing Rights Summary portion on the back of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

• Your name and account number.
• The dollar amount of the suspected error.
• Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.
• Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

• You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and
• The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Citi Prod (Cox v. Hannah) 000058

Presorted
First-Class Mail
U.S. Postage Paid
Wheeling IL
Permit # 214

Important information about your account enclosed.

SAMPLE A SAMPLE
123 ANY STREET
ANYTOWN, US 12345-6789

A000000000

(8) CITGO Base & E-Bill

Mailed 440,349
2/13-2/15

CITGO Credit Card Center
P.O. Box 9090
Des Moines, IA 50368-9090

2/02 CITGOBEB

Citi Prod (Cox v. Hannah) 000059

Dear CITGO Cardmember,

The issuer of your CITGO credit card account, Associates National Bank (Delaware), has merged with Citibank (South Dakota), N.A. As a result, the words "we, us, and our" as used in your existing Cardmember Agreement now refer to Citibank (South Dakota), N.A. and the terms and enforcement of your Cardmember Agreement will be governed by federal law and the law of South Dakota.

For additional changes regarding your account, see the Notice of Change in Terms below.

Sincerely,

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

## NOTICE OF CHANGE IN TERMS

Effective as of the first day of your first billing period that begins on or after March 15, 2002 ("Effective Date"), we are changing the terms of your account by amending and restating your existing Cardmember Agreement, including substituting or adding the provisions below. The terms and provisions contained in the attached Cardmember Agreement replace the terms and provisions of your existing Cardmember Agreement. We encourage you to read this notice and the attached Cardmember Agreement and save it for future reference.

**Margin Used to Calculate Periodic Finance Charges:** The Margin for purchases and cash advances will be 14.99%. If your account is closed because of default or becomes 60 days or more past due, the Margin for purchases and cash advances will increase to 18.99%. Please read the "Periodic Finance Charges" paragraph in the attached Cardmember Agreement.

**Late Fee:** We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $30 if your account balance is $200.00 or more.

**Minimum Amount Due:** Each month you must pay a minimum amount that is equal to the sum of the following amounts:

* The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

* The greater of amounts which exceed your credit limits or amounts which are past due; and

* Installment amounts due for mail and telephone order merchandise.

**Returned Payment Fee:** We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:** We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Arbitration:** We are substituting a new arbitration provision which will replace the arbitration provision contained in your existing Cardmember Agreement. Please read the new arbitration provision carefully.

You have the right to reject the changes described in this Notice of Change in Terms. If you choose to reject the changes, you must notify us by writing to us at CITGO Credit Card Center, P.O. Box 9090, Des Moines, Iowa 50368-9090, within 25 days after the Effective Date. If you choose to reject the changes, your account will be closed and you may pay off the balance of your account under the existing terms. If you choose to reject the changes and your account has an annual fee, you will receive a pro rata refund of the fee as a credit to your account. If you use your account on or after the Effective Date, you agree to the changes even if you sent us notice rejecting the changes. The terms and enforcement of your account will be governed by federal law and the law of South Dakota even if you choose to reject the changes described in this Notice of Change in Terms.

The above is a summary of the changes being made to your account. For more detailed information, please review the attached Cardmember Agreement carefully and keep it with your important records.

## Citibank (South Dakota), N.A.
## CARDMEMBER AGREEMENT

This Agreement is your Citibank (South Dakota), N.A. Cardmember Agreement. Please read and keep this Agreement for your records. This Agreement is binding on you unless you cancel your account within 30 days after receiving the card and you have not used or authorized use of your account.

To simplify this Agreement for you, the following definitions will apply. The words you, your, and yours mean all persons responsible for complying with this Agreement, including the person who applied to open the account and the person to whom we address billing statements. The word card means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this Agreement. The words we, us, and our mean Citibank (South Dakota), N.A. The words authorized user means any person to whom you give permission to use your account. The words convenience checks mean one or more checks that we may provide for you to obtain a cash advance.

**Using Your Account and Your Credit Line:**
The card must be signed to be used. Whether you sign the card or not, you are fully responsible for complying with all the terms of this Agreement, including the obligation to pay us for all balances due on your account as specified in this Agreement. Your card must only be used for lawful transactions.

Your account will have separate credit lines for purchases and cash advances. Your initial purchase and cash advance credit limits appear on the card carrier. At our discretion and at any time, we may change your purchase or cash advance credit limit. We will notify you of any new limit amount either by sending you a notice or through your billing statement. A change may take effect before you receive notification from us. You may request a change to your purchase or cash advance credit limit by contacting Customer Service by telephone or mail.

The credit line for purchases is available to buy goods or services wherever the card is honored. Your cash advance line is available for cash through any bank or automated teller machine that accepts the card or by using convenience checks. The amount charged on your account, including purchases, cash advances, finance charges, fees, or other charges, must always remain below your applicable credit limit. However, if you exceed your purchase or cash advance credit limit you must still pay us. We may approve transactions that cause the balance to exceed your purchase or cash advance credit limit without waiving any of our rights under this Agreement.

**Additional Cards:**
You may request additional cards on your account for yourself or others and you may permit an authorized user to have access to the card or account number. However, if you do, you must pay us for all charges made by those persons, including charges for which you may not have intended to be responsible. You must notify us to revoke an authorized user's permission to use your account. If you do so, we may close the account and issue a new card or cards with a different account number. You are responsible for the use of each card issued on your account according to the terms of this Agreement.

**Membership Fee:**
If your card is a CITGO CELEBRITY card you will pay a $25 annual fee. The fee is added to the purchase balance and is non-refundable unless you notify us to cancel your account within 30 days from the mailing or delivery date of the billing statement on which the fee is billed.

**Billing:**
Your billing statement shows the purchase balance, any finance charges, fees, the minimum payment, and the payment due date. It also shows your current purchase and cash advance credit limits; an itemized list of current charges, debits, payments and credits; a summary of the purchase and cash advance activity, including the finance charges; a rate summary; and other important information. If we deem your account uncollectible or if we institute debt/early collection proceedings by sending it to an outside collection agency or attorney for collection, we may, in our sole discretion, stop sending you billing statements.

You must notify us of a change in your address by contacting Customer Service by telephone or mail. We will mail or deliver the billing statement to only one address.

**How We Determine the New Balance:**
The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine the New Balance, we begin with the outstanding balance on your account at the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any purchases, cash advances and other debits and subtract any credits and payments credited as of that billing period. We then add the appropriate finance charges and fees and make other applicable adjustments.

**Periodic Finance Charges:**
You will pay a daily periodic rate on the daily balance for purchases and the daily balance for cash advances. The total periodic finance charge for each billing period is the sum of the daily periodic rate charges on the daily balance for purchases and the daily balance for cash advances for each day in the billing period. The daily periodic rate used in determining the periodic finance charge will be a variable rate, which may change from month to month. The daily periodic rate during each billing period will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal on the 50 calendar days immediately preceding, but not including, the first day of each billing period. The Margin for purchases and cash advances will be 14.99%. This initial daily periodic rate on your account, based on an Index of 5.0% as of February 6, 2002, will be a daily periodic rate of 0.054765% (19.99% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable daily periodic rate, which may increase the minimum payment due on your account. If you pay the full amount of the New Balance each month by the due date, no periodic finance charge will be assessed on new purchases. Your account will have a different rate of periodic finance charge after it is closed because of default or is 60 days or more past due. In that event, the Margin for purchases and cash advances will increase to 18.99%.

**Daily Balance Calculation:**
To get the daily balance for purchases and cash advances on each day, we take the beginning balance of purchases and cash advances on your account each day, including any accrued but unpaid finance charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) (to the daily balance for purchases), cash advances (to the daily balance for cash advances), or debit adjustments, and subtract any payments, credits or credit adjustments. Purchases and cash advances are included in the daily balance as of the later of the date of the transaction or the first day of the billing period in which the purchase or cash advance is entered on your account. However, if you pay the New Balance shown on your previous billing statement in full on or before the due date shown on that billing statement, new purchases will not be included in the daily balance for purchases.

**Minimum Finance Charge:**
You will pay a minimum periodic FINANCE CHARGE of $1.50 for each billing period during which any finance charge accrues on your account as a result of application of the daily periodic rate. We add the amount to the purchase balance if that balance is being assessed a finance charge. We add the amount to the cash advance balance if that balance is being assessed a finance charge. If a finance charge is being assessed on purchases and cash advances, we may add the minimum finance charge to either balance at our discretion.

**Transaction Fee for Cash Advances:**
You have obtained a cash advance if you obtain funds from an automated teller machine (ATM) through use of a convenience check or through a financial institution, or engage in another similar transaction. For each cash advance, we add an additional FINANCE CHARGE of 5.0% of the amount of the advance, but not less than $5. This fee will be added to the cash advance balance. (The amount of the cash advance may also include a surcharge that the ATM owner imposes.) The cash advance transaction fee may cause the annual percentage rate on the billing statement on which the cash advance first appears to exceed the corresponding annual percentage rate.

**Credit Balance**

You may not maintain a credit balance on your account in excess of any assigned credit limit. We will return to you any credit amount over $1 if the amount has been on your account longer than three months. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges posted to your account.

**Minimum Amount Due**

Each month you must pay a minimum amount that is equal to the sum of the following amounts:

* The greater of 1.0% of the New Balance shown on your statement for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;

* The greater of amounts which exceed your credit limits or amounts which are past due, and

* Installment amounts due for mail and telephone order merchandise.

**Payments**

You must pay at least the minimum amount by the payment due date, and you may pay more at any time without a penalty. The New Balance shown on your billing statement may include amounts subject to different periodic rates. We will allocate your payments and credits to pay off balances at low periodic rates before paying off balances at higher periodic rates. The sooner you pay the New Balance, the less you will pay in finance charges.

Instructions for making payments are on your billing statement. Do not send cash payments. We can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. You agree to pay us in U.S. dollars drawn on funds on deposit in the United States using a payment check, similar instrument, or automatic debit that will be processed and honored by your bank. Payments received by 2:00 p.m. will be credited to your account as of the date received. Payments received after 2:00 p.m. will be credited to your account as of the next business day.

**Late Fee**

We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $20 if your account balance is $200.00 or more.

**Returned Payment Fee**

We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee**

We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the check has expired.

**Payment Services Fee**

We will add a $5 fee (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for payment services we may offer which allow you, at your option, to make payments other than by mailing them to the payment address shown on your billing statement. In the event you request optional payment services, we will advise you of the fee associated with your request, and your use of the optional payment services thereafter constitutes your agreement to pay the associated fee. This fee does not apply to payments made through Account Online or other electronic bill payment options.

**Photocopy Fee**

We will add a $5 fee per copy (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for each copy you request of your billing statements, checks, sales slips and/or memoranda of transactions, other than copies requested for purposes of investigating a billing error. In the event you request copies, we will advise you of the fee associated with your request, and your use of this copy service thereafter constitutes your agreement to pay the associated fee.

**Convenience Checks**

Convenience checks may be used to purchase goods and services or to obtain cash up to the amount of your cash advance credit limit. We will treat convenience checks as a cash advance and charge them against your cash advance line. Each convenience check must be in the form we have issued and may be used according to any instructions we give you. Convenience checks may be used only by the person whose name is printed on them. Convenience checks may not be used to pay any amount owed to us under this Agreement or any other Citibank credit card agreement. We will not certify any convenience checks, nor will we return paid convenience checks.

**Lost or Stolen Cards, Account Numbers, or Convenience Checks**

If any card, account number, or check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling 1-800-766-2484 or Customer Service at the telephone number shown on your billing statement. We may require you to provide certain information in writing to help us find out what happened, and to comply with such procedures as we may require in connection with our investigation. You may be liable for unauthorized use of the account, but not for more than $50. You won't be liable for unauthorized purchases or cash advances made after we've been notified of the loss or the theft; however, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

**Default**

You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make a payment to any other creditor when due, file for bankruptcy, exceed any credit limit, pay by a check or similar instrument that is not honored or that we must return because it cannot be processed, or pay by automatic debit that is returned unpaid. If you default, we may close your account and demand immediate payment of the full balance.

**Preauthorized Charges**

If you default, if the card is lost or stolen, or we change your account or account number for any reason, we may suspend automatic charges or that account to third party vendors for insurance premiums or other goods or services. If preauthorized charges are suspended, you must contact the third party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

**Collection Costs**

If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

---

**ARBITRATION**

PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

**Agreement to Arbitrate**

Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**Claims Covered:**

* What Claims are subject to arbitration? All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

* Whose Claims are subject to arbitration? Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

* What time frame applies to Claims subject to arbitration? Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

* Broadest interpretation. Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

* What about Claims filed in Small Claims Court? Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

**How Arbitration Works:**

* How does a party initiate arbitration? The party filing an arbitration must choose one of the following three arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association, JAMS, and National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

  | | | |
  |---|---|---|
  | American Arbitration Association<br>335 Madison Avenue, Floor 10<br>New York, NY 10017-4605 | Web site: | www.adr.org |
  | JAMS<br>1920 Main Street, Suite 300<br>Irvine, CA 92610 | Web site: | www.jamsadr.com |
  | National Arbitration Forum<br>P.O. Box 50191<br>Minneapolis, MN 55405 | Web site: | www.arbitration-forum.com |

  At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

* What procedures and laws are applicable in arbitration? A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will

apply applicable substantive law consistent with the FAA and applicable statutes of limitations, and will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing, be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

* **Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

* **Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

* **When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

**Survival and Severability of Terms:**

* This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, and the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. Any different agreement regarding arbitration must be agreed to in writing.

---

**Credit Reporting:**

We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional cards on your account for others, you understand that we may report account information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit limit increase). If you wish to know the names of the agencies we have contacted, write us at the address listed on the billing statement. We will try to notify you by telephone or by mail of any legal process served on us in order to give you an opportunity to object to it, unless the law prohibits the notice.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address shown on your billing statement. We will promptly investigate the matter and if our investigation shows you are right, we will contact each credit reporting agency to whom we reported and will request that they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone and instruct you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

**Telephone Monitoring and Recording:**

From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

**Closing Your Account:**

You may close your account at any time by notifying us in writing. However, you remain responsible to pay the balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time for any reason without prior notice. We may also reissue a different card, account number, or different checks at any time. You must return the card or the checks to us upon request.

**Refusal of the Card:**

We are not responsible if a transaction on your account is not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity.

**Changing this Agreement:**

We can change this Agreement, including all fees and the annual percentage rate, at any time. We can also add or delete provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the balance, either at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

**Enforcing this Agreement:**

We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Assignment:**

We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

**Applicable Law:**

The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**For Further Information:**

Call us at the telephone number shown on your billing statement. You can also call toll-free at 1-800-756-2484.

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

©2002 Citibank (South Dakota), N.A.

## What To Do If There's An Error In Your Bill.

**Your Billing Rights. Keep This Notice For Future Use.**

This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill.**

If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) at the address provided in the Billing Rights Summary portion on the back of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

* Your name and account number.

* The dollar amount of the suspected error.

* Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.

* Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**

We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you this name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**

If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

* You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and

* The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

2012 CTGCBE8B

CITGO Credit Card Center
P.O. Box 9090
Des Moines, IA 50368-9090

Presorted
First-Class Mail
U.S. Postage Paid
Wheeling IL
Permit # 214

**Important information about your account enclosed.**

A000000000

SAMPLE A SAMPLE
123 ANY STREET
ANYTOWN, US 12345-6789



CITGO Base & E-Bill

Mailed 440,349
2/13-2/15

Citi Prod (Cox v. Hannah) 000063

Dear CITGO Cardmember,

The issuer of your CITGO credit card account, Associates National Bank (Delaware), has merged with Citibank (South Dakota), N.A. As a result, the words "we, us, and our" as used in your existing Cardmember Agreement now refer to Citibank (South Dakota), N.A. and the terms and enforcement of your Cardmember Agreement will be governed by federal law and the law of South Dakota.

For additional changes regarding your account, see the Notice of Change in Terms below.

Sincerely,

Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

## NOTICE OF CHANGE IN TERMS

Effective as of the first day of your first billing period that begins on or after March 15, 2002 ("Effective Date"), we are changing the terms of your account by amending and restating your existing Cardmember Agreement, including substituting or adding the provisions below. The terms and provisions contained in the attached Cardmember Agreement replace the terms and provisions of your existing Cardmember Agreement. We encourage you to read this notice and the attached Cardmember Agreement and save it for future reference.

**Margin Used to Calculate Periodic Finance Charges:** The Margin for purchases and cash advances will be 14.99%. If your account is closed because of default or becomes 60 days or more past due, the Margin for purchases and cash advances will increase to 18.99%. Please read the "Periodic Finance Charges" paragraph in the attached Cardmember Agreement.

**Late Fee:** We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $20 if your account balance is $200.00 or more.

**Minimum Amount Due:** Each month you must pay a minimum amount that is equal to the sum of the following amounts:

*   The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10;
*   The greater of amounts which exceed your credit limits or amounts which are past due; and
*   Installment amounts due for mail and telephone order merchandise.

**Returned Payment Fee:** We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:** We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Arbitration:** We are substituting a new arbitration provision which will replace the arbitration provision contained in your existing Cardmember Agreement. Please read the new arbitration provision carefully.

You have the right to reject the changes described in this Notice of Change in Terms. If you choose to reject the changes, you must notify us by writing to us at CITGO Credit Card Center, P.O. Box 6003, Des Moines, Iowa 50368-9090, within 25 days after the Effective Date. If you choose to reject the changes, your account will be closed and you may pay off the balance of your account under the existing terms. If you choose to reject the changes and your account has an annual fee, you will receive a pro rata refund of the fee as a credit to your account. If you use your account on or after the Effective Date, you agree to the changes even if you sent us notice rejecting the changes. The terms and enforcement of your account will be governed by federal law and the law of South Dakota even if you choose to reject the changes described in this Notice of Change in Terms.

The above is a summary of certain of the changes being made to your account. For more detailed information, please review the attached Cardmember Agreement carefully and keep it with your important records.

## Citibank (South Dakota), N.A.
### CARDMEMBER AGREEMENT

This Agreement is your Citibank (South Dakota), N.A. Cardmember Agreement. Please read and keep this agreement for your records. This Agreement is binding on you unless you cancel your account within 30 days after opening the card and you have not used or authorized use of your account.

To simplify this Agreement for you, the following definitions will apply. The words you, your, and yours mean all persons responsible for complying with this Agreement, including the person who applied to open the account and any person to whom we address billing statements. The word card means one or more cards or other access devices, such as account numbers, that we have issued to permit you to obtain credit under this Agreement. The words we, us, and our mean Citibank (South Dakota), N.A. The words authorized user means any person to whom you give permission to use your account. The words convenience checks mean one or more checks that we may provide for you to obtain a cash advance.

**Using Your Account and Your Credit Line:**
The card must be signed to be used. Whether you sign the card or not, you are fully responsible for complying with all the terms of this Agreement, including the obligation to pay us for all balances due on your account as specified in this Agreement. Your card must only be used for lawful transactions.

Your account will have separate credit lines for purchases and cash advances. Your initial purchase and cash advance credit limits appear on the card carrier. At our discretion and at any time, we may change your purchase or cash advance credit limit. We will notify you of any new limit amount either by sending you a notice or through your billing statement. A change may take effect before you receive notification from us. You may request a change to your purchase or cash advance credit limit by contacting Customer Service by telephone or mail.

The credit line for purchases is available to buy goods or services whenever the card is honored. Your cash advance line is available for cash through any bank or automated teller machine that accepts the card or by using convenience checks. The amount charged on your account, including purchases, cash advances, finance charges, fees, or other charges, must always remain below your applicable credit limit. However, if you exceed your purchase or cash advance credit limit you must still pay us. We may approve transactions that cause the balance to exceed your purchase or cash advance credit limit without waiving any of our rights under this Agreement.

**Additional Cards:**
You may request additional cards on your account for yourself or others and you may permit an authorized user to have access to the card or account number. However, if you do, you must pay us for all charges made by those persons, including charges for which you may not have intended to be responsible. You must notify us to revoke an authorized user's permission to use your account. If you do so, we may close the account and issue a new card or cards with a different account number. You are responsible for the use of each card issued on your account according to the terms of this Agreement.

**Membership Fee:**
If your card is a CITGO CELEBRITY card you will pay a $25 annual fee. The fee is added to the purchase balance and is non-refundable unless you notify us to cancel your account within 30 days from the mailing or delivery date of the billing statement on which the fee is billed.

**Billing:**
Your billing statement shows the balance, any finance charges, fees, the minimum payment, and the payment due date. It also shows your current purchase and cash advance credit limits, an itemized list of current charges, debits, payments and credits; a summary of the purchase and cash advance activity, including the finance charges; a rate summary; and other important information. If we deem your account uncollectible or if we institute delinquency collection proceedings by sending it to an outside collection agency or attorney for collection, we may, in our sole discretion, stop sending you billing statements.

You must notify us of a change to your address by contacting Customer Service by telephone or mail. We will mail or deliver the billing statement to only one address.

**How We Determine the New Balance:**
The total outstanding balance (the amount you owe us) appears as the "New Balance" on the billing statement. To determine the New Balance, we begin with the outstanding balance on your account as of the beginning of each billing period, called the "Previous Balance" on the billing statement. We add any purchases, cash advances and other debits and subtract any credits and payments credited as of that billing period. We then add the appropriate finance charges and fees and make other applicable adjustments.

**Periodic Finance Charges:**
You will pay a daily periodic rate on the daily balance for purchases and the daily balance for cash advances. The total periodic finance charge for each billing period is the sum of the daily periodic rate charges on the daily balance for purchases and the daily balance for cash advances for each day in the billing period. The daily periodic rate used in determining the periodic finance charge will be a variable rate, which may change from month to month. The daily periodic rate (which applies to both billing periods) will be 1/365th of the sum of an Index plus a Margin. The Index will be the highest Prime Rate published in the "Money Rates" section of The Wall Street Journal within the 90 calendar days immediately preceding, but not including, the first day of each billing period. The Margin for purchases and cash advances will be 14.99%. The initial daily periodic rate on your account, based on an Index of 6.0% as of February 6, 2002, will be a daily periodic rate of 0.0547% (19.99% ANNUAL PERCENTAGE RATE). An increase in the Prime Rate will increase the applicable daily periodic rate, which may increase the minimum payment due on your account. If you pay the full amount of the New Balance each month by the due date, no periodic finance charges will be assessed on new purchases. Your account will have a different rate of periodic finance charge after it is closed because of default or is 60 days or more past due. In that event, the Margin for purchases and cash advances will increase to 18.99%.

**Daily Balance Calculation:**
To get the daily balance for purchases and cash advances for each day, we take the beginning balance of purchases and cash advances on your account each day, including any accrued but unpaid finance charges and other fees through the previous day, add any new purchases (including amounts advanced for insurance) to the daily balance for purchases, cash advances (to the daily balance for cash advances), or debit adjustments, and subtract any payments, credits or credit adjustments. Purchases and cash advances are included in the daily balance as of the later of the date of the transaction or the first day of the billing period in which the purchase or cash advance is entered on your account. However, if you pay the New Balance shown on your previous billing statement in full on or before the due date shown on that billing statement, new purchases will not be included in the daily balance for purchases.

**Minimum Finance Charge:**
You will pay a minimum periodic FINANCE CHARGE of $1.50 for each billing period during which any finance charge accrues on your account as a result of application of the daily periodic rate. We add the amount to the purchase balance if that balance is being assessed a finance charge. We add the amount to the cash advance balance if that balance is being assessed a finance charge. If a finance charge is being assessed on purchases and cash advances, we may add the minimum finance charge to either balance at our discretion.

**Transaction Fee for Cash Advances:**
You have obtained a cash advance if you obtain funds from an automated teller machine (ATM), through use of a convenience check or through a financial institution, or engage in another similar transaction. For each cash advance, we add an additional FINANCE CHARGE of 5.0% of the amount of the advance, but not less than $5. This fee will be added to the cash advance balance. (The amount of the cash advance may also include a surcharge that the ATM owner imposes.) The cash advance transaction fee may cause the annual percentage rate on the billing statement on which this cash advance first appears to exceed the corresponding annual percentage rate.

**Credit Balances:**
You may not maintain a credit balance on your account in excess of any assigned credit limit. We will return to you any credit amount over $1 if the amount has been on your account longer than three months. You may request a refund of a credit balance at any time. We may reduce the amount of any credit balance by the amount of new charges posted to your account.

**Minimum Amount Due:**
Each month you must pay a minimum amount that is equal to the sum of the following amounts:

* The greater of 3.0% of the New Balance shown on your statement (for purposes of this calculation, the New Balance shall be reduced by any amounts which exceed your credit limits and installment amounts due in full for mail and telephone order merchandise) or $10.

* The greater of amounts which exceed your credit limits or amounts which are past due; and

* Installment amounts due for mail and telephone order merchandise.

**Payments:**
You must pay at least the minimum amount by the payment due date, and you may pay more at any time without a penalty. If the New Balance shown on your billing statement may include amounts subject to different periodic rates. We will allocate your payments and credits to pay off balances at lower periodic rates before paying off balances at higher periodic rates. The sooner you pay the New Balance, the less you will pay in finance charges.

Instructions for making payments are on your billing statement. Do not send cash payments. We can accept late or partial payments, as well as payments that reflect "paid in full" or other restrictive endorsements, without losing any of our rights under this Agreement. You agree to pay us in U.S. dollars drawn on funds on deposit in the United States using a payment check, similar instrument, or automatic debit that will be processed and honored by your bank. Payments received by 2:00 p.m. will be credited to your account as of the date received. Payments received after 2:00 p.m. will be credited to your account as of the next business day.

**Late Fee:**
We will add a late fee to the purchase balance for each billing period you fail to make the minimum payment by its due date. This late fee will be: $10 if your account balance is between $25.00 and $99.99; $15 if your account balance is between $100.00 and $199.99; and $39 if your account balance is $200.00 or more.

**Returned Payment Fee:**
We will add a $25 fee to the purchase balance when a payment check or similar instrument is not honored, when we must return it because it cannot be processed, or when an automatic debit is returned unpaid. At our option, we will assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission.

**Returned Convenience Check Fee:**
We will add a $25 fee to the cash advance balance if we decline to honor a convenience check. We may decline to honor such checks if, for example, the amount of the check would cause the balance to exceed your cash advance credit limit, if you default, if you did not comply with our instructions regarding the check, if your account has been closed, or if the card has expired.

**Payment Services Fee:**
We will add a $5 fee (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for payment services we may offer which allow you, at your option, to make payments other than by mailing them to the payment address shown on your billing statement. In the event you request optional payment services, we will advise you of the fee associated with your request, and your use of the optional payment services thereafter constitutes your agreement to pay the associated fee. This fee does not apply to payments made through Account Online or other electronic bill payment options.

**Photocopy Fee:**
We will add a $5 fee per copy (or the maximum amount permitted by applicable law, whichever is less) to the purchase balance for each copy you request of your billing statements, checks, sales slips and/or memoranda of transactions, other than copies requested for purposes of investigating a billing error. In the event you request copies, we will advise you of the fee associated with your request, and your use of the copy services thereafter constitutes your agreement to pay the associated fee.

**Convenience Checks:**
Convenience checks may be used to purchase goods and services or to obtain cash up to the amount of your cash advance credit limit. We will treat convenience checks as a cash advance and charge them against your cash advance balance. Each convenience check must be in the form we have issued and must be used according to any instructions we give you. Convenience checks may be used only by the person whose name is printed on them. Convenience checks may not be used to pay any amount owed to us under this Agreement or any other Citibank credit card agreement. We will not certify any convenience checks, nor will we return paid convenience checks.

**Lost or Stolen Cards, Account Numbers, or Convenience Checks**
If any card, account number, or check is lost or stolen or if you think someone used or may use them without your permission, notify us at once by calling 1-800-756-2484 or Customer Service at the telephone number shown on your billing statement. We may require you to provide certain information in writing to help us find out what happened, and to comply with such procedures as we may require in connection with our investigation. You may be liable for unauthorized use of the account, but not for more than $50. You won't be liable for unauthorized purchases or cash advances made after we have notified of the loss or theft, however, you must identify for us the charges on the billing statement that were not made by you, or someone authorized by you, and from which you received no benefit.

**Default:**
You default under this Agreement if you fail to pay the minimum payment listed on each billing statement when due, fail to make a payment to any other creditor when due, file for bankruptcy, exceed any credit limit, pay by a check or similar instrument that is not honored or that we must return because it cannot be processed, or pay by automatic debit that is returned unpaid. If you default, we may close your account and demand immediate payment of the full balance.

**Preauthorized Charges:**
If you default, if the card is lost or stolen, or we change your account or account number for any reason, we may suspend automatic charges on that account to third party vendors for insurance premiums or other goods or services. If preauthorized charges are suspended, you must contact the third party vendor to reinstate them. You are responsible for making direct payment for such charges until you reinstate automatic charges.

**Collection Costs:**
If we refer collection of your account to a lawyer who is not our salaried employee, you will be liable for any reasonable attorney's fees we incur, plus the costs and expenses of any legal action, to the extent permitted by law.

---

**ARBITRATION:**
PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY. IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.

**Agreement to Arbitrate:**
Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

**Claim Covered:**

* What Claims are subject to arbitration? All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other source of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (non-class, non-representative) basis.

* Whose Claims are subject to arbitration? Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

* What time frame applies to Claims subject to arbitration? Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

* Broadest interpretation. Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

* What about Claims filed in Small Claims Court? Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, non-representative) Claim.

**How Arbitration Works:**

* How does a party initiate arbitration? The party filing an arbitration must choose one of the following three arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association, JAMS, and National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the three arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
335 Madison Avenue, Floor 10
New York, NY 10017-4605          Web site:   www.adr.org

JAMS
1920 Main Street, Suite 300
Irvine, CA 92610          Web site:   www.jamsadr.com

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405          Web site:   www.arbitration-forum.com

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

* What procedures and law are applicable in arbitration? A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. These procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will

apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

- **Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitrator firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses from another party if the arbitrator, applying applicable law, so determines.

- **Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, co-applicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

- **When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

**Survival and Severability of Terms:**
- This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, and the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions shall nevertheless remain in force. Any different agreement regarding arbitration must be agreed to in writing.

**Credit Reporting:**
We may report your performance under this Agreement to credit reporting agencies, including your failure to make minimum payments on time. If you request additional cards on your account for others, you understand that we may report account information in your name as well as in the names of those other people. We may also obtain follow-up credit reports on you (for example, when we review your account for a credit limit increase). If you wish to know the names of the agencies we have contacted, write us at the address listed on the billing statement. We will try to notify you by telephone or by mail of any legal process served on us in order to give you an opportunity to object to it, unless the law prohibits the notice.

If you think we reported erroneous information to a credit reporting agency, write us at the Customer Service address shown on your billing statement. We will promptly investigate the matter and if our investigation shows you are right, we will contact each credit reporting agency to whom we reported and will request they correct the report. If we disagree with you after our investigation, we will tell you in writing or by telephone and instruct you how to submit a statement of your position to those agencies. Your statement will become a part of your credit record with them.

**Telephone Monitoring and Recording:**
From time to time we may monitor and record your telephone calls regarding your account with us to assure the quality of our service.

**Closing Your Account:**
You may close your account at any time by notifying us in writing. However, you remain responsible to pay the balance according to the terms of this Agreement. We may close your account or suspend your account privileges at any time for any reason without prior notice. We may also reissue a different card, account number, or different checks at any time. You must return the card or the checks to us upon request.

**Refusal of the Card:**
We are not responsible if a transaction on your account is not approved, either by us or by a third party, even if you have sufficient credit available. We may limit the number of transactions that may be approved in one day. If we detect unusual or suspicious activity on your account, we may temporarily suspend your credit privileges until we can verify the activity.

**Changing this Agreement:**
We can change this Agreement, including all fees and the annual percentage rate, at any time. We can also add or delete provisions relating to your account and to the nature, extent, and enforcement of the rights and obligations you or we may have relating to this Agreement. These changes are binding on you. However, if the change will cause a fee, rate or minimum payment to increase, we will mail you written notice at least 15 days before the beginning of the billing period in which the change becomes effective. If you do not agree to the change, you must notify us in writing within 25 days after the effective date of the change and pay us the balance, either at once or under the terms of the unchanged Agreement. Unless we notify you otherwise, use of the card after the effective date of the change shall be deemed acceptance of the new terms, even if the 25 days have not expired.

**Enforcing this Agreement:**
We can delay in enforcing or fail to enforce any of our rights under this Agreement without losing them.

**Assignment:**
We reserve the right to assign any or all of our rights and obligations under this Agreement to a third party.

**Applicable Law:**
The terms and enforcement of this Agreement shall be governed by federal law and the law of South Dakota, where we are located.

**For Further Information:**
Call us at the telephone number shown on your billing statement. You can also call toll-free at 1-800-756-2484.



Kendall E. Stork
President & CEO
Citibank (South Dakota), N.A.

©2002 Citibank (South Dakota), N.A.

## What To Do If There's An Error In Your Bill.

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us on a separate sheet at the address provided in the Billing Rights Summary portion on the back of your billing statement. Write to us as soon as possible. We must hear from you no later than 60 days after we sent you the first billing statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are not sure about.
- Please sign your letter.

If you have authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services. There are two limitations on this right:

- You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and
- The purchase price must have been more than $50.

These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

Citi Prod (Cox v. Hannah) 000066

Contract ID: EN1MU1SB022513
Document ID: 021813EN1OI1SBB1
Document ID: 021813EN1RP1SBB1

## BILL OF SALE AND ASSIGNMENT

THIS BILL OF SALE AND ASSIGNMENT, dated February 28, 2013, is by Citibank, N.A., a national banking association organized under the laws of the United States, located at 701 East 60th Street North, Sioux Falls, SD  57117 (the "Bank") to Midland Funding, LLC, organized under the laws of the Delaware, with its headquarters/principal place of business at 3111 Camino Del Rio North, Suite 1300, San Diego, CA  92108 ("Buyer").

For value received and subject to the terms and conditions of the Purchase and Sale Agreement dated February 25, 2013, between Buyer and the Bank (the "Agreement"), the Bank does hereby transfer, sell, assign, convey, grant, bargain, set over and deliver to Buyer, and to Buyer's successors and assigns, the Accounts described in Exhibit 1 and the final electronic file.

With respect to information for the Accounts listed in Asset Schedule, to the best of the Bank's knowledge, the Bank represents and warrants to Buyer that (i) the Account information constitutes the Bank's own business records and accurately reflects in all material respects the information in the Bank's database; (ii) the Account information was kept in the regular course of business; (iii) the Account information was made at or near the time by, or from information transmitted by, a person with knowledge of the data entered into and maintained in the Account's database; and (iv) it is the regular practice of the Bank's business to maintain and compile such data.

**Citibank, N.A.**

By: _____
            (Signature)

Name: _____Patricia Hall_____

Title:  Financial Account Manager

Midland 022513.doc

Citi Prod (Cox v. Hannah) 000067

Citi Prod (Cox v. Hannah) 000068

### What To Do If There's An Error In Your Bill.

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) as soon as possible at the address provided in the Billing Rights Summary portion on the back of your statement. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:
- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.
- Please sign your letter.

If you authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charge related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will

send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services.

There are two limitations on this right:
- You must have made the purchase in your home state or, if not within your home state, within 100 miles of your current address; and
- The purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

# Notice of Change in Terms and Right to Opt Out

**The Changes.** We are changing your Card Agreement and replacing it with a new one. The changes will be effective on the first day of your first billing period that begins on or after June 1, 2008 ("Effective Date"). The changes will be effective whether or not you receive a billing statement.

Your new Card Agreement follows this notice and the Supplemental Pricing Information ("Supplement"). The Supplement is part of your new Card Agreement. We have identified below some of the changes to your Card Agreement (listing the title of the new section). For complete details regarding those changes, please review the entire section of your new Card Agreement.

- **APRs.** This section, its subsections, and the Supplement describe the annual percentage rates ("APR's); how we determine any APRs based on the U.S. Prime Rate ("Prime Rate"); how all your APRs may increase to a default APR if you fail to make a payment to us when due; and the effect of APR increases. These changes include APR increases.

- **Promotions.** This section describes that we may offer you promotional terms.

- **Periodic Finance Charges Based on APRs.** This section and its subsections describe periodic finance charges, when periodic finance charges begin, the grace period on purchases, the calculation of periodic finance charges, the balance subject to finance charge, and the minimum finance charge and how we determine it.

- **Transaction Fee for Cash Advances.** This section describes the transaction fee for cash advances. This fee is 5% of the amount of the cash advance, but not less than $5.

- **Other Fees.** This section and its subsections describe other fees. These include the fee for late payment, which will be $20 on balances of $51.00

up to $150.99; $29 on balances of $151.00 up to $400.99; and $39 on balances of $401.00 and over.

- **Information on Foreign Currency Conversion.** This section describes rules and procedures used to convert a transaction made in a foreign currency into U.S. dollars.

- **Payments.** This section and its subsections describe the minimum payment, how we calculate it, how we apply payments, and payment instructions. This section also includes a new subsection about our optional Pay by Phone Service.

**Right to Opt Out.** To opt out of these changes, you must call or write us by July 31, 2008. When you do, you must tell us that you are opting out. Call us toll-free at 1-800-756-2484. (Please have your account number available.) Write us at CITGO Customer Service Center, P.O. Box 6401, Sioux Falls, SD 57117. (Include your name, address, and account number on your letter.) If you opt out of these changes, we will close your account. You must then repay the balance under the current terms. However, if you use your card after the Effective Date, you will be deemed to have accepted the changes even if you have notified us that you do not wish to accept them.

Please save this document for future reference.

## SUPPLEMENTAL PRICING INFORMATION

This Supplemental Pricing Information is part of your Card Agreement. The variable annual percentage rates and daily periodic rates shown below are as of April 1, 2008.

| | Current ***APR*** | Current DPR | US Prime Rate plus |
|---|---|---|---|
| Purchases+ | 21.00% | 0.05753% | 14.99% |
| Cash Advance | 24.99% | 0.06846% | 18.99% |
| Default+ | 29.99% | 0.08216% | up to 23.99% |

* With a minimum APR of 21.00%, and a maximum APR of 28.99%
+ With a minimum APR of up to 28.99%

Abbreviations: APR means annual percentage rate; DPR means daily periodic rate.

Annual Membership Fee. Any annual membership fee that applied to your account under your prior Card Agreement will continue to apply under this new Card Agreement.

CTCITI508                                                                     2

# CARD AGREEMENT

This Card Agreement is your contract with us. It governs the use of your card and account. The Supplemental Pricing Information ("Supplement") is part of this Agreement. Please read this Agreement, including the Supplement, carefully. Keep both for your records.

## FACTS ABOUT RATES AND FEES

This is a summary of rates and fees on your account. Please see the related sections of this Agreement for more complete information.

### RATES—FINANCE CHARGES

**Purchase and Cash Advance APRs.** See Supplement. All APRs based on the Prime Rate may vary each billing period.

**Default APR.** See Supplement. The default APR equals the greater of (1) the Prime Rate plus up to 23.99% or (2) up to 28.99%. All APRs may automatically increase to the default APR if you do not make the minimum payment when due or make a payment to us that is not honored.

**Minimum Finance Charge.** $2.00.

### TRANSACTION FEE—FINANCE CHARGE

**Cash Advance Fee.** 5% of each cash advance; $5 minimum.

### OTHER FEES

**Late Fee.** $20 on balances of $51.00 up to $150.99; $29 on balances of $151.00 up to $400.99; and $39 on balances of $401.00 and over.

**Annual Membership Fee.** See Supplement.

**Returned Payment Fee.** $29.

**Returned Convenience Check Fee.** $29.

**When can we change the rates, fees, and terms of this Agreement?** We may change the rates, fees, and terms of this Agreement at any time for any reason. These reasons may be based on information in your credit report or general market conditions. If the change will cause a rate or fee to increase, you will receive advance notice and a right to opt out. If you opt out, we will close your account. You can then repay the remaining balance under the old rates, fees, and terms.

## Definitions

**account** means the relationship established between you and us by this Agreement.

**APR** means an annual percentage rate.

**authorized user** means any person you allow to use your account.

**card** means one or more cards or other access devices that we give you to get credit under this Agreement. This includes account numbers.

**we, us, and our** mean Citibank (South Dakota), N.A., the issuer of your account.

**you, your, and yours** mean the person who applied to open the account. It also means any other person responsible for complying with this Agreement.

## Your Account

You agree to use your account in accordance with this Agreement. You must pay us for all amounts due on your account. This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card. Your account must only be used for lawful transactions.

**Authorized Users.** You may request additional cards for authorized users. You must pay us for all charges made by authorized users. You must pay us even if you did not intend to be responsible for those charges. You must notify us to withdraw any permission you give to an authorized user to use your account.

**Joint Accounts.** If this is a joint account, each of you is responsible individually and together for all amounts owed. Each of you is responsible even if the account is used by only one of you. You will continue to be liable for the entire balance of the account, even if your co-applicant is ordered by a court to pay us. You will remain liable to us if your co-applicant fails to pay as ordered by the court. Your account status will continue to be reported to the credit bureau under each of your names. The delivery of notices or billing statements to either of you serves as delivery to each of you. We may rely on instructions given by either of you. We are not liable to either of you for relying upon such instructions.

**Credit Line.** The full amount of your credit line is available to use where the card is honored. Part of your credit line is called the cash advance limit. It is available for cash advances. We may reduce or increase your credit line or cash advance limit at any time for any reason. We will notify you of any change, but the change may take effect before you receive the notice. You should always keep your total balance below the credit line. However, if the total balance goes over your credit line you still must pay us. If your account has a credit balance, we may reduce the credit

Citi Prod (Cox v. Hannah) 000069

balance by any new charges on your account. You may not maintain a credit balance in excess of your credit line.

**Checks.** We may provide you with convenience checks. All uses of a convenience check will be a cash advance. You may not use convenience checks to pay an amount owed to us under this Agreement or any other Card Agreement you have with us. We do not certify these checks or return any checks that have been paid.

**Billing Statement.** Your billing statement shows the New Balance. This is the total amount you owe us on the Closing Date. To determine the New Balance, we begin with the total balance at the start of the billing period. We add any purchases or cash advances. We subtract any credits or payments. We then add any periodic finance charges or fees and make other adjustments.

Your billing statement also shows your transactions; the minimum payment due and payment due date; your credit line and cash advance limit; and your periodic finance charges and fees.

We deliver a billing statement to only one address. You must notify Customer Service of a change in address. We may stop sending you statements if we deem your account uncollectible. We may also stop sending you statements if we send your account to an outside agency or attorney for collection. Periodic finance charges and fees continue to add up even if we stop sending statements.

## APRs

**APRs Based on Prime.** If any APR is based on the U.S. Prime Rate ("Prime Rate"), the APR will equal the Prime Rate plus an additional amount. The additional amount appears on the Supplement. For each billing period we use the highest Prime Rate published in *The Wall Street Journal* within thirty days before the Closing Date. If the Prime Rate changes any APR, we put the new APR into effect as of the first day of the billing period for which we calculate the APR. We apply the new APR to any existing balances, subject to any promotional rate that may apply. If *The Wall Street Journal* does not publish the Prime Rate, we will use a similar published rate.

**Default APR.** All your APRs (including promotional APRs) on all balances may automatically increase to the default APR if you default under any Card Agreement you have with us because you

• do not make the minimum payment when due, or

• make a payment to us that is not honored.

The default APR equals the greater of (1) the Prime Rate plus up to 23.99% or (2) up to 28.99%. We set your default APR by reviewing the seriousness of your default with us and your credit history. The default APR takes effect as of the first day of the billing period in which you default. We may lower the APR for new purchases and/or cash advances if you meet the terms of all Card Agreements that you have with us for twelve billing periods in a row. However, the default APR will continue to apply to your existing balances until they are paid in full, unless we tell you otherwise.

**Effect of APR Increases.** If an APR increases, periodic finance charges increase. Your minimum payment may increase as well.

## Promotions

We may offer you promotional terms for all or a part of any balances. Any promotional terms may apply for a limited period of time. They will be governed by the terms of the promotional offer and this Agreement. All promotional terms may end if you default under any Card Agreement you have with us because you do not make the minimum payment when due or make a payment to us that is not honored.

Some promotional offers may allow for deferred finance charges. Under such terms, we will not impose finance charges on the promotional balance if you pay it in full before the promotional period expires or before the promotional terms end because you default. If you do not pay the balance in full by that time, we will impose finance charges on the balance from the date of purchase until the balance is paid in full. The offer will tell you if we do not require minimum payments on the balance during the promotional period. The offer also will tell you if we require separate minimum payments on the balance during that period.

### Periodic Finance Charges Based on APRs

**Periodic Finance Charges.** We impose periodic finance charges when we apply APRs to your account balances. We do this every day by using a daily periodic rate. A daily periodic rate is the APR divided by 365.

**When Periodic Finance Charges Begin.** We begin to impose periodic finance charges the first day we add a charge to a daily balance. The charges we add to a daily balance include purchases and cash advances. They also include finance charges and fees. We continue to impose periodic finance charges until we credit your account with full payment of the total amount you owe us.

**Grace Period on Purchases.** You can avoid periodic finance charges on purchases, but not on cash advances. This is called

a grace period on purchases. You can get a grace period of at least 25 days if you pay the New Balance in full by the due date.

Certain promotional offers may take away the grace period on purchases. Other promotional offers may allow you to have a grace period on purchases without having to pay all or a portion of the promotional balance by the due date. If either is the case, the promotional offer will describe what happens.

**Calculation of Periodic Finance Charges.** We calculate periodic finance charges each billing period. To do this:

• We start with each of your different balances. These balances include, for example, standard purchases, standard cash advances, and different promotional balances.

• We calculate the daily balance for each of your different balances. To get a daily balance, we start with the balance as of the end of the previous day. We add any periodic finance charge on the previous day's balance. (This results in daily compounding of finance charges.) We add any new charges. We then subtract any new credits or payments.

• We multiply each daily balance by the daily periodic rate that applies to it. We do this for each day in the billing period. This gives us the daily periodic finance charges for each of your different balances.

• We add up all the daily periodic finance charges. The sum is the total periodic finance charge for the billing period.

When we calculate daily balances, we add a purchase or cash advance as of the Transaction Date on the billing statement. (The Transaction Date for a cash advance made using a convenience check is the date we receive the check for payment.) We add any cash advance transaction fee to the cash advance balance. We subtract a payment or credit as of the day it is credited to the account and then make other adjustments. We treat a credit balance as a balance of zero.

**Balance Subject to Finance Charge.** Your statement shows a Balance Subject to Finance Charge. It shows this for each different balance. The Balance Subject to Finance Charge is the average of the daily balances during the billing period. A billing period begins on the day after the Closing Date of the previous billing period. It includes the Closing Date of the current billing period.

You can use your billing statement to calculate periodic finance charges. For each different balance multiply the Balance Subject to Finance Charge by its daily periodic rate. Multiply that amount by the number of days in the billing period. The result is the total

5

6

7

Citi Prod (Cox v. Hannah) 000070

periodic finance charge on that balance. Rounding may cause a small difference.

**Minimum Finance Charge.** We charge a minimum **FINANCE CHARGE** of $2.00. We charge it if the total periodic finance charge is less than $2.00. We add the additional amount to one or more of the balances that are assessed a periodic finance charge.

### Transaction Fee for Cash Advances

You take a cash advance if you use a convenience check; get money through an automated teller machine (ATM); get money through a financial institution; or engage in a similar transaction. For each cash advance we add a fee of 5% of the amount of the cash advance, but not less than $5. This fee is a **FINANCE CHARGE.** When first added to the cash advance balance, the transaction fee causes the APR on the statement to exceed the corresponding APR.

### Other Fees

**Late Fee.** If your account balance is $51 or more, we add a late fee for each billing period you do not pay the Minimum Payment Due by the payment due date. This fee is based on your account balance as of the payment due date. The fee is $20 on balances of $51.00 up to $150.99; $29 on balances of $151.00 up to $400.99; and $39 on balances of $401.00 and over. We add this fee to the standard purchase balance.

**Annual Membership Fee.** If an annual membership fee applies, the Supplement shows it. We will refund this fee if you notify us that you are closing your account within 30 days of the mailing or delivery date of the statement on which the fee appears. The fee is otherwise non-refundable. If this fee applies, we add it to the standard purchase balance.

**Returned Payment Fee.** We add a $29 fee if a payment check or similar instrument is not honored or is returned because it cannot be processed. We also add this fee if an automatic debit is returned unpaid. We assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission. We add this fee to the standard purchase balance.

**Returned Convenience Check Fee.** We add a $29 fee if we do not honor a convenience check. We may not honor these checks if the amount of the check would cause the balance to go over the cash advance limit or credit line. We may also not honor these checks if you default: if you did not comply with our instructions regarding the check: if your account has been closed; or for other reasons. We add this fee to the standard cash advance balance.

### Information on Foreign Currency Conversion

If you take a cash advance in a foreign currency at a branch or ATM of one of our affiliates, an affiliate of ours will convert it into U.S. dollars. Our affiliate currently uses a conversion rate in effect on its processing date. It uses a government-mandated rate if required to do so. If not, it uses a mid-point market rate. Our affiliate's procedure may change from time to time without notice. If you take a cash advance in a foreign currency anywhere else, MasterCard will convert it into U.S. dollars. MasterCard currently uses an operating regulations or procedures. MasterCard currently uses a conversion rate in effect one day before its transaction processing date. It uses a government-mandated rate if required to do so. If not, it uses a wholesale market rate. The procedures may change from time to time without notice. The conversion rate you get is the one used on the transaction's processing date. This may be different from the one in effect on the Transaction Date.

### Payments

**Minimum Payment Due.** You must pay at least the Minimum Payment Due by the payment due date each billing period. The sooner you pay the New Balance, the less you will pay in periodic finance charges.

We calculate the Minimum Payment Due as follows. We begin with any past due amount. We add any additional amount specified in a promotional offer. We then add the largest of the following:

- The Calculated New Balance if it is less than $10;
- $10 if the Calculated New Balance is at least $10; or
- 1% of the Calculated New Balance plus the amount of your billed periodic finance charges on the Calculated New Balance and any applicable late fee. (For this purpose, billed periodic finance charges do not include any accrued finance charges on the billing statement for a deferred finance charge promotion that ended during the billing period covered by the statement.)

The Calculated New Balance equals the New Balance on the billing statement less any balances subject to either of two types of promotional terms. The first are terms that do not require a minimum payment. The second are terms that require an additional amount as part of the Minimum Payment Due. The Minimum Payment Due never exceeds your Calculated New Balance plus any required additional amount specified in a promotional offer.

**Application of Payments.** You authorize us to apply payments

and credits in a way that is most favorable or convenient for us. This may include applying payments and credits to low APR balances first.

**Payment Instructions.** We credit your payments in accordance with your payment instructions on the billing statement. You must pay us in U.S. dollars. To do so, you must use a check, similar instrument, or automatic debit that is drawn on and honored by a bank in the U.S. Do not send cash. We can accept late or partial payments, or payments that reflect "paid in full" or other restrictive endorsements, without losing our rights. We also reserve the right to accept payments made in foreign currency and instruments drawn on funds on deposit outside the U.S. If we do, we select the currency conversion rate. We will then credit your account in U.S. dollars after deducting any costs incurred in processing your payment. Or we may bill you separately for these costs.

**Optional Pay by Phone Service.** You may use our optional Pay by Phone Service to make your payment by phone. To do so, call us to request the service. Each time you do, you agree to pay us the amount shown in the Pay by Phone section on the back of the billing statement. Our representatives are trained to tell you this amount whenever you call to use the service.

### Credit Reporting

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. We may report account information in your name and the names of authorized users. We may also obtain follow-up credit reports on you.

If you think we reported incorrect information to a credit bureau, write us at the Customer Service address on the billing statement. We will investigate the matter. We will then tell you if we agree or disagree with you. If we agree with you, we will contact each credit bureau to which we reported and request a correction. If we disagree with you, we will tell you that.

### Information Sharing

You authorize us to share information about you as permitted by law. This includes information we get from you and others. It also includes information about your transactions with us. Please see our Privacy Notice for details about our information sharing practices.

### Changes to this Agreement

**We may change the rates, fees, and terms of this Agreement at any time for any reason. These reasons may be based on**

8

9

10

Citi Prod (Cox v. Hannah) 000071

information in your credit report or general market conditions. Any changes we make may add, replace, or remove provisions of this Agreement. They may also change your rights and obligations under this Agreement as well as ours. These changes are binding on you unless you have the right to opt out and you choose to opt out by following our instructions.

You will have a right to opt out if the change will cause a rate or fee to increase. In that case, we will mail you advance written notice of the change. We will do this at least 15 days before the beginning of the billing period in which the change takes effect. If you do not agree to the change, you can opt out by contacting us. You must do this within 25 days of the effective date of the change. If you opt out, we will close your account. You can then pay the remaining balance under the old rates, fees, and terms. If you use the card after the effective date of a change, you will be deemed to have accepted the change. This applies even if the 25 day opt out period has not expired.

### Default

You default under this Agreement if you fail to pay the Minimum Payment Due by its due date; go over your credit line; pay by a check or similar instrument that is not honored or that we must return because it cannot be processed; pay by automatic debit that is returned unpaid; file for bankruptcy; or default under any other Card Agreement that you have with us. If you default, we may close your account and demand immediate payment of the total balance.

### Refusal of the Card, Closed Accounts, and Related Provisions

**Refusal of the Card.** We do not guarantee approval of transactions. We are not liable for transactions that are not approved. That is true even if you have enough credit. We may limit the number of transactions approved in one day. If we detect unusual or suspicious activity, we may suspend your credit privileges.

**Preauthorized Charges.** We may suspend any automatic or other preauthorized card charges you arrange with a third party. We may do this if you default; if the card is lost or stolen; or we change your account for any reason. If we do this, you are responsible for paying the third party directly if you wish to do so. You are also responsible for reinstating the preauthorized charges if you wish to do so and we permit it.

**Lost or Stolen Cards, Account Numbers, or Convenience Checks.** You must call us if any card, account number, or check is lost or stolen. You must also call us if you think someone

used or may use them without permission. When you call, we may require you to provide information to help our investigation. We may require you to provide this information in writing. For example, we may ask you to identify any charges that were not made by you or someone authorized by you. We may also ask you to confirm that you received no benefit from those charges.

**Closing Your Account.** You may close your account by notifying us in writing or over the phone. If you close your account, you must still repay the total balance in accordance with this Agreement. We may also close your account or suspend account privileges at any time for any reason. We may do this without prior notice to you. We may also reissue a different card at any time. You must return any card to us upon request.

---

### ARBITRATION
*PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.* **IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

**Agreement to Arbitrate:** Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

#### Claims Covered

**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney

general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (nonclass, non-representative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

**What time frame applies to Claims subject to arbitration?** Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

**Broadest interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

**What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, nonrepresentative) Claim.

#### How Arbitration Works

**How does a party initiate arbitration?** The party filing an arbitration must choose one of the following two arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
1633 Broadway, Floor 10
New York, NY 10019
Web site: www.adr.org

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405
Web site: www.arbitration-forum.com

11

12

13

Citi Prod (Cox v. Hannah) 000072

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

**What procedures and law are applicable in arbitration?**
A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitration will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

**Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses

from another party if the arbitrator, applying applicable law, so determines.

**Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, coapplicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

**When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

### Survival and Severability of Terms
This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall not remain in force. No portion of this arbitration provision may be amended, severed or waived absent a written agreement between you and us.

### Governing Law and Enforcing our Rights
**Governing Law.** Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement.

**Enforcing this Agreement.** We will not lose our rights under this Agreement because we delay in enforcing them or fail to enforce them.

**Collection Costs.** To the extent permitted by law, you are liable to us for our legal costs if we refer collection of your account to a lawyer who is not our salaried employee. These costs may include reasonable attorneys' fees. They may also include costs and expenses of any legal action.

**Assignment.** We may assign any or all of our rights and obligations under this Agreement to a third party.

### For Further Information
Call us toll-free for further information. Call the toll-free Customer Service telephone number shown on the billing statement or on the back of your card. You can also call local or toll-free Directory Assistance to get our telephone number.

Ken Stork
President & CEO

Citibank (South Dakota), N.A.
P.O. Box 6000
Sioux Falls, SD 57117

© 2008 Citibank (South Dakota), N.A.

Citi Prod (Cox v. Hannah) 000073

Citi Prod (Cox v. Hannah) 000074

### What To Do If There's An Error In Your Bill.

**Your Billing Rights. Keep This Notice For Future Use.**
This notice contains important information about your rights and our responsibilities under the Fair Credit Billing Act.

**Notify Us In Case of Errors or Questions About Your Bill.**
If you think your billing statement is wrong, or if you need more information about a transaction on your billing statement, write to us (on a separate sheet) as soon as possible at the address provided in the Billing Rights Summary portion on the back of your statement. We must hear from you no later than 60 days after we sent you the first statement on which the error or problem appeared. You can telephone us, but doing so will not preserve your rights.

In your letter, give us the following information:

- Your name and account number.
- The dollar amount of the suspected error.
- Describe the error and explain, if you can, why you believe there is an error. If you need more information, describe the item you are unsure about.
- Please sign your letter.

If you authorized us to pay your credit card bill automatically from your savings or checking account, you can stop the payment on any amount you think is wrong. To stop the payment you must tell us at least three business days before the automatic payment is scheduled to occur.

**Your Rights and Our Responsibilities After We Receive Your Written Notice.**
We must acknowledge your letter within 30 days, unless we have corrected the error by then. Within 90 days, we must either correct the error or explain why we believe your billing statement was correct. After we receive your letter, we cannot try to collect any amount you question, or report your account as delinquent. We can continue to bill you for the amount you question, including finance charges, and we can apply any unpaid amount against your credit line. You do not have to pay any questioned amount while we are investigating, but you are still obligated to pay the parts of your balance that are not in question.

If we find that we made a mistake on your billing statement, you will not have to pay any finance charges related to any questioned amount. If we didn't make a mistake, you may have to pay finance charges, and you will have to make up any missed payments on the questioned amount. In either case, we will

send you a statement of the amount you owe and the date it is due.

If you fail to pay the amount that we think you owe, we may report you as delinquent. However, if our explanation does not satisfy you and you write to us within 10 days telling us that you still refuse to pay, we must tell anyone we report you to that you have a question about your bill. And, we must tell you the name and address of anyone to whom we reported your account information. We must tell anyone we report you to that the matter has been settled between us when it is finally settled.

If we don't follow these rules, we can't collect the first $50 of the questioned amount, even if your billing statement was correct.

**Special Rule for Credit Card Purchases.**
If you have a problem with the quality of property or services that you purchased with a credit card, and you have tried in good faith to correct the problem with the merchant, you may have the right not to pay the remaining amount due on the property or services.

There are two limitations on this right:

- You must have made the purchase in your home state, or if not within your home state, within 100 miles of your current address; and
- The purchase price must have been more than $50. These limitations do not apply if we own or operate the merchant, or if we mailed you the advertisement for the property or services.

☆ CTCIT508                                                                        04/08

17                                                                               18

## Notice of Change in Terms and Right to Opt Out

**The Changes.** We are changing your Card Agreement and replacing it with a new one. The changes will be effective on the first day of your first billing period that begins on or after June 1, 2008 ("Effective Date"). The changes will be effective whether or not you receive a billing statement.

Your new Card Agreement follows this notice and the Supplemental Pricing Information ("Supplement"). The Supplement is part of your new Card Agreement. We have identified below some of the changes to your Card Agreement (listing the title of the new section). For complete details regarding those changes, please review the entire section of your new Card Agreement.

- **APRs.** This section, its subsections, and the Supplement describe the annual percentage rates ("APR"s); how we determine any APRs based on the U.S. Prime Rate ("Prime Rate"); how all your APRs may increase to a default APR if you fail to make a payment to us when due; and the effect of APR increases. These changes include APR increases.

- **Promotions.** This section describes that we may offer you promotional terms.

- **Periodic Finance Charges Based on APRs.** This section and its subsections describe periodic finance charges, when periodic finance charges begin, the grace period on purchases, the calculation of periodic finance charges, the balance subject to finance charge, and the minimum finance charge and how we determine it.

- **Transaction Fee for Cash Advances.** This section describes the transaction fee for cash advances. This fee is 5% of the amount of the cash advance, but not less than $5.

- **Other Fees.** This section and its subsections describe other fees. These include the fee for late payment, which will be $20 on balances of $51.00

1

up to $150.99; $29 on balances of $151.00 up to $400.99, and $39 on balances of $401.00 and over.

* **Information on Foreign Currency Conversion.** This section describes rules and procedures used to convert a transaction made in a foreign currency into U.S. dollars.

* **Payments.** This section and its subsections describe the minimum payment, how we calculate it, how we apply payments, and payment instructions. This section also includes a new subsection about our optional Pay by Phone Service.

**Right to Opt Out.** To opt out of these changes, you must call or write us by July 31, 2008. When you do, you must tell us that you are opting out. Call us toll-free at 1-800-756-2484. (Please have your account number available.) Write us at CITGO Customer Service Center, P.O. Box 6401, Sioux Falls, SD 57117. (Include your name, address, and account number on your letter.) If you opt out of these changes, we will close your account. You must then repay the balance under the current terms. However, if you use your card after the Effective Date, you will be deemed to have accepted the changes even if you have notified us that you do not wish to accept them.

Please save this document for future reference.

### SUPPLEMENTAL PRICING INFORMATION

This Supplemental Pricing Information is part of your Card Agreement. The variable annual percentage rates and daily periodic rates shown below are as of April 1, 2008.

| | Current ***APR*** | Current DPR | US Prime Rate plus |
|---|---|---|---|
| Purchases* | 21.00% | 0.05753% | 14.99% |
| Cash Advance | 24.99% | 0.06846% | 18.99% |
| Default+ | 29.99% | 0.08216% | up to 23.99% |

\* With a minimum APR of 21.00%, and a maximum APR of 28.99%
+ With a minimum APR of up to 28.99%

Abbreviations: APR means annual percentage rate; DPR means daily periodic rate.

Annual Membership Fee. Any annual membership fee that applied to your account under your prior Card Agreement will continue to apply under this new Card Agreement.

CTCIT508

## CARD AGREEMENT

This Card Agreement is your contract with us. It governs the use of your card and account. The Supplemental Pricing Information ("Supplement") is part of this Agreement. Please read this Agreement, including the Supplement, carefully. Keep both for your records.

### FACTS ABOUT RATES AND FEES

This is a summary of rates and fees on your account. Please see the related sections of this Agreement for more complete information.

### RATES—FINANCE CHARGES

**Purchase and Cash Advance APRs.** See Supplement. All APRs based on the Prime Rate may vary each billing period.

**Default APR.** See Supplement. The default APR equals the greater of (1) the Prime Rate plus up to 23.99% or (2) up to 28.99%. All APRs may automatically increase to the default APR if you do not make the minimum payment when due or make a payment to us that is not honored.

**Minimum Finance Charge.** $2.00.

### TRANSACTION FEE—FINANCE CHARGE

**Cash Advance Fee.** 5% of each cash advance; $5 minimum.

### OTHER FEES

**Late Fee.** $20 on balances of $51.00 up to $150.99; $29 on balances of $151.00 up to $400.99; and $39 on balances of $401.00 and over.

**Annual Membership Fee.** See Supplement.

**Returned Payment Fee.** $29.

**Returned Convenience Check Fee.** $29.

**When can we change the rates, fees, and terms of this Agreement?** We may change the rates, fees, and terms of this Agreement at any time for any reason. These reasons may be based on information in your credit report or general market conditions. If the change will cause a rate or fee to increase, you will receive advance notice and a right to opt out. If you opt out, we will close your account. You can then repay the remaining balance under the old rates, fees, and terms.

### Definitions

***account*** means the relationship established between you and us by this Agreement.

***APR*** means an annual percentage rate.

***authorized user*** means any person you allow to use your account.

***card*** means one or more cards or other access devices that we give you to get credit under this Agreement. This includes account numbers.

***we, us, and our*** mean Citibank (South Dakota), N.A., the issuer of your account.

***you, your, and yours*** mean the person who applied to open the account. It also means any other person responsible for complying with this Agreement.

### Your Account

You agree to use your account in accordance with this Agreement. You must pay us for all amounts due on your account. This Agreement is binding on you unless you close your account within 30 days after receiving the card and you have not used or authorized use of the card. Your account must only be used for lawful transactions.

**Authorized Users.** You may request additional cards for authorized users. You must pay us for all charges made by authorized users. You must pay us even if you did not intend to be responsible for those charges. You must notify us to withdraw any permission you give to an authorized user to use your account.

**Joint Accounts.** If this is a joint account, each of you is responsible individually and together for all amounts owed. Each of you is responsible even if the account is used by only one of you. You will continue to be liable for the entire balance of the account, even if your co-applicant is ordered by a court to pay us. You will remain liable to us if your co-applicant fails to pay as ordered by the court. Your account status will continue to be reported to the credit bureau under each of your names. The delivery of notices or billing statements to either of you serves as delivery to each of you. We may rely on instructions given by either of you. We are not liable to either of you for relying upon such instructions.

**Credit Line.** The full amount of your credit line is available to use where the card is honored. Part of your credit line is called the cash advance limit. It is available for cash advances. We may reduce or increase your credit line or cash advance limit at any time for any reason. We will notify you of any change, but the change may take effect before you receive the notice. You should always keep your total balance below the credit line. However, if the total balance goes over your credit line you still must pay us. If your account has a credit balance, we may reduce the credit

3

4

Citi Prod (Cox v. Hannah) 000075

balance by any new charges on your account. You may not maintain a credit balance in excess of your credit line.

**Checks.** We may provide you with convenience checks. All uses of a convenience check will be a cash advance. You may not use convenience checks to pay an amount owed to us under this Agreement or any other Card Agreement you have with us. We do not certify these checks or return any checks that have been paid.

**Billing Statement.** Your billing statement shows the New Balance. This is the total amount you owe us on the Closing Date. To determine the New Balance, we begin with the total balance at the start of the billing period. We add any purchases or cash advances. We subtract any credits or payments. We then add any periodic finance charges or fees and make other adjustments.

Your billing statement also shows your transactions; the minimum payment due and payment due date; your credit line and cash advance limit; and your periodic finance charges and fees.

We deliver a billing statement to only one address. You must notify Customer Service of a change in address. We may stop sending you statements if we deem your account uncollectible. We may also stop sending you statements if we send your account to an outside agency or attorney for collection. Periodic finance charges and fees continue to add up even if we stop sending statements.

### APRs

**APRs Based on Prime.** If any APR is based on the U.S. Prime Rate ("Prime Rate"), the APR will equal the Prime Rate plus an additional amount. The additional amount appears on the Supplement. For each billing period we use the highest Prime Rate published in *The Wall Street Journal* within thirty days before the Closing Date. If the Prime Rate changes any APR, we put the new APR into effect as of the first day of the billing period for which we calculate the APR. We apply the new APR to any existing balances, subject to any promotional rate that may apply. If *The Wall Street Journal* does not publish the Prime Rate, we will use a similar published rate.

**Default APR.** All your APRs (including promotional APRs) on all balances may automatically increase to the default APR if you default under any Card Agreement you have with us because you

  • do not make the minimum payment when due, or

  • make a payment to us that is not honored.

The default APR equals the greater of (1) the Prime Rate plus up to 23.99% or (2) up to 28.99%. We set your default APR by reviewing the seriousness of your default with us and your credit history. The default APR takes effect as of the first day of the billing period in which you default. We may lower the APR for new purchases and/or cash advances if you meet the terms of all Card Agreements that you have with us for twelve billing periods in a row. However, the default APR will continue to apply to your existing balances until they are paid in full, unless we tell you otherwise.

**Effect of APR Increases.** If an APR increases, periodic finance charges increase. Your minimum payment may increase as well.

### Promotions

We may offer you promotional terms for all or a part of any balances. Any promotional terms may apply for a limited period of time. They will be governed by the terms of the promotional offer and this Agreement. All promotional terms may end if you default under any Card Agreement you have with us because you do not make the minimum payment when due or make a payment to us that is not honored.

Some promotional offers may allow for deferred finance charges. Under such terms, we will not impose finance charges on the promotional balance if you pay it in full before the promotional period expires or before the promotional terms end because you default. If you do not pay the balance in full by that time, we will impose finance charges on the balance from the date of purchase until the balance is paid in full. The offer will tell you if we do not require minimum payments on the balance during the promotional period. The offer also will tell you if we require separate minimum payments on the balance during that period.

### Periodic Finance Charges Based on APRs

**Periodic Finance Charges.** We impose periodic finance charges when we apply APRs to your account balances. We do this every day by using a daily periodic rate. A daily periodic rate is the APR divided by 365.

**When Periodic Finance Charges Begin.** We begin to impose periodic finance charges the first day we add a charge to a daily balance. The charges we add to a daily balance include purchases and cash advances. They also include finance charges and fees. We continue to impose periodic finance charges until we credit your account with full payment of the total amount you owe us.

**Grace Period on Purchases.** You can avoid periodic finance charges on purchases, but not on cash advances. This is called

a grace period on purchases. You can get a grace period of at least 25 days if you pay the New Balance in full by the due date.

Certain promotional offers may take away the grace period on purchases. Other promotional offers may allow you to have a grace period on purchases without having to pay all or a portion of the promotional balance by the due date. If either is the case, the promotional offer will describe what happens.

**Calculation of Periodic Finance Charges.** We calculate periodic finance charges each billing period. To do this:

  • We start with each of your different balances. These balances include, for example, standard purchases, standard cash advances, and different promotional balances.

  • We calculate the daily balance for each of your different balances. To get a daily balance, we start with the balance as of the end of the previous day. We add any periodic finance charge on the previous day's balance. (This results in daily compounding of finance charges.) We add any new charges. We then subtract any new credits or payments.

  • We multiply each daily balance by the daily periodic rate that applies to it. We do this for each day in the billing period. This gives us the daily periodic finance charges for each of your different balances.

  • We add up all the daily periodic finance charges. The sum is the total periodic finance charge for the billing period.

When we calculate daily balances, we add a purchase or cash advance as of the Transaction Date on the billing statement. (The Transaction Date for a cash advance made using a convenience check is the date we receive the check for payment.) We add any cash advance transaction fee to the cash advance balance. We subtract a payment or credit as of the day it is credited to the account and then make other adjustments. We treat a credit balance as a balance of zero.

**Balance Subject to Finance Charge.** Your statement shows a Balance Subject to Finance Charge. It shows this for each different balance. The Balance Subject to Finance Charge is the average of the daily balances during the billing period. A billing period begins on the day after the Closing Date of the previous billing period. It includes the Closing Date of the current billing period.

You can use your billing statement to calculate periodic finance charges. For each different balance multiply the Balance Subject to Finance Charge by its daily periodic rate. Multiply that amount by the number of days in the billing period. The result is the total

Citi Prod (Cox v. Hannah) 000076

periodic finance charge on that balance. Rounding may cause a small difference.

**Minimum Finance Charge.** We charge a minimum **FINANCE CHARGE** of $2.00. We charge it if the total periodic finance charge is less than $2.00. We add the additional amount to one or more of the balances that are assessed a periodic finance charge.

### Transaction Fee for Cash Advances

You take a cash advance if you use a convenience check; get money through an automated teller machine (ATM); get money through a financial institution; or engage in a similar transaction. For each cash advance we add a fee of 5% of the amount of the cash advance, but not less than $5. This fee is a **FINANCE CHARGE.** When first added to the cash advance balance, the transaction fee causes the APR on the statement to exceed the corresponding APR.

### Other Fees

**Late Fee.** If your account balance is $51 or more, we add a late fee for each billing period you do not pay the Minimum Payment Due by the payment due date. This fee is based on your account balance as of the payment due date. The fee is $20 on balances of $51.00 up to $150.99; $29 on balances of $151.00 up to $400.99; and $39 on balances of $401.00 and over. We add this fee to the standard purchase balance.

**Annual Membership Fee.** If an annual membership fee applies, the Supplement shows it. We will refund this fee if you notify us that you are closing your account within 30 days of the mailing or delivery date of the statement on which the fee appears. The fee is otherwise non-refundable. If this fee applies, we add it to the standard purchase balance.

**Returned Payment Fee.** We add a $29 fee if a payment check or similar instrument is not honored or is returned because it cannot be processed. We also add this fee if an automatic debit is returned unpaid. We assess this fee the first time your check or payment is not honored, even if it is honored upon resubmission. We add this fee to the standard purchase balance.

**Returned Convenience Check Fee.** We add a $29 fee if we do not honor a convenience check. We may not honor these checks if the amount of the check would cause the balance to go over the cash advance limit or credit line. We may also not honor these checks if you default; if you did not comply with our instructions regarding the check; if your account has been closed; or for other reasons. We add this fee to the standard cash advance balance.

### Information on Foreign Currency Conversion

If you take a cash advance in a foreign currency at a branch or ATM of one of our affiliates, an affiliate of ours will convert it into U.S. dollars. Our affiliate currently uses a conversion rate in effect on its processing date. It uses a government-mandated rate if required to do so. If not, it uses a mid-point market rate. Our affiliate's procedure may change from time to time without notice. If you take a cash advance in a foreign currency anywhere else, MasterCard will convert it into U.S. dollars. MasterCard follows its own operating regulations or procedures. MasterCard currently uses a conversion rate in effect one day before its transaction processing date. It uses a government-mandated rate if required to do so. If not, it uses a wholesale market rate. The procedures may change from time to time without notice. The conversion rate you get is the one used on the transaction's processing date. This may be different from the one in effect on the Transaction Date.

### Payments

**Minimum Payment Due.** You must pay at least the Minimum Payment Due by the payment due date each billing period. The sooner you pay the New Balance, the less you will pay in periodic finance charges.

We calculate the Minimum Payment Due as follows. We begin with any past due amount. We add any additional amount specified in a promotional offer. We then add the largest of the following:

• The Calculated New Balance if it is less than $10;

• $10 if the Calculated New Balance is at least $10; or

• 1% of the Calculated New Balance plus the amount of your billed periodic finance charges on the Calculated New Balance and any applicable late fee. (For this purpose, billed periodic finance charges do not include any accrued finance charges on the billing statement for a deferred finance charge promotion that ended during the billing period covered by the statement.)

The Calculated New Balance equals the New Balance on the billing statement less any balances subject to either of two types of promotional terms. The first are terms that do not require a minimum payment. The second are terms that require an additional amount as part of the Minimum Payment Due. The Minimum Payment Due never exceeds your Calculated New Balance plus any required additional amount specified in a promotional offer.

**Application of Payments.** You authorize us to apply payments

and credits in a way that is most favorable or convenient for us. This may include applying payments and credits to low APR balances first.

**Payment Instructions.** We credit your payments in accordance with our payment instructions on the billing statement. You must pay us in U.S. dollars. To do so, you must use a check, similar instrument, or automatic debit that is drawn on and honored by a bank in the U.S. Do not send cash. We can accept late or partial payments, or payments that reflect "paid in full" or other restrictive endorsements, without losing our rights. We also reserve the right to accept payments made in foreign currency and instruments drawn on funds on deposit outside the U.S. If we do, we select the currency conversion rate. We will then credit your account in U.S. dollars after deducting any costs incurred in processing your payment. Or we may bill you separately for these costs.

**Optional Pay by Phone Service.** You may use our optional Pay by Phone Service to make your payment by phone. To do so, call us to request the service. Each time you do, you agree to pay us the amount shown in the Pay by Phone section on the back of the billing statement. Our representatives are trained to tell you this amount whenever you call to use the service.

### Credit Reporting

We may report information about your account to credit bureaus. Late payments, missed payments, or other defaults on your account may be reflected in your credit report. We may report account information in your name and the names of authorized users. We may also obtain follow-up credit reports on you.

If you think we reported incorrect information to a credit bureau, write us at the Customer Service address on the billing statement. We will investigate the matter. We will then tell you if we agree or disagree with you. If we agree with you, we will contact each credit bureau to which we reported and request a correction. If we disagree with you, we will tell you that.

### Information Sharing

You authorize us to share information about you as permitted by law. This includes information we get from you and others. It also includes information about your transactions with us. Please see our Privacy Notice for details about our information sharing practices.

### Changes to this Agreement

**We may change the rates, fees, and terms of this Agreement at any time for any reason. These reasons may be based on**

8                                    9                                    10

Citi Prod (Cox v. Hannah) 000077

information in your credit report or general market conditions. Any changes we make may add, replace, or remove provisions of this Agreement. They may also change your rights and obligations under this Agreement as well as ours. These changes are binding on you unless you have the right to opt out and you choose to opt out by following our instructions.

You will have a right to opt out if the change will cause a rate or fee to increase. In that case, we will mail you advance written notice of the change. We will do this at least 15 days before the beginning of the billing period in which the change takes effect. If you do not agree to the change, you can opt out by contacting us. You must do this within 25 days of the effective date of the change. If you opt out, we will close your account. You can then pay the remaining balance under the old rates, fees, and terms. If you use the card after the effective date of a change, you will be deemed to have accepted the change. This applies even if the 25 day opt out period has not expired.

### Default

You default under this Agreement if you fail to pay the Minimum Payment Due by its due date; go over your credit line; pay by a check or similar instrument that is not honored or that we must return because it cannot be processed; pay by automatic debit that is returned unpaid; file for bankruptcy; or default under any other Card Agreement that you have with us. If you default, we may close your account and demand immediate payment of the total balance.

### Refusal of the Card, Closed Accounts, and Related Provisions

**Refusal of the Card.** We do not guarantee approval of transactions. We are not liable for transactions that are not approved. That is true even if you have enough credit. We may limit the number of transactions approved in one day. If we detect unusual or suspicious activity, we may suspend your credit privileges.

**Preauthorized Charges.** We may suspend any automatic or other preauthorized card charges you arrange with a third party. We may do this if you default; if the card is lost or stolen; or we change your account for any reason. If we do this, you are responsible for paying the third party directly if you wish to do so. You are also responsible for reinstating the preauthorized charges if you wish to do so and we permit it.

**Lost or Stolen Cards, Account Numbers, or Convenience Checks.** You must call us if any card, account number, or check is lost or stolen. You must also call us if you think someone

used or may use them without permission. When you call, we may require you to provide information to help our investigation. We may require you to provide this information in writing. For example, we may ask you to identify any charges that were not made by you or someone authorized by you. We may also ask you to confirm that you received no benefit from those charges.

**Closing Your Account.** You may close your account by notifying us in writing or over the phone. If you close your account, you must still repay the total balance in accordance with this Agreement. We may also close your account or suspend account privileges at any time for any reason. We may do this without prior notice to you. We may also reissue a different card at any time. You must return any card to us upon request.

### ARBITRATION

*PLEASE READ THIS PROVISION OF THE AGREEMENT CAREFULLY.* **IT PROVIDES THAT ANY DISPUTE MAY BE RESOLVED BY BINDING ARBITRATION. ARBITRATION REPLACES THE RIGHT TO GO TO COURT, INCLUDING THE RIGHT TO A JURY AND THE RIGHT TO PARTICIPATE IN A CLASS ACTION OR SIMILAR PROCEEDING. IN ARBITRATION, A DISPUTE IS RESOLVED BY AN ARBITRATOR INSTEAD OF A JUDGE OR JURY. ARBITRATION PROCEDURES ARE SIMPLER AND MORE LIMITED THAN COURT PROCEDURES.**

**Agreement to Arbitrate:** Either you or we may, without the other's consent, elect mandatory, binding arbitration for any claim, dispute, or controversy between you and us (called "Claims").

#### Claims Covered

**What Claims are subject to arbitration?** All Claims relating to your account, a prior related account, or our relationship are subject to arbitration, including Claims regarding the application, enforceability, or interpretation of this Agreement and this arbitration provision. All Claims are subject to arbitration, no matter what legal theory they are based on or what remedy (damages, or injunctive or declaratory relief) they seek. This includes Claims based on contract, tort (including intentional tort), fraud, agency, your or our negligence, statutory or regulatory provisions, or any other sources of law; Claims made as counterclaims, cross-claims, third-party claims, interpleaders or otherwise; and Claims made independently or with other claims. A party who initiates a proceeding in court may elect arbitration with respect to any Claim advanced in that proceeding by any other party. Claims and remedies sought as part of a class action, private attorney

general or other representative action are subject to arbitration on an individual (non-class, non-representative) basis, and the arbitrator may award relief only on an individual (nonclass, non-representative) basis.

**Whose Claims are subject to arbitration?** Not only ours and yours, but also Claims made by or against anyone connected with us or you or claiming through us or you, such as a co-applicant or authorized user of your account, an employee, agent, representative, affiliated company, predecessor or successor, heir, assignee, or trustee in bankruptcy.

**What time frame applies to Claims subject to arbitration?** Claims arising in the past, present, or future, including Claims arising before the opening of your account, are subject to arbitration.

**Broadest interpretation.** Any questions about whether Claims are subject to arbitration shall be resolved by interpreting this arbitration provision in the broadest way the law will allow it to be enforced. This arbitration provision is governed by the Federal Arbitration Act (the "FAA").

**What about Claims filed in Small Claims Court?** Claims filed in a small claims court are not subject to arbitration, so long as the matter remains in such court and advances only an individual (non-class, nonrepresentative) Claim.

#### How Arbitration Works

**How does a party initiate arbitration?** The party filing an arbitration must choose one of the following two arbitration firms and follow its rules and procedures for initiating and pursuing an arbitration: American Arbitration Association or National Arbitration Forum. Any arbitration hearing that you attend will be held at a place chosen by the arbitration firm in the same city as the U.S. District Court closest to your then current billing address, or at some other place to which you and we agree in writing. You may obtain copies of the current rules of each of the arbitration firms and forms and instructions for initiating an arbitration by contacting them as follows:

American Arbitration Association
1633 Broadway, Floor 10
New York, NY 10019
Web site: www.adr.org

National Arbitration Forum
P.O. Box 50191
Minneapolis, MN 55405
Web site: www.arbitration-forum.com

11

12

13

Citi Prod (Cox v. Hannah) 000078

At any time you or we may ask an appropriate court to compel arbitration of Claims, or to stay the litigation of Claims pending arbitration, even if such Claims are part of a lawsuit, unless a trial has begun or a final judgment has been entered. Even if a party fails to exercise these rights at any particular time, or in connection with any particular Claims, that party can still require arbitration at a later time or in connection with any other Claims.

**What procedures and law are applicable in arbitration?** A single, neutral arbitrator will resolve Claims. The arbitrator will be either a lawyer with at least ten years experience or a retired or former judge, selected in accordance with the rules of the arbitration firm. The arbitrator will follow procedures and rules of the arbitration firm in effect on the date the arbitration is filed unless those procedures and rules are inconsistent with this Agreement, in which case this Agreement will prevail. Those procedures and rules may limit the discovery available to you or us. The arbitrator will take reasonable steps to protect customer account information and other confidential information if requested to do so by you or us. The arbitrator will apply applicable substantive law consistent with the FAA and applicable statutes of limitations, will honor claims of privilege recognized at law, and will have the power to award to a party any damages or other relief provided for under applicable law. You or we may choose to have a hearing and be represented by counsel. The arbitrator will make any award in writing and, if requested by you or us, will provide a brief statement of the reasons for the award. An award in arbitration shall determine the rights and obligations between the named parties only, and only in respect of the Claims in arbitration, and shall not have any bearing on the rights and obligations of any other person, or on the resolution of any other dispute.

**Who pays?** Whoever files the arbitration pays the initial filing fee. If we file, we pay; if you file, you pay, unless you get a fee waiver under the applicable rules of the arbitration firm. If you have paid the initial filing fee and you prevail, we will reimburse you for that fee. If there is a hearing, we will pay any fees of the arbitrator and arbitration firm for the first day of that hearing. All other fees will be allocated as provided by the rules of the arbitration firm and applicable law. However, we will advance or reimburse your fees if the arbitration firm or arbitrator determines there is good reason for requiring us to do so, or if you ask us and we determine there is good reason for doing so. Each party will bear the expense of that party's attorneys, experts, and witnesses, and other expenses, regardless of which party prevails, but a party may recover any or all expenses

14

from another party if the arbitrator, applying applicable law, so determines.

**Who can be a party?** Claims must be brought in the name of an individual person or entity and must proceed on an individual (non-class, non-representative) basis. The arbitrator will not award relief for or against anyone who is not a party. If you or we require arbitration of a Claim, neither you, we, nor any other person may pursue the Claim in arbitration as a class action, private attorney general action or other representative action, nor may such Claim be pursued on your or our behalf in any litigation in any court. Claims, including assigned Claims, of two or more persons may not be joined or consolidated in the same arbitration. However, applicants, coapplicants, authorized users on a single account and/or related accounts, or corporate affiliates are here considered as one person.

**When is an arbitration award final?** The arbitrator's award is final and binding on the parties unless a party appeals it in writing to the arbitration firm within fifteen days of notice of the award. The appeal must request a new arbitration before a panel of three neutral arbitrators designated by the same arbitration firm. The panel will consider all factual and legal issues anew, follow the same rules that apply to a proceeding using a single arbitrator, and make decisions based on the vote of the majority. Costs will be allocated in the same way they are allocated for arbitration before a single arbitrator. An award by a panel is final and binding on the parties after fifteen days has passed. A final and binding award is subject to judicial review and enforcement as provided by the FAA or other applicable law.

### Survival and Severability of Terms
This arbitration provision shall survive: (i) termination or changes in the Agreement, the account, or the relationship between you and us concerning the account; (ii) the bankruptcy of any party; and (iii) any transfer, sale or assignment of your account, or any amounts owed on your account, to any other person or entity. If any portion of this arbitration provision is deemed invalid or unenforceable, the entire arbitration provision shall not remain in force. No portion of this arbitration provision may be amended, severed or waived absent a written agreement between you and us.

### Governing Law and Enforcing our Rights
**Governing Law.** Federal law and the law of South Dakota, where we are located, govern the terms and enforcement of this Agreement.

15

**Enforcing this Agreement.** We will not lose our rights under this Agreement because we delay in enforcing them or fail to enforce them.

**Collection Costs.** To the extent permitted by law, you are liable to us for our legal costs if we refer collection of your account to a lawyer who is not our salaried employee. These costs may include reasonable attorneys' fees. They may also include costs and expenses of any legal action.

**Assignment.** We may assign any or all of our rights and obligations under this Agreement to a third party.

### For Further Information
Call us toll-free for further information. Call the toll-free Customer Service telephone number shown on the billing statement or on the back of your card. You can also call local or toll-free Directory Assistance to get our telephone number.

Ken Stork
President & CEO

Citibank (South Dakota), N.A.
P.O. Box 6000
Sioux Falls, SD 57117

© 2008 Citibank (South Dakota), N.A.

16

Citi Prod (Cox v. Hannah) 000079

COX,GLENN M**7099634570600*   SYS      9363   PRIN   8006

```
        FDR  ARCHIV      051714       0521   MAY 2014 ARCHIVED 00002 MEMOS
CM-819   9363/8006           CHRONICLE ARCHIVE SUMMARY              CITGO              -FE- 04/30/14    PAGE 34,904
                                                                                      RUN DATE 05/17 TIME 06:42
DATE        STAT OPID  TERM    CLERK  TYPE      TEXT
ACCOUNT # 7099634570600000    (CONT)
2011/04/05   ADD  CSA   EUTQ        18053     180-53 FORBMC PLAN TYPE    START DATE 00000000
2011/04/05   ADD  NM    AUTO        18054     180-54 FORBMC END DATE 00000000


        FDR  ARCHIV      021514       0524   FEBRUARY 2014 ARCHIVED 00004 MEMOS
CM-819   9363/8006           CHRONICLE ARCHIVE SUMMARY              CITGO              -FE- 01/31/14    PAGE 82,595
                                                                                      RUN DATE 02/15 TIME 08:10
DATE        STAT OPID  TERM    CLERK  TYPE      TEXT
ACCOUNT # 7099634570600000    (CONT)
2012/01/06   ADD  990   0999         972      0999990 ACCOUNT CHARGED OFF 894.33  DATE 12/01/06
2012/01/06   ADD  DA    ACS          16       NM-016 = Z PREV STATUS = E
2012/01/06   ADD  NM    AUTO         78902    NM-78902 OLD MONETARY REJECT '4'
2012/01/06   ADD  DA    ACS          18       NM-018 NEW INT SW = Z OLD INT SW =


        FDR  ARCHIV      111613       0536   NOVEMBER 2013 ARCHIVED 00004 MEMOS
CM-819   9363/8006           CHRONICLE ARCHIVE SUMMARY              CITGO              -FE- 10/31/13    PAGE 63,653
                                                                                      RUN DATE 11/16 TIME 12:31
DATE        STAT OPID  TERM    CLERK  TYPE      TEXT
ACCOUNT # 7099634570600000    (CONT)
2011/10/06   ADD  BC    002D         16       NM-016 = E PREV STATUS = E
2011/10/06   ADD  BC    002D         28       NM-028 NEW REASON CODE = 40 OLD REASON CODE = 40
2011/10/07   ADD  BC    002D         16       NM-016 = E PREV STATUS = E
2011/10/07   ADD  BC    002D         28       NM-028 NEW REASON CODE = 40 OLD REASON CODE = 40


        FDR  ARCHIV      101913       0545   OCTOBER 2013 ARCHIVED 00002 MEMOS

CM-819   9363/8006           CHRONICLE ARCHIVE SUMMARY              CITGO              -FE- 09/30/13    PAGE 37,739
                                                                                      RUN DATE 10/19 TIME 10:50
DATE        STAT OPID  TERM    CLERK  TYPE      TEXT
ACCOUNT # 7099634570600000    (CONT)
2011/09/05   ADD  BC    002D         28       NM-028 NEW REASON CODE = 40 OLD REASON CODE = 40
2011/09/06   ADD  BC    002D         28       NM-028 NEW REASON CODE = 40 OLD REASON CODE = 40
```

Citi Prod (Cox v. Hannah) 000080

FDR  ARCHIV     092113      0608  SEPTEMBER 2013 ARCHIVED 00003 MEMOS

```
CM-819   9363/8006       CHRONICLE ARCHIVE SUMMARY              CITGO               -FE- 08/31/13   PAGE 36,317
                                                                                    RUN DATE 09/21 TIME 12:27
DATE      STAT OPID TERM   CLERK TYPE      TEXT
ACCOUNT # 7099634570600000   (CONT)
2011/08/11  ADD  BC    OO2D        28       NM-028 NEW REASON CODE = 40 OLD REASON CODE = 90
2011/08/12  ADD  BC    OO2D        28       NM-028 NEW REASON CODE = 40 OLD REASON CODE = 40
2011/08/17  ADD  4Q4   MQ76        CMS      ANI: 7703613988
```

FDR  ARCHIV     081713      0524  AUGUST 2013 ARCHIVED 00001 MEMOS

```
CM-819   9363/8006       CHRONICLE ARCHIVE SUMMARY              CITGO               -FE- 07/31/13   PAGE
34,020
                                                                                    RUN DATE 08/17 TIME 09:26
DATE      STAT OPID TERM   CLERK TYPE      TEXT
ACCOUNT # 7099634570600000   (CONT)
2011/07/11  ADD  GMS   MQ76        CMS      CH RQSTD CHNG FOR   BUSINESS PHONE IND. FROM Y TO N.
```

FDR  ARCHIV     072013      0532  JULY 2013 ARCHIVED 00001 MEMOS

```
CM-819   9363/8006       CHRONICLE ARCHIVE SUMMARY              CITGO               -FE- 06/30/13   PAGE 36,193
                                                                                    RUN DATE 07/20 TIME 09:40
DATE      STAT OPID TERM   CLERK TYPE      TEXT
ACCOUNT # 7099634570600000   (CONT)
2011/06/03  ADD  NM    AUTO        39       FIXED PAYMENT AMOUNT SET TO 0.00  WAS 0.00
```

FDR  ARCHIV     061513      0539  JUNE 2013 ARCHIVED 00002 MEMOS

```
CM-819   9363/8006       CHRONICLE ARCHIVE SUMMARY              CITGO               -FE- 05/31/13   PAGE 34,049
                                                                                    RUN DATE 06/15 TIME 08:07
DATE      STAT OPID TERM   CLERK TYPE      TEXT
ACCOUNT # 7099634570600000   (CONT)
2010/05/06  ADD  NM    AUTO      18053      180-53 FORBNC PLAN TYPE B2 START DATE 20100506
2010/05/06  ADD  NM    AUTO      18054      180-54 FORBNC END DATE 99999999
```

Citi Prod (Cox v. Hannah) 000081

FDR  ARCHIV  051813  0506  MAY 2013 ARCHIVED 00004 MEMOS

CM-819  9363/8006  CHRONICLE ARCHIVE SUMMARY  CITGO  -FE- 04/30/13  PAGE 32,921
RUN DATE 05/18 TIME 06:00

| DATE | STAT | OPID | TERM | CLERK | TYPE | TEXT |
|------|------|------|------|-------|------|------|
| ACCOUNT # 7099634570600000 | | | (CONT) | | | |
| 2011/04/05 | ADD | CSA | EUTQ | | 28 | NM-G28 NEW REASON CODE = 90 OLD REASON CODE = 37 |
| 2011/04/05 | ADD | CSA | EUTQ | | 39 | FIXED PAYMENT AMOUNT SET TO 0.00  WAS 30.00 |
| 2011/04/05 | ADD | CSA | MQ76 | | CMS | PROGRM DEFUALTED PER TWO MISSD PAYMENTS HENCE ROUTED TO MAINSTREAM |
| 2011/04/14 | ADD | IPY | MQ76 | | CMS | CH ROSTD CHNG FOR  HOME PHONE IND. FROM Y TO N. |

FDR  ARCHIV  042013  0520  APRIL 2013 ARCHIVED 00003 MEMOS

CM-819  9363/8006  CHRONICLE ARCHIVE SUMMARY  CITGO  -FE- 03/31/13  PAGE 39,514
RUN DATE 04/20 TIME 06:59

| DATE | STAT | OPID | TERM | CLERK | TYPE | TEXT |
|------|------|------|------|-------|------|------|
| ACCOUNT # 7099634570600000 | | | (CONT) | | | |
| 2010/03/07 | ADD | FDR | PULS | | 18053 | 180-53 FORBNC PLAN TYPE  START DATE 00000000 |
| 2010/03/07 | ADD | NM | AUTO | | 18054 | 180-54 FORBNC END DATE 00000000 |
| 2011/03/14 | ADD | GXH | MQ76 | | CMS | PAYDOWN FOLLOW-UP ONE MISS PAYMENT. |

FDR  ARCHIV  031613  0508  MARCH 2013 ARCHIVED 00001 MEMOS

CM-819  9363/8006  CHRONICLE ARCHIVE SUMMARY  CITGO  -FE- 02/28/13  PAGE 35,841
RUN DATE 03/16 TIME 05:47

| DATE | STAT | OPID | TERM | CLERK | TYPE | TEXT |
|------|------|------|------|-------|------|------|
| ACCOUNT # 7099634570600000 | | | (CONT) | | | |
| 2011/02/22 | ADD | T | SYSC | | 168 | CHANGE  CBST: CTP2/CT%2 DATE: 02/22/11 RSN: NM168  B/A: B |

FDR  ARCHIV  121512  0541  DECEMBER 2012 ARCHIVED 00002 MEMOS

CM-819  9363/8006  CHRONICLE ARCHIVE SUMMARY  CITGO  -FE- 11/30/12  PAGE 51,064
RUN DATE 12/15 TIME 11:19

| DATE | STAT | OPID | TERM | CLERK | TYPE | TEXT |
|------|------|------|------|-------|------|------|
| ACCOUNT # 7099634570600000 | | | (CONT) | | | |
| 2009/11/10 | ADD | | **** | | SRS256 | 110609  NSF CHECK |
| 2009/11/13 | ADD | | **** | | SRS256 | 1110609 RETURN CHECK B -NSF |

FDR   ARCHIV      102012      0533   OCTOBER 2012 ARCHIVED 00001 MEMOS

```
CM-819   9363/8006        CHRONICLE ARCHIVE SUMMARY              CITGO              -FE- 09/30/12    PAGE 46,731
                                                                                    RUN DATE 10/20 TIME 08:53
  DATE          STAT  OPID  TERM   CLERK  TYPE     TEXT
ACCOUNT # 7099634570600000      (CONT)
2010/09/08  ADD   BC    OO2D            132     NM-132  CRED BUR FLAG 2 OLD =        NEW =
```

FDR   ARCHIV      091512      0610   SEPTEMBER 2012 ARCHIVED 00001 MEMOS

```
CM-819   9363/8006        CHRONICLE ARCHIVE SUMMARY              CITGO              -FE- 08/31/12    PAGE 44,320
                                                                                    RUN DATE 09/15 TIME 10:33
  DATE          STAT  OPID  TERM   CLERK  TYPE     TEXT
ACCOUNT # 7099634570600000      (CONT)
2010/08/27  ADD   BC    OO2D            132     NM-132  CRED BUR FLAG 2 OLD =        NEW =
```

FDR   ARCHIV      061612      0541   JUNE 2012 ARCHIVED 00005 MEMOS

```
CM-819   9363/8006        CHRONICLE ARCHIVE SUMMARY              CITGO              -FE- 05/31/12    PAGE 40,822
                                                                                    RUN DATE 06/16 TIME 11:13
  DATE          STAT  OPID  TERM   CLERK  TYPE     TEXT
ACCOUNT # 7099634570600000      (CONT)
2010/05/06  ADD   GXH   EKF8            28      NM-028 NEW REASON CODE = 37 OLD REASON CODE = 90
2010/05/06  ADD   GXH   EKF8            39      FIXED PAYMENT AMOUNT SET TO 30.00  WAS 0.00
2010/05/06  ADD   GXH   EKF8            184     NM-184 = AM30.00 AM20.00, PREV AM30.45 AM20.00
2010/05/06  ADD   GXH   MQ76            CMS     PAYDOWN REINSTATED 0%, $30. NPO< MPD AND NM CL1 UPDATED $30. HENCE ROUTED TO HOST
                                                QUEUE.
2010/05/06  ADD   GXH   EKF8            22143    1458 EKF8GXH TC283 BTID DM AM0000000002175 AM20000000000000C
```

FDR   ARCHIV      051912      0528   MAY 2012 ARCHIVED 00002 MEMOS

```
CM-819   9363/8006        CHRONICLE ARCHIVE SUMMARY              CITGO              -FE- 04/30/12    PAGE 40,072
                                                                                    RUN DATE 05/19 TIME 08:51
  DATE          STAT  OPID  TERM   CLERK  TYPE     TEXT
ACCOUNT # 7099634570600000      (CONT)
2010/04/05  ADD   72T   MQ76            CMS     F/C ADJ FOR 0%APR, AS PER UPDATE UNABLE TO REINSTATE PYD, ALREADY MAIL SENT, HOLD
                                                FOR REPLY
2010/04/05  ADD   72T   AAEO            22143    2003 AAEO72T TC283 BTID DM AM0000000002260 AM20000000000000C
```

Citi Prod (Cox v. Hannah) 000083

```
FDR  ARCHIV     042112      0615  APRIL 2012 ARCHIVED 00023 MEMOS
CM-819   9363/8006         CHRONICLE ARCHIVE SUMMARY              CITGO                    -FE- 03/31/12    PAGE 53,195
                                                                                          RUN DATE 04/21 TIME 10:51
DATE         STAT  OPID  TERM    CLERK  TYPE    TEXT
ACCOUNT # 7099634570600000     (CONT)
2003/03/05   ADD   CV    *       CV     PERM    SCRATCH PAD: CD= 01  TTC DECIDED TO DO SPY 100.00 03/07 AND ALREADY DID SSENT OUT
                                               100.00 02/28
2010/03/05   ADD   FDR   RULS           928     GB60PROCESSED BROKEN TTAG
2010/03/05   ADD   **    FDR            197     3760 LETTER SENT                            012LB2
2010/03/07   ADD   FDR   RULS           16      NM-016 = E PREV STATUS = E
2010/03/07   ADD   FDR   RULS           28      NM-028 NEW REASON CODE = 90 OLD REASON CODE = 37
2010/03/07   ADD   FDR   RULS           39      FIXED PAYMENT AMOUNT SET TO 0.00  WAS 22.00
2010/03/18   ADD                        CMS     DISREGARD THE PREVIOUS MEMO REGARDING AO PAPERLESS ENROLLMENT OFFER, THIS ACCOUNT
                                               WILL NOT BE SELECTED DUE TO STATUS OF ACCOUNT
2010/03/23   ADD   EG4   MQ76           CMS     O/R PBPHONE FEE.
2010/03/23   ADD   EG4   MQ76           CMS     O/R PBPHONE FEE.
2010/03/23   ADD   EG4   MQ76           CMS     PMT REF# 10082085705 EDITS: PMT AMT CHGD FROM '30.00' TO '60.00'.
2010/03/23   ADD   EG4   MQ76           CMS     ANI: 7709734289
2010/03/23   ADD   EG4   MQ76           CMS     O/R PBPHONE FEE.
2010/03/23   ADD   EG4   MQ76           CMS     O/R PBPHONE FEE.
2010/03/23   ADD   EG4   MQ76           CMS     O/P PBPHONE FEE.
2010/03/23   ADD   EG4   MQ76           CMS     O/R PBPHONE FEE.
2010/03/23   ADD   EG4   MQ76           CMS     O/R PBPHONE FEE.
2010/03/23   ADD   EG4   MQ76           CMS     O/R PBPHONE FEE.
2010/03/23   ADD   EG4   MQ76           CMS     O/R PBPHONE FEE.
2010/03/23   ADD   EG4   MQ76           CMS     PMT REF# 10082085705 EDITS: PMT AMT CHGD FROM '60.00' TO '30.00'. PMT REF# 100910
                                               85705 EDITS: PMT AMT CHGD FROM '60.00' TO '30.00'. PMT REF# 10121085705 EDITS: PM
                                               T AMT CHGD FROM '60.00' TO '30.00'. PMT REF# 10152085705 EDITS: PMT AMT CHGD FROM
                                               '60.00' TO '30.00'. PMT REF# 10182085705 EDITS: PMT AMT CHGD FROM '60.00' TO '30
                                               .00'. PMT REF# 10214085705 EDITS: PMT AMT CHGD FROM '60.00' TO '30.00'. PMT REF#
                                               10244085705 EDITS: PMT AMT CHGD FROM '60.00' TO '30.00'. PMT REF# 10274085705 EDI
                                               TS: PMT AMT CHGD FROM '60.00' TO '30.00'. PMT REF# 10305085705 EDITS: PMT AMT CHG
                                               D FROM '60.00' TO '30.00'. PMT REF# 10335085705 EDITS: PMT AMT CHGD FROM '60.00'
                                               TO '30.00'. PMT REF# 11003085705 EDITS: PMT AMT CHGD FROM '60.00' TO '30.00'. PMT
                                               REF# 11032085705 EDITS: PMT AMT CHGD FROM '60.00' TO '30.00'.
2010/03/23   ADD   EG4   MQ76           CMS     O/R PBPHONE FEE.
2010/03/23   ADD   EG4   MQ76           CMS     O/R PBPHONE FEE.
2010/03/23   ADD   EG4   MQ76           CMS     O/R PBPHONE FEE.
2010/03/24   ADD   GX8   MQ76           CMS     AS PER NEW UPDATE NO NEED TO RESET PAYDOWN MANULLY. HENCE MAIL FWD TO UM.
```

FDR  ARCHIV    031712    0619  MARCH 2012 ARCHIVED 00003 MEMOS

CM-819   9363/8006      CHRONICLE ARCHIVE SUMMARY           CITGO                    -FE- 02/29/12    PAGE
99,422
                                                                                 RUN DATE 03/17 TIME 10:39
  DATE       STAT  OPID  TERM   CLERK  TYPE     TEXT
  ACCOUNT # 7099634570600000     (CONT)
  2009/02/20  ADD   FDR   RULS         18053    180-53 FORBNC PLAN TYPE B2 START DATE 20090219
  2009/02/20  ADD   NM    AUTO         18054    180-54 FORBNC END DATE 99999999
  2010/02/27  ADD                       CMS     ENROLL IN PAPERLESS STMTS OFFER - STMT CREDIT OF $5 - APPLIED AFTER 90 DAYS OF CO
                                                NTINUOUS PAPERLESS ENROLLMENT

FDR  ARCHIV    021812    0548  FEBRUARY 2012 ARCHIVED 00003 MEMOS

CM-819   9363/8006      CHRONICLE ARCHIVE SUMMARY           CITGO                    -FE- 01/31/12    PAGE 62,944
                                                                                 RUN DATE 02/18 TIME 09:40
  DATE       STAT  OPID  TERM   CLERK  TYPE     TEXT
  ACCOUNT # 7099634570600000     (CONT)
  2009/01/04  ADD   FDR   RULS         18053    180-53 FORBNC PLAN TYPE     START DATE 00000000
  2009/01/04  ADD   NM    AUTO         18054    180-54 FORBNC END DATE 00000000
  2010/01/07  ADD   72J   MQ76          CMS     QUEUE REVIEW COMPLETED; NO ISSUES.

FDR  ARCHIV    012112    0527  JANUARY 2012 ARCHIVED 00001 MEMOS

CM-819   9363/8006      CHRONICLE ARCHIVE SUMMARY           CITGO                    -FE- 12/31/11    PAGE 55,176
                                                                                 RUN DATE 01/21 TIME 10:44
  DATE       STAT  OPID  TERM   CLERK  TYPE     TEXT
  ACCOUNT # 7099634570600000     (CONT)
  2009/12/02  ADD   ##    FDR          197      3761 LETTER SENT                O12LB2

FDR  ARCHIV    121711    0548  DECEMBER 2011 ARCHIVED 00001 MEMOS

CM-819   9363/8006      CHRONICLE ARCHIVE SUMMARY           CITGO                    -FE- 11/30/11    PAGE
59,858
                                                                                 RUN DATE 12/17 TIME 12:35
  DATE       STAT  OPID  TERM   CLERK  TYPE     TEXT
  ACCOUNT # 7099634570600000     (CONT)
  2009/11/10  ADD                       CMS     FOREBEARANCE CLEANUP: CPICII SET TO NOINONIN - EVY97

Citi Prod (Cox v. Hannah) 000085

FDR  ARCHIV   111911    0609  NOVEMBER 2011 ARCHIVED 00001 MEMOS

CM-819   9363/8006       CHRONICLE ARCHIVE SUMMARY              CITGO              -FE- 10/31/11    PAGE 37,017
                                                                                   RUN DATE 11/19 TIME 13:58
  DATE      STAT  OPID  TERM   CLERK  TYPE    TEXT
ACCOUNT # 7099634570600000   (CONT)
2009/10/19   ADD   PR   ECOA        79168    NM 791-68  CR BUR PRV FLG OLD FIELD = * NEW FIELD = 1

      FDR  ARCHIV   082011    0525  AUGUST 2011 ARCHIVED 00002 MEMOS
CM-819   9363/8006       CHRONICLE ARCHIVE SUMMARY              CITGO              -FE- 07/31/11    PAGE 67,265
                                                                                   RUN DATE 08/20 TIME 11:23
  DATE      STAT  OPID  TERM   CLERK  TYPE    TEXT
ACCOUNT # 7099634570600000   (CONT)
2008/07/29   ADD   FDR  RULS        18053    180-53 FORBNC PLAN TYPE C3 START DATE 20080728
2008/07/29   ADD   NM   AUTO        18054    180-54 FORBNC END DATE 99999999

      FDR  ARCHIV   041611    0508  APRIL 2011 ARCHIVED 00001 MEMOS
CM-819   9363/8006       CHRONICLE ARCHIVE SUMMARY              CITGO              -FE- 03/31/11    PAGE 92,045
                                                                                   RUN DATE 04/16 TIME 08:02
  DATE      STAT  OPID  TERM   CLERK  TYPE    TEXT
ACCOUNT # 7099634570600000   (CONT)
2009/03/02   ADD   3KO  MQ76        CMS      ANI: 7709734289

      FDR  ARCHIV   031911    0518  MARCH 2011 ARCHIVED 00006 MEMOS

CM-819   9363/8006       CHRONICLE ARCHIVE SUMMARY              CITGO              -FE- 02/28/11    PAGE 88,277
                                                                                   RUN DATE 03/19 TIME 06:48
  DATE      STAT  OPID  TERM   CLERK  TYPE    TEXT
ACCOUNT # 7099634570600000   (CONT)
2009/02/19   ADD   FDR  RULS        928      GA60PROCESSED ADD TTAG
2009/02/19   ADD   ##   FDR         197       8833 LETTER SENT                    O12LB2
2009/02/20   ADD   FDR  RULS        16       NM-016 = E PREV STATUS = E
2009/02/20   ADD   FDR  RULS        28       NM-028 NEW REASON CODE = 37 OLD REASON CODE = 90
2009/02/20   ADD   FDR  RULS        39       FIXED PAYMENT AMOUNT SET TO 22.00  WAS 0.00
2009/02/20   ADD   FDR  RULS        184      NM-184 = AM48.00 AM20.00, PREV AM108.79 AM20.00

Citi Prod (Cox v. Hannah) 000086

```
       FDR   ARCHIV     021911      0523   FEBRUARY 2011 ARCHIVED 00003 MEMOS

CM-819    9363/8006         CHRONICLE ARCHIVE SUMMARY              CITGO                        -FE- 01/31/11    PAGE 53,355
                                                                                               RUN DATE 02/19 TIME 09:11
  DATE        STAT  OPID  TERM   CLERK  TYPE     TEXT
  ACCOUNT # 7099634570600000     (CONT)
  2009/01/02   ADD   FDR  RULS          928      CCD1PROCESSED COMPLETED TTAG
  2009/01/04   ADD   FDR  RULS          16       NM-016 = E PREV STATUS = E
  2009/01/04   ADD   FDR  RULS          28       NM-028 NEW REASON CODE = 90 OLD REASON CODE = 38


       FDR   ARCHIV     082110      0517   AUGUST 2010 ARCHIVED 00010 MEMOS

CM-819    9363/8006         CHRONICLE ARCHIVE SUMMARY              CITGO                        -FE- 07/31/10    PAGE 81,358
                                                                                               RUN DATE 08/21 TIME 11:51
  DATE        STAT  OPID  TERM   CLERK  TYPE     TEXT
  ACCOUNT # 7099634570600000     (CONT)
  2008/07/28   ADD   EVM  MQ76          CMS      STATUS/ REASON CODE IS CHANGED FROM 'NORMAL' TO 'CLOSED-CLD BY CUST'.
  2008/07/28   ADD   EVM  MQ76          16       NM-016 = C PREV STATUS =
  2008/07/28   ADD   EVM  MQ76          28       NM-028 NEW REASON CODE = 97 OLD REASON CODE = 00
  2008/07/28   ADD   EVM  MQ76          18000    NM-18000 CLEAR DELQ RETAIN HISTORY
  2008/07/29   ADD   FDR  RULS          16       NM-016 = E PREV STATUS = C
  2008/07/29   ADD   FDR  RULS          28       NM-028 NEW REASON CODE = 38 OLD REASON CODE = 97
  2008/07/29   ADD   FDR  RULS          39       FIXED PAYMENT AMOUNT SET TO 0.00  WAS 0.00
  2008/07/29   ADD   FDR  RULS          184      NM-184 = AM92.23 AM20.00, PREV AM164.63 AM20.00
  2008/07/28   ADD   FDR  RULS          928      CAD1PROCESSED ADD TTAG
  2008/07/28   ADD   ##   FDR           197      8813 LETTER SENT                          O12LB2


       FDR   ARCHIV     071710      0513   JULY 2010 ARCHIVED 00003 MEMOS

CM-819    9363/8006         CHRONICLE ARCHIVE SUMMARY              CITGO                        -FE- 06/30/10    PAGE 75,372
                                                                                               RUN DATE 07/17 TIME 08:43
  DATE        STAT  OPID  TERM   CLERK  TYPE     TEXT
  ACCOUNT # 7099634570600000     (CONT)
  2008/06/02   ADD   ##   FDR           197      6103 LETTER SENT                          O12LB2
  2008/06/25   ADD                      CMS      OFL CIT - JUNE 2008 - PRICING STRATEGY UPDATED
  2008/06/25   ADD   AA   IRVI          168      CHANGE  CPST: CTPB/CTP2 DATE: 06/26/08 RSN: NM168    B/A: B
```

Citi Prod (Cox v. Hannah) 000087

FDR   ARCHIV      061910      0542   JUNE 2010 ARCHIVED 00001 MEMOS

CM-819    9363/8006        CHRONICLE ARCHIVE SUMMARY                    CITGO                         -FE- 05/31/10    PAGE 32,850
                                                                                                      RUN DATE 06/19 TIME 10:11
DATE      STAT  OPID  TERM   CLERK  TYPE    TEXT
ACCOUNT # 7099634570600000     (CONT)
2008/05/02  ADD             CMS     OPL CIT - JUNE 2008 - STATEMENT INSERT - SEG 1  - CTCIT508

      FDR   ARCHIV      051510      0546   MAY 2010 ARCHIVED 00001 MEMOS
   CM-819   9363/8006        CHRONICLE ARCHIVE SUMMARY                 CITGO                         -FE- 04/30/10     PAGE
55,493
                                                                                                      RUN DATE 05/15 TIME 09:20
DATE      STAT  OPID  TERM   CLERK  TYPE    TEXT
ACCOUNT # 7099634570600000     (CONT)
2008/04/29  ADD             CMS     OPL CIT - JUNE 2008 - STATEMENT INSERT - SEG 1


      FDR   ARCHIV      041710      0540   APRIL 2010 ARCHIVED 00003 MEMOS

CM-819    9363/8006        CHRONICLE ARCHIVE SUMMARY                    CITGO                         -FE- 03/31/10    PAGE 61,765
                                                                                                      RUN DATE 04/17 TIME 11:37
DATE      STAT  OPID  TERM   CLERK  TYPE    TEXT
ACCOUNT # 7099634570600000     (CONT)
2008/03/03  ADD   CA    ACS    9      NM-009 1375.00  ; OLD LINE = 1275.00
2009/03/02  ADD   3RO   MQ76   COLL   CCI/VAIG/CURRENT ON A PYDWN REC' LTR WNTD CONFRMD WS LEGIT/ADV WL MT CB AND RESET
                                      EVRY 12 MO
2009/03/02  ADD   3RO   MQ76   COLL   CH ROSTD CHNG FOR E-MAIL ADDRESS AND SOLICITATION FROM ,  TO GCOX@COMPTROUB.COM,
                                      SERVICING & MARKETING FROM PARTNER.

Citi Prod (Cox v. Hannah) 000088

**FDR   ARCHIV      032010      0523   MARCH 2010 ARCHIVED 00007 MEMOS**

```
CM-819   9363/8006        CHRONICLE ARCHIVE SUMMARY              CITGO                    -FE- 02/28/10    PAGE 45,122
                                                                                          RUN DATE 03/20 TIME 10:07
DATE         STAT  OPID  TERM    CLERK  TYPE     TEXT
ACCOUNT # 7099634570600000      (CONT)
2008/02/03   ADD   ##    FDR            197      6103 LETTER SENT                 O12LB2
2009/02/19   ADD   U5G   MQ76           COLL     S/W CM RFD 44, DISAB FIXED INCOME SOF SS INCOME/ DISABILITY INCOME CM CAN  PAY $3
                                                 0.00 PRGM PAYDOWN RSN FOR PRGM TO ENABLE CM PAY OFF BAL ON ACCT APR  AGREED TO 0.
```
## 00% BAL @ ARG $1297.60 #MNTHS ON ARG 44 #PMTS 12 CHK#(S) 90219 09-9021920 0219200
```
                                                 9 03052009 04062009 05062009 06052009 07062009 08062009  09042009 10062009 110620
                                                 09 12042009 01062010 MNTHLY PMTS $30.00 EDUC TDUE  AND OCL MST BE RESLVD AT END O
                                                 F ARG PMTS WL INCRS AT END OF ARG Y ARG COUL D CONTINUE FOR UP TO 60 MONTHS Y ED
                                                 ACC CLSE Y ED INS CNCL Y SOF END OF AR
2009/02/19   ADD   U5G   MQ76           COLL     O/R PBPHONE FEE.
2009/02/19   ADD   U5G   MQ76           COLL     O/R PBPHONE FEE.
2009/02/19   ADD   U5G   MQ76           COLL     VV..CM ANI-HP..EDU AND ADV CM ON SOA..CM THOUGHT PMT PLAN-#PMTS 1 CHK#(S) 9021909
                                                 02192009 MNTHLY PMTS $30.00
2009/02/19   ADD   U5G   MQ76           COLL     G CM WILL PAY OFF BAL ON ACCT VAIG Y PROMO:N NDS ON NONE SEV:CM HAS BEEN I N THIS
                                                 SITUATION FOR OVER 6MNTHS DUR:SOCIAL SECURITY INCOME/DISABILITY BEN EFITS PASOF:
                                                 SSN AND DISABILITY BENEFITS
2009/02/20   ADD   73L   MQ76           COLL     REMOVED FROM UTILITIES PER CPM W/PAYDOWNS ARE HANDLED IN PYCALLNOW --- 02/20/09.
```

**FDR   ARCHIV      011610      0550   JANUARY 2010 ARCHIVED 00001 MEMOS**

```
CM-819   9363/8006        CHRONICLE ARCHIVE SUMMARY              CITGO                    -FE- 12/31/09    PAGE 35,185
                                                                                          RUN DATE 01/16 TIME 12:11
DATE         STAT  OPID  TERM    CLERK  TYPE     TEXT
ACCOUNT # 7099634570600000      (CONT)
2007/12/04   ADD   ##    FDR            197      6103 LETTER SENT                 O12LB2
```

**FDR   ARCHIV      112109      0612   NOVEMBER 2009 ARCHIVED 00001 MEMOS**

```
CM-819   9363/8006        CHRONICLE ARCHIVE SUMMARY              CITGO                    -FE- 10/31/09    PAGE 40,413
                                                                                          RUN DATE 11/21 TIME 12:57
DATE         STAT  OPID  TERM    CLERK  TYPE     TEXT
ACCOUNT # 7099634570600000      (CONT)
2007/10/17   ADD   3BH   MQ76           CMS      ANI: 7703613988
```

**FDR   ARCHIV      081509      0555   AUGUST 2009 ARCHIVED 00012 MEMOS**

Citi Prod (Cox v. Hannah) 000089

Citi Prod (Cox v. Hannah) 000090

```
CM-819   9363/8006      CHRONICLE ARCHIVE SUMMARY              CITGO              -FE- 07/31/09   PAGE 82,245
                                                                                  RUN DATE 08/15 TIME 10:23
DATE        STAT OPID TERM   CLERK TYPE    TEXT
ACCOUNT # 7099634570600000       (CONT)
2008/07/16  ADD  GRC  MQ76         COLL    WAITING ON CHECKS...STGY:FTF $50.00 CHK VIA MAIL PMTSNT 7/16/08 EXP RCV DT:7/23/0
                                           8
2008/07/28  ADD  EVM  MQ76         COLL    O/R PBPHONE FEE.
2008/07/28  ADD  EVM  MQ76         COLL    CHNGD 1 CYCLES AMT DUE FRM 74.72 TO 30.00
2008/07/28  ADD  EVM  MQ76         COLL    STGY OTH, ARG UPP, **CAD11300**, SC 44, APR 13.0%, 6 @ $30.00 VIA CHECKDRAFT, PAY
                                           MENT DATE(S) 7/28/08, 8/28/08, 9/26/08, 10/29/08, 11/26/08, 12/26/08;71002202332,
                                           71002202334, 71002202335, 71002202336, 71002202337, 71002202338, RFO:STP
2008/07/28  ADD  EVM  MQ76         COLL    O/R PBPHONE FEE.
2008/07/28  ADD  EVM  MQ76         COLL    #PMTS 6 CHK#(S) 90728-90733 07282008 08282008 09262008  10292008 11262008 1226200
                                           8 MNTHLY PMTS $30.00
2008/07/28  ADD  EVM  MQ76         COLL    O/R PBPHONE FEE.
2008/07/28  ADD  EVM  MQ76         COLL    O/R PBPHONE FEE.
2008/07/28  ADD  EVM  MQ76         COLL    CHNGD 2 CYCLES AMT DUE FRM 70.60 TO 30.00
2008/07/28  ADD  EVM  MQ76         COLL    O/R PBPHONE FEE.
2008/07/28  ADD  EVM  MQ76         COLL    O/R PBPHONE FEE.
2007/07/02  ADD  ##   FDR          197      6103 LETTER SENT                          O12LB2

    FDR  ARCHIV     071809      0521  JULY 2009 ARCHIVED 00003 MEMOS

CM-819   9363/8006      CHRONICLE ARCHIVE SUMMARY              CITGO              -FE- 06/30/09   PAGE 57,799
                                                                                  RUN DATE 07/18 TIME 09:18
DATE        STAT OPID TERM   CLERK TYPE    TEXT
ACCOUNT # 7099634570360000       (CONT)
2007/06/01  ADD  CV   *      CV    CONV    BUREAU REPORT: ACCT-STAT= 11, BALANCE        $0    PMT-RATING= , SPEC-COMMENT= ,
                                           COMPL-COND-CD=  , ECOA-CD=1, CNS-CD   , ECOA-CD-SP= , CNS-CD-SP=   NOT DELINQUEN
                                           T, NOT CLOSED

    FDR  ARCHIV     062009      0530  JUNE 2009 ARCHIVED 00005 MEMOS
```

```
CM-819   9363/8006      CHRONICLE ARCHIVE SUMMARY           CITGO            -FE- 05/31/09    PAGE 17,102
                                                                             RUN DATE 06/20 TIME 09:20
DATE        STAT OPID TERM   CLERK TYPE      TEXT
ACCOUNT # 7099634570600000  (CONT)
2007/05/02  ADD  CV   *      CV    CONV      BUREAU REPORT: ACCT-STAT= 11, BALANCE    $1,379  PMT-RATING=  , SPEC-COMMENT=AP,
                                             COMPL-COND-CD=  , ECOA-CD=1, CNS-CD   , ECOA-CD-SP= , CNS-CD-SP=   NOT DELINQUEN
                                             T, CLOSED ON 2007-05-02
2007/05/21  ADD  CV   *      CV    CONV      ACCOUNT ACCESS LOG  OPERATOR=CACS   , ACCESS TYPE=CC, TIME-STAMP=2007-05-21-00.04
                                             .00.000000, COUNT=00001
2007/05/20  ADD  CV   *      CV    CONV      ACCOUNT LETTER LOG  LETTER=4640, LETTER TYPE=S, LETTER WORK DATE=2007-05-20, CR-A
                                             CT-TYPE=40, RAW-AGE-LTR-GEN=00
2007/05/20  ADD  CV   *      CV    CONV      ACCOUNT LETTER LOG  LETTER=8916, LETTER TYPE=I, LETTER WORK DATE=2007-05-20, CR-A
                                             CT-TYPE=89, RAW-AGE-LTR-GEN=00
2007/05/03  ADD  CV   *      CV    CONV      ACCOUNT LETTER LOG  LETTER=0240, LETTER TYPE=S, LETTER WORK DATE=2007-05-03, CR-A
                                             CT-TYPE=00, RAW-AGE-LTR-GEN=01
```

### FDR  ARCHIV    051609    0519  MAY 2009 ARCHIVED 00002 MEMOS

```
CM-819   9363/8006      CHRONICLE ARCHIVE SUMMARY           CITGO            -FE- 04/30/09    PAGE 23,593
                                                                             RUN DATE 05/16 TIME 08:51
DATE        STAT OPID TERM   CLERK TYPE      TEXT
ACCOUNT # 7099634570600000  (CONT)
2007/04/23  ADD  CV   *      CV    CMS       DECLINED AUTH:  CARD  00701 AT 16.16.00    $1.00   PROD-CD= 01 PEND-CD=     DISP-
                                             CD=   006 MERCHANT# 30321138    TRAN-ID=
2007/04/02  ADD  CV   *      CV    CONV      BUREAU REPORT: ACCT-STAT= 11, BALANCE    $1,241   PMT-RATING=  , SPEC-COMMENT=  ,
                                             COMPL-COND-CD=  , ECOA-CD=1, CNS-CD   , ECOA-CD-SP= , CNS-CD-SP=   NOT DELINQUEN
                                             T, NOT CLOSED
```

### FDR  ARCHIV    041809    0512  APRIL 2009 ARCHIVED 00002 MEMOS

```
CM-819   9363/8006      CHRONICLE ARCHIVE SUMMARY           CITGO            -FE- 03/31/09    PAGE 17,366
                                                                             RUN DATE 04/18 TIME 06:44
DATE        STAT OPID TERM   CLERK TYPE      TEXT
ACCOUNT # 7099634570600000  (CONT)
2007/03/02  ADD  CV   *      CV    CONV      BUREAU REPORT: ACCT-STAT= 11, BALANCE    $1,109  PMT-RATING=  , SPEC-COMMENT=  ,
                                             COMPL-COND-CD=  , ECOA-CD=1, CNS-CD   , ECOA-CD-SP= , CNS-CD-SP=   NOT DELINQUEN
                                             T, NOT CLOSED
2007/03/31  ADD  CV   *      CV    CONV      ACCOUNT LETTER LOG  LETTER=8911, LETTER TYPE=I, LETTER WORK DATE=2007-03-31, CR-A
                                             CT-TYPE=89, RAW-AGE-LTR-GEN=00
```

### FDR  ARCHIV    032109    0509  MARCH 2009 ARCHIVED 00007 MEMOS

Citi Prod (Cox v. Hannah) 000091

```
  CM-819   9363/8006      CHRONICLE ARCHIVE SUMMARY           CITGO                    -FE- 02/28/09    PAGE
21,028
                                                                                   RUN DATE 03/21 TIME 06:26
  DATE      STAT OPID  TERM   CLERK  TYPE    TEXT
  ACCOUNT # 7099634570600000      (CONT)
  2007/02/05   ADD   CV    *     CV     CONV    SCRATCH PAD: CD= 06  SPD PY RQ: CE 00000003041  02/04/2007     $114.26
  2007/02/01   ADD   CV    *     CV     CONV    BUREAU REPORT: ACCT-STAT= 11, BALANCE    $1,167   PMT-RATING= , SPEC-COMMENT=AP,
                                                COMPL-COND-CD=  , ECOA-CD=1, CNS-CD   , ECOA-CD-SP= , CNS-CD-SP=  NOT DELINQUEN
                                                T, CLOSED ON 2007-02-01
  2007/02/05   ADD   CV    *     CV     CONV    ACCOUNT LETTER LOG  LETTER=8916, LETTER TYPE=I, LETTER WORK DATE=2007-02-05, CR-A
                                                CT-TYPE=89, RAW-AGE-LTR-GEN=00
  2007/02/02   ADD   CV    *     CV     CONV    ACCOUNT LETTER LOG  LETTER=0240, LETTER TYPE=S, LETTER WORK DATE=2007-02-02, CR-A
                                                CT-TYPE=00, RAW-AGE-LTR-GEN=01
  2007/02/02   ADD   CV    *     CV     CONV    ACCOUNT LETTER LOG  LETTER=8889, LETTER TYPE=I, LETTER WORK DATE=2007-02-02, CR-A
                                                CT-TYPE=89, RAW-AGE-LTR-GEN=01
  2007/02/01   ADD   CV    *     CV     CONV    ACCOUNT LETTER LOG  LETTER=8911, LETTER TYPE=I, LETTER WORK DATE=2007-02-01, CR-A
                                                CT-TYPE=89, RAW-AGE-LTR-GEN=01
  2008/02/21   ADD   BA6   MQ76         COLL    O/R PBPHONE FEE.
```

**FDR  ARCHIV   022109   0510  FEBRUARY 2009 ARCHIVED 00001 MEMOS**

```
  CM-819   9363/8006      CHRONICLE ARCHIVE SUMMARY           CITGO                    -FE- 01/31/09    PAGE 20,676
                                                                                   RUN DATE 02/21 TIME 06:24
  DATE      STAT OPID  TERM   CLERK  TYPE    TEXT
  ACCOUNT # 7099634570600000      (CONT)
  2007/01/03   ADD   CV    *     CV     CONV    BUREAU REPORT: ACCT-STAT= 11, BALANCE    $1,109   PMT-RATING= , SPEC-COMMENT= ,
                                                COMPL-COND-CD=  , ECOA-CD=1, CNS-CD   , ECOA-CD-SP= , CNS-CD-SP=  NOT DELINQUEN
                                                T, NOT CLOSED
```

**FDR  ARCHIV   011709   0516  JANUARY 2009 ARCHIVED 00005 MEMOS**

```
  CM-819   9363/8006      CHRONICLE ARCHIVE SUMMARY           CITGO                    -FE- 12/31/08    PAGE 26,056
                                                                                   RUN DATE 01/17 TIME 06:48
  DATE      STAT OPID  TERM   CLERK  TYPE    TEXT
  ACCOUNT # 7099634570600000      (CONT)
  2006/12/01   ADD   CV    *     CV     CONV    BUREAU REPORT: ACCT-STAT= 11, BALANCE    $1,252   PMT-RATING= , SPEC-COMMENT=AP,
                                                COMPL-COND-CD=  , ECOA-CD=1, CNS-CD   , ECOA-CD-SP= , CNS-CD-SP=  NOT DELINQUEN
                                                T, CLOSED ON 2006-12-01
  2006/12/21   ADD   CV    *     CV     CONV    ACCOUNT LETTER LOG  LETTER=8916, LETTER TYPE=I, LETTER WORK DATE=2006-12-21, CR-A
                                                CT-TYPE=89, RAW-AGE-LTR-GEN=00
  2006/12/02   ADD   CV    *     CV     CONV    ACCOUNT LETTER LOG  LETTER=0240, LETTER TYPE=S, LETTER WORK DATE=2006-12-02, CR-A
                                                CT-TYPE=00, RAW-AGE-LTR-GEN=01
  2006/12/02   ADD   CV    *     CV     CONV    ACCOUNT LETTER LOG  LETTER=8889, LETTER TYPE=I, LETTER WORK DATE=2006-12-02, CR-A
                                                CT-TYPE=89, RAW-AGE-LTR-GEN=01
  2007/12/19   ADD   J7R   MQ76         COLL    O/R PBPHONE FEE.
```

**FDR  ARCHIV   122008   0514  DECEMBER 2008 ARCHIVED 00003 MEMOS**

Citi Prod (Cox v. Hannah) 000092

Citi Prod (Cox v. Hannah) 000093

```
CM-819    9363/8006        CHRONICLE ARCHIVE SUMMARY              CITGO                        -FE- 11/30/08    PAGE 52,647
                                                                                              RUN DATE 12/20 TIME 06:59
  DATE     STAT OPID TERM   CLERK TYPE     TEXT
ACCOUNT # 7099634570600000       (CONT)
2006/11/09  ADD  CV    *      CV    CONV   ACCOUNT LETTER LOG  LETTER=8889, LETTER TYPE=I, LETTER WORK DATE=2006-11-09, CR-A
                                          CT-TYPE=89, RAW-AGE-LTR-GEN=00
2006/11/02  ADD  CV    *      CV    CONV   ACCOUNT LETTER LOG  LETTER=0240, LETTER TYPE=S, LETTER WORK DATE=2006-11-02, CR-A
                                          CT-TYPE=00, RAW-AGE-LTR-GEN=02
2006/11/01  ADD  CV    *      CV    CONV   ACCOUNT LETTER LOG  LETTER=0240, LETTER TYPE=S, LETTER WORK DATE=2006-11-01, CR-A
                                          CT-TYPE=00, RAW-AGE-LTR-GEN=02
```

FDR   ARCHIV   111508   0519   NOVEMBER 2008 ARCHIVED 00002 MEMOS

```
  CM-819    9363/8006        CHRONICLE ARCHIVE SUMMARY              CITGO                        -FE- 10/31/08    PAGE
81,654
                                                                                              RUN DATE 11/15 TIME 07:19
  DATE     STAT OPID TERM   CLERK TYPE     TEXT
ACCOUNT # 7099634570600000       (CONT)
2006/10/04  ADD  CV    *      CV    CONV   ACCOUNT LETTER LOG  LETTER=8911, LETTER TYPE=I, LETTER WORK DATE=2006-10-04, CR-A
                                          CT-TYPE=89, RAW-AGE-LTR-GEN=01
2007/10/17  ADD  3BH  MQ76         COLL   CH ACCPTD PBPHONE FEE.
```

FDR   ARCHIV   092008   0520   SEPTEMBER 2008 ARCHIVED 00001 MEMOS

```
  CM-819    9363/8006        CHRONICLE ARCHIVE SUMMARY              CITGO                        -FE- 08/31/08    PAGE
69,274
                                                                                              RUN DATE 09/20 TIME 08:33
  DATE     STAT OPID TERM   CLERK TYPE     TEXT
ACCOUNT # 7099634570600000       (CONT)
2006/08/03  ADD  CV    *      CV    CONV   ACCOUNT LETTER LOG  LETTER=8916, LETTER TYPE=I, LETTER WORK DATE=2006-08-03, CR-A
                                          CT-TYPE=89, RAW-AGE-LTR-GEN=00
```

FDR   ARCHIV   081608   0531   AUGUST 2008 ARCHIVED 00002 MEMOS

```
CM-819    9363/8006        CHRONICLE ARCHIVE SUMMARY              CITGO                        -FE- 07/31/08    PAGE 62,398
                                                                                              RUN DATE 08/16 TIME 11:19
  DATE     STAT OPID TERM   CLERK TYPE     TEXT
ACCOUNT # 7099634570600000       (CONT)
2006/07/22  ADD  CV    *      CV    CONV   ACCOUNT LETTER LOG  LETTER=8911, LETTER TYPE=I, LETTER WORK DATE=2006-07-22, CR-A
                                          CT-TYPE=89, RAW-AGE-LTR-GEN=00
2006/07/01  ADD  CV    *      CV    CONV   ACCOUNT LETTER LOG  LETTER=3935, LETTER TYPE=S, LETTER WORK DATE=2006-07-01, CR-A
                                          CT-TYPE=40, RAW-AGE-LTR-GEN=00
```

```
                              Account Notes.TXT
  @CMS CISDISPLAY
COX,GLENN M**2994 KODIAK CT**MARIETTA*GA*30062-1543*7099634570600*2
                                          ACCOUNT #  7099634570600
CMDS  S=SELECT  C/U=UPDATE  D=DELETE                        PAGE 001
C USER  TYPE  DATE  TIME              MEMO TEXT
  1XU PERM    082214 0656 THE PREVS EMAIL WAS FROM LEGAL
  1XU PERM    082214 0655 EMAIL REDV/ NO ACDVS FOUND FOR THIS ACCT/ EMAIL REP//+
  VKH PERM    081814 1343 RECVD EMAI LFROM SD LEGAL REQ ALL INFO THAT WAS SENT +
  OO9 PERM    071514 0824 RCV RICA REQ FRM MCM ADDED RICA NOT AVAIL TO MEDIA FO+
  K6P PERM    060514 0928 RCV RICA REQ FRM MCM.ADDED NO RICA AVAILABLET MEDIA F+
  K6P PERM    060514 0926 RCV RICA REQ FRM MCM.ADDED NO RICA AVAILABLET MEDIA F+
  FDR ARCHIV  051714 0521 MAY 2014 ARCHIVED  00002 MEMOS
  CHW CMS     031814 0931 CUST INQ ABT STMT COPIES/GV RECOVERY NUMBER/
  CHW CMS     031814 0930 ANI PASSED W/BUSINESSPHONE
  CHW CMS     031814 0930 COX,GLENN M SELECTED
  CHW CMS     031814 0930 ANI: 7703613988
  FDR ARCHIV  021514 0524 FEBRUARY 2014 ARCHIVED  00004 MEMOS
  FDR ARCHIV  111613 0536 NOVEMBER 2013 ARCHIVED  00004 MEMOS
  FDR ARCHIV  101913 0545 OCTOBER 2013 ARCHIVED  00002 MEMOS
  FDR ARCHIV  092113 0608 SEPTEMBER 2013 ARCHIVED  00003 MEMOS
  FDR ARCHIV  081713 0524 AUGUST 2013 ARCHIVED  00001 MEMOS
  F2=ADD NEW MEMO    PF5=PI1        F7=BACK  F8=FORWARD

SELECT A MEMO & ENTER OR PRESS PF KEY                    V2MEMTRN  00

  @CMS CISDISPLAY
COX,GLENN M**2994 KODIAK CT**MARIETTA*GA*30062-1543*7099634570600*2
                                          ACCOUNT #  7099634570600
CMDS  S=SELECT  C/U=UPDATE  D=DELETE                        PAGE 002
C USER  TYPE  DATE  TIME              MEMO TEXT
  FDR ARCHIV  072013 0532 JULY 2013 ARCHIVED  00001 MEMOS
  FDR ARCHIV  061513 0539 JUNE 2013 ARCHIVED  00002 MEMOS
  FDR ARCHIV  051813 0506 MAY 2013 ARCHIVED  00004 MEMOS
  FDR ARCHIV  042013 0520 APRIL 2013 ARCHIVED  00003 MEMOS
  FDR ARCHIV  031613 0508 MARCH 2013 ARCHIVED  00001 MEMOS
  NM  79168   030613 0412 NM 791-68  CR BUR PRV FLG OLD FIELD = 1 NEW FIELD = 1
  B   57      030613 0412 CR BUREAU FLAG OLD FIELD= 1 NEW FIELD= Z
  FDR 28      022213 1108 NM-028 NEW REASON CODE = 33 OLD REASON CODE = 40
  NM  N115C*  022213 0014 *Buyer - Encore 888 303-3005                    C+
  FDR ARCHIV  121512 0541 DECEMBER 2012 ARCHIVED  00002 MEMOS
  FDR ARCHIV  102012 0533 OCTOBER 2012 ARCHIVED  00001 MEMOS
  FDR ARCHIV  091512 0610 SEPTEMBER 2012 ARCHIVED  00001 MEMOS
      PERM    082412 1433 APR RVW FAIL - F3 - NOT ELIGIBLE / WRITE-OFF ACCT
  FDR ARCHIV  061612 0541 JUNE 2012 ARCHIVED  00005 MEMOS
  FDR ARCHIV  051912 0528 MAY 2012 ARCHIVED  00002 MEMOS
      PERM    050712 1425 APR RVW FAIL - F3 - NOT ELIGIBLE / WRITE-OFF ACCT
  F2=ADD NEW MEMO    PF5=PI1        F7=BACK  F8=FORWARD

SELECT A MEMO & ENTER OR PRESS PF KEY                    V2MEMTRN  00

  @CMS CISDISPLAY
COX,GLENN M**2994 KODIAK CT**MARIETTA*GA*30062-1543*7099634570600*2
                                          ACCOUNT #  7099634570600
CMDS  S=SELECT  C/U=UPDATE  D=DELETE                        PAGE 003
C USER  TYPE  DATE  TIME              MEMO TEXT
  FDR ARCHIV  042112 0615 APRIL 2012 ARCHIVED  00023 MEMOS
  FDR ARCHIV  031712 0619 MARCH 2012 ARCHIVED  00003 MEMOS
  FDR ARCHIV  021812 0548 FEBRUARY 2012 ARCHIVED  00003 MEMOS
  FDR ARCHIV  012112 0527 JANUARY 2012 ARCHIVED  00001 MEMOS
  FDR ARCHIV  121711 0548 DECEMBER 2011 ARCHIVED  00001 MEMOS
  FDR ARCHIV  111911 0609 NOVEMBER 2011 ARCHIVED  00001 MEMOS
      PERM    101411 1413 APR RVW FAIL - F6 - PENALTY PRICING
  FDR ARCHIV  082011 0525 AUGUST 2011 ARCHIVED  00002 MEMOS
                              Page 1
```

Citi Prod (Cox v. Hannah) 000094

```
                              Account Notes.TXT
     FDR ARCHIV 041611 0508 APRIL 2011 ARCHIVED   00001 MEMOS
     FDR ARCHIV 031911 0518 MARCH 2011 ARCHIVED   00006 MEMOS
         PERM   031711 1018 APR RVW FAIL - F5 - ACCT AT OR BELOW STANDARD APRS
  9WS PERM      031411 1343 D2 REPORT: PGM SET APPROPRIATELY. NO ACTION REQUIRED
     FDR ARCHIV 021911 0523 FEBRUARY 2011 ARCHIVED   00003 MEMOS
     FDR ARCHIV 082110 0517 AUGUST 2010 ARCHIVED   00010 MEMOS
     FDR ARCHIV 071710 0513 JULY 2010 ARCHIVED   00003 MEMOS
     FDR ARCHIV 061910 0542 JUNE 2010 ARCHIVED   00001 MEMOS
  F2=ADD NEW MEMO    PF5=PI1        F7=BACK  F8=FORWARD

SELECT A MEMO & ENTER OR PRESS PF KEY                       V2MEMTRN  00

   @CMS CISDISPLAY
COX,GLENN M**2994 KODIAK CT**MARIETTA*GA*30062-1543*7099634570600*2
                                        ACCOUNT #  7099634570600
CMDS  S=SELECT  C/U=UPDATE  D=DELETE                         PAGE 004
C USER  TYPE  DATE  TIME              MEMO TEXT
     FDR ARCHIV 051510 0546 MAY 2010 ARCHIVED   00001 MEMOS
     FDR ARCHIV 041710 0540 APRIL 2010 ARCHIVED   00003 MEMOS
     FDR ARCHIV 032010 0523 MARCH 2010 ARCHIVED   00007 MEMOS
         PERM   031810 0047 COMPLIANCE CIT D06PY MND - NO OPT OUT - APR TO FIXED +
     FDR ARCHIV 011610 0550 JANUARY 2010 ARCHIVED   00001 MEMOS
     RV  95405  112509 0748 MSQ=0003 PRV CR BUR FLG OLD FIELD= * NEW FIELD= 3
     FDR ARCHIV 112109 0612 NOVEMBER 2009 ARCHIVED   00001 MEMOS
     FDR ARCHIV 081509 0555 AUGUST 2009 ARCHIVED   00012 MEMOS
     FDR ARCHIV 071809 0521 JULY 2009 ARCHIVED   00003 MEMOS
     FDR ARCHIV 062009 0530 JUNE 2009 ARCHIVED   00005 MEMOS
     FDR ARCHIV 051609 0519 MAY 2009 ARCHIVED   00002 MEMOS
     FDR ARCHIV 041809 0512 APRIL 2009 ARCHIVED   00002 MEMOS
     FDR ARCHIV 032109 0509 MARCH 2009 ARCHIVED   00007 MEMOS
     FDR ARCHIV 022109 0510 FEBRUARY 2009 ARCHIVED   00001 MEMOS
     FDR ARCHIV 011709 0516 JANUARY 2009 ARCHIVED   00005 MEMOS
     FDR ARCHIV 122008 0514 DECEMBER 2008 ARCHIVED   00003 MEMOS
  F2=ADD NEW MEMO    PF5=PI1        F7=BACK  F8=FORWARD

SELECT A MEMO & ENTER OR PRESS PF KEY                       V2MEMTRN  00

   @CMS CISDISPLAY
COX,GLENN M**2994 KODIAK CT**MARIETTA*GA*30062-1543*7099634570600*2
                                        ACCOUNT #  7099634570600
CMDS  S=SELECT  C/U=UPDATE  D=DELETE                         PAGE 005
C USER  TYPE  DATE  TIME              MEMO TEXT
     FDR ARCHIV 111508 0519 NOVEMBER 2008 ARCHIVED   00002 MEMOS
     FDR ARCHIV 092008 0520 SEPTEMBER 2008 ARCHIVED   00001 MEMOS
     FDR ARCHIV 081608 0531 AUGUST 2008 ARCHIVED   00002 MEMOS
     FDR 79514   072908 0457 CB DATE CLOSED FROM 00000000 TO 07282008
     NM  79143   072808 1918 CB CONS CLSD DT FROM 00000000 TO 07282008




  F2=ADD NEW MEMO    PF5=PI1        F7=BACK  F8=FORWARD

SELECT A MEMO & ENTER OR PRESS PF KEY                       V2MEMTRN  00

   @CMI
                            Page 2
```

Citi Prod (Cox v. Hannah) 000095

```
                           Account Notes.TXT
                                 ACCOUNT # 7099634570600    PAGE 01 OF 01
COX,GLENN M**2994 KODIAK CT**MARIETTA*GA*30062-1543*7099634570600*2


                        --------- ADDED --------    ------- LAST USED ------
ARCHIVE DATE: 07/15/2023 USERID......: 0O9          USERID......: 0O9
OVRRIDE DATE:            DATE........: 07/15/2014    DATE........: 07/15/2014
OPERATOR....: 0O9        TIME........: 08:24:12      TIME........: 08:24:12
MEMO TYPE...: PERM       TERMID......: BCDA          TERMID......: BCDA
----------------------------- MEMO TEXT -------------------------------------
RCV RICA REQ FRM MCM ADDED RICA NOT AVAIL TO MEDIA FOLDER TO BE SENT TO BUYER




       PF3=RETURN PF5=PI1 PF7=BACKWARD PF8=FORWARD PF10=PREV MEMO PF11=NEXT MEMO


    @CMI
                                 ACCOUNT # 7099634570600    PAGE 01 OF 01
COX,GLENN M**2994 KODIAK CT**MARIETTA*GA*30062-1543*7099634570600*2


                        --------- ADDED --------    ------- LAST USED ------
ARCHIVE DATE: 06/05/2023 USERID......: K6P          USERID......: K6P
OVRRIDE DATE:            DATE........: 06/05/2014    DATE........: 06/05/2014
OPERATOR....: K6P        TIME........: 09:28:00      TIME........: 09:28:00
MEMO TYPE...: PERM       TERMID......: TUB8          TERMID......: TUB8
----------------------------- MEMO TEXT -------------------------------------
RCV RICA REQ FRM MCM.ADDED NO RICA AVAILABLET MEDIA FOLDR T BE SNT T BUYER




       PF3=RETURN PF5=PI1 PF7=BACKWARD PF8=FORWARD PF10=PREV MEMO PF11=NEXT MEMO


    @CMI
                                 ACCOUNT # 7099634570600    PAGE 01 OF 01
COX,GLENN M**2994 KODIAK CT**MARIETTA*GA*30062-1543*7099634570600*2


                        --------- ADDED --------    ------- LAST USED ------
ARCHIVE DATE: 06/05/2023 USERID......: K6P          USERID......: K6P
OVRRIDE DATE:            DATE........: 06/05/2014    DATE........: 06/05/2014
OPERATOR....: K6P        TIME........: 09:26:17      TIME........: 09:26:17
MEMO TYPE...: PERM       TERMID......: TUB8          TERMID......: TUB8
----------------------------- MEMO TEXT -------------------------------------
RCV RICA REQ FRM MCM.ADDED NO RICA AVAILABLET MEDIA FOLDR T BE SNT T BUYER


                                 Page 3
```

Citi Prod (Cox v. Hannah) 000096

Account Notes.TXT

PF3=RETURN PF5=PI1 PF7=BACKWARD PF8=FORWARD PF10=PREV MEMO PF11=NEXT MEMO

@CMI

ACCOUNT # 7099634570600    PAGE 01 OF 01
COX,GLENN M**2994 KODIAK CT**MARIETTA*GA*30062-1543*7099634570600*2

```
                            --------- ADDED -------     ------- LAST USED ------
ARCHIVE DATE: 02/22/2022    USERID......: NM            USERID......: NM
OVRRIDE DATE:               DATE........: 02/22/2013    DATE........: 02/22/2013
OPERATOR....:               TIME........: 00:14:08      TIME........: 00:14:08
MEMO TYPE...: N115C*        TERMID......: TAPE          TERMID......: TAPE
------------------------------ MEMO TEXT ------------------------------------
*Buyer - Encore 888 303-3005 CPLR
```

PF3=RETURN PF5=PI1 PF7=BACKWARD PF8=FORWARD PF10=PREV MEMO PF11=NEXT MEMO

@CMI

ACCOUNT # 7099634570600    PAGE 01 OF 01
COX,GLENN M**2994 KODIAK CT**MARIETTA*GA*30062-1543*7099634570600*2

```
                            --------- ADDED -------     ------- LAST USED ------
ARCHIVE DATE: 03/18/2019    USERID......:              USERID......:
OVRRIDE DATE:               DATE........: 03/18/2010    DATE........: 03/18/2010
OPERATOR....:               TIME........: 00:47:20      TIME........: 00:47:20
MEMO TYPE...: PERM          TERMID......:              TERMID......:
------------------------------ MEMO TEXT ------------------------------------
COMPLIANCE CIT D06PY MND - NO OPT OUT - APR TO FIXED NO FUTURE - SOLO
```

PF3=RETURN PF5=PI1 PF7=BACKWARD PF8=FORWARD PF10=PREV MEMO PF11=NEXT MEMO

Citi Prod (Cox v. Hannah) 000097

BancTec PayCourier® Archive                                      Page 1 of 1

Citi Prod (Cox v. Hannah) 000098



| Profile | Processing Date: October 21 2003 | | Envelope: 8 |
| AllOils | Batch Number: 1361 | | |

**Bundle Total: $17,846.75**
Virtual Validate: 0
Check Item Ref: 17
Routing & Transit: 0
Microfilm Id: 34600425
Pmt Rejector : 0
MICR Val: 0
Check Amount: $152.55

Trunc: 0
Acct Number: 634570600
Check Group Number: 88115
Check Account: 02979730
MICR PC Code: 2079
Pmt Reject Code: 0
Amount Val: D10692

GLENN M. COX JR. OR
LINDA COX
2908 KODIAK CT  770-973-4289
MARIETTA, GA 30062

2079
64-7148/2611

The bearers declare
the glory of God

Date 10/1/03

Pay to the order of  LTCo                                    $ 152.55

One hundred fifty-two & 55/100 — Dollars

MACO EDUCATORS
FEDERAL CREDIT UNION
MARIETTA, GA 30061-4318

300 0317 009

Linda Cox

For

⑆261171493⑈   02979730⑆ 2079  ⑈000015255⑈

citi

Print

Profile **AllOils** | **Processing Date:** December 14 2003 | **Envelope:** 184
**Batch Number:** 3765

PAYMENT

| | |
|---|---|
| Bundle Total: **$17,630.61** | Trunc: **0** |
| Virtual Validate: **0** | Acct Number: **634570600** |
| Check Item Ref: **369** | Check Group Number: **215139** |
| Routing & Transit: **0** | Check Account: **02979730** |
| Microfilm Id: **87406977** | MICR PC Code: **2138** |
| Pmt Rejector : **0** | Pmt Reject Code: **0** |
| MICR Val: **0** | Amount Val: **D10843** |
| Check Amount: **$500.00** | |

Citi Prod (Cox v. Hannah) 000099



BancTec PayCourier® Archive

Citi Prod (Cox v. Hannah) 000100



**Profile** AllOils

**Processing Date:** February 07 2004
**Batch Number:** 1504

**Envelope:** 199

Bundle Total: **$15,691.89**
Virtual Validate: **0**
Check Item Ref: **399**
Routing & Transit: **261171493**
Microfilm Id: **85706021**
Pmt Rejector : **0**
MICR Val: **0**
Check Amount: **$10.00**

Trunc: **0**
Acct Number: **634570600**
Check Group Number: **338695**
Check Account: **02979730**
MICR PC Code: **2212**
Pmt Reject Code: **0**
Amount Val: **D10840**

GLENN M. COX JR. OR
LINDA COX
2998 KODIAK CT. 770-973-4289
MARIETTA, GA 30062

Trust in the Lord
with all thine heart...
Proverbs 3.5

2212

64-7149/2611

Pay to the order of

$10 00

Dollars

MACO EDUCATORS
FEDERAL CREDIT UNION
MARIETTA, GA 30061-4310

For

Citi Prod (Cox v. Hannah) 000101



**citi**   Print

| Profile **AllOils** | Processing Date: July 29 2004 | Envelope: 183 |
| Batch Number: 69592 | | |

**PAYMENT**

Bundle Total: **$20,174.82**
Virtual Validate: **0**
Check Item Ref: **367**
Routing & Transit: **261171493**
Microfilm Id: **50041417**
Pmt Rejector : **0**
MICR Val: **0**
Check Amount: **$81.77**

Trunc: **0**
Acct Number: **634570600**
Check Group Number: **715811**
Check Account: **1300000029797**
MICR PC Code: **2397**
Pmt Reject Code: **0**
Amount Val: **D10667**

GOD'S WONDERS

**GLENN M COX**
**LINDA COX**
2994 KODIAK CT.
MARIETTA, GA  30062

2397

64-7149-2611

PAY to the order of    Citgo

Eighty one + 77/100    DOLLARS

MACO
www.maco.org

for # 634-570-600    Linda Cox

⑆261171493⑆130000002 9797⑈ 2397 ⑈000000817 7⑈

BancTec PayCourier® Archive

Page 1 of 1



 Print

Citi Prod (Cox v. Hannah) 000102

| Profile | Processing Date: October 08 2004 | Envelope: 84 |
| **AllOils** | Batch Number: 60284 | |

**PAYMENT**

Bundle Total: **$16,584.73**
Virtual Validate: **0**
Check Item Ref: **169**
Routing & Transit: **261171493**
Microfilm Id: **20073293**
Pmt Rejector : **0**
MICR Val: **0**
Check Amount: **$150.00**

Trunc: **1**
Acct Number: **634570600**
Check Group Number: **869024**
Check Account: **1300000029797**
MICR PC Code: **2510**
Pmt Reject Code: **0**
Amount Val: **D10747**

---

GIVE THANKS to the LORD

**GLENN M COX**
**LINDA COX**
2994 KODIAK CT
MARIETTA, GA  30062

64-7149-2611

2510

PAY to the order of _____ $ /50⁰⁰/₁₀₀

_____ DOLLARS

**MACO**
www.maco.org

for _____

⑆261171493⑆130000002 9797⑈ 2510 ⑈00000150000⑈

RancTec PayCourier® Archive

Page 1 of 1



Citi Prod (Cox v. Hannah) 000103

Print 

| **Profile** **AllOils** | **Processing Date:** November 29 2004 | **Envelope:** 117 |
| --- | --- | --- |
| | **Batch Number:** 58819 | |

**PAYMENT**

Bundle Total: **$20,151.30**
Virtual Validate: **0**
Check Item Ref: **235**
Routing & Transit: **261171493**
Microfilm Id: **90021643**
Pmt Rejector : **0**
MICR Val: **0**
Check Amount: **$50.00**

Trunc: **1**
Acct Number: **634570600**
Check Group Number: **977135**
Check Account: **1300000029797**
MICR PC Code: **2555**
Pmt Reject Code: **0**
Amount Val: **D10976**

---

Nov. T
of GOD is
ETERNAL Lov
Romg 6:8

**GLENN M COX**
**LINDA COX**
2994 KODIAK CT.
MARIETTA, GA 30062

64-7149-2611

2555

1 58819 8736
CIT 11 29 2004           30 6215

PAY
to the order of    Citgo

$ 50 00

Fifty and 0/100                                    DOLLARS

**MACO**
www.maco.org

300  0304  119

for

⑆261171493⑆ 1300000029797⑈ 2555 ⑈000000 5000⑈

BancTec PayCourier® Archive

Page 1 of 1

Citi Prod (Cox v. Hannah) 000104



| Profile | Processing Date: February 12 2005 | | Envelope: 100 |
| **AllOils** | Batch Number: 9331 | | |

| **PAYMENT** | Bundle Total: $16,969.05 | Trunc: **1** |
| | Virtual Validate: **0** | Acct Number: **634570600** |
| | Check Item Ref: **202** | Check Group Number: **1144330** |
| | Routing & Transit: **261171493** | Check Account: **1300000029797** |
| | Microfilm Id: **50000210** | MICR PC Code: **2681** |
| | Pmt Rejector : **0** | Pmt Reject Code: **0** |
| | MICR Val: **0** | Amount Val: **D10494** |
| | Check Amount: **$300.00** | |

GOD WONDERS — Ann
**GLENN M COX**
**LINDA COX**
2994 KODIAK CT.
MARIETTA, GA 30062

64-7145-2611

2681

2-9 2025

PAY to the order of _____ CITGO _____ $ 300

_____ THREE HUNDRED A 0/100 _____ DOLLARS

MACO
www.maco.org

for _____

⑆261171493⑆ ⑈1300000029797⑈ 2681 ⑆000003000⑈

BankTec PayCourier® Archive

Page 1 of 1

Citi Prod (Cox v. Hannah) 000105



**citi**

Print

| Profile | Processing Date: April 06 2005 | Envelope: 101 |
| --- | --- | --- |
| **AllOils** | Batch Number: 45526 | |

**PAYMENT**

Bundle Total: $17,876.99
Virtual Validate: 0
Check Item Ref: 203
Routing & Transit: 261171493
Microfilm Id: 0000000000
Pmt Rejector : 0
MICR Val: 0
Check Amount: $250.00

Trunc: 1
Acct Number: 634570600
Check Group Number: 1255276
Check Account: 1300000029797
MICR PC Code: 2750
Pmt Reject Code: 0
Amount Val: D10696

**GLENN M COX**
**LINDA COX**
2994 KODIAK CT
MARIETTA, GA 30062

2750

PAY to the order of ___ C.TGO ___ | $250

Two Hundred Fifty An ___ DOLLARS

**MACO**
www.maco.org

for ___

⑆261171493⑆ 1300000029797⑈ 2750 ⑈000000 25000⑈

CIT CITIBANK  04
5
04050406  040090

PAY ANY BANK PEG
634570600
⑆2519708124

BancTec PayCourier® Archive                                                   Page 1 of 1

                                                          
                                                                             Print

Citi Prod (Cox v. Hannah) 000106

| Profile **AllOils** | Processing Date: April 30 2005 | Envelope: 57 |
| | Batch Number: 19009 | |

**PAYMENT**

Bundle Total: **$20,383.71**
Virtual Validate: **0**
Check Item Ref: **115**
Routing & Transit: **261171493**
Microfilm Id: **60042869**
Pmt Rejector : **0**
MICR Val: **0**
Check Amount: **$274.70**

Trunc: **1**
Acct Number: **634570600**
Check Group Number: **1316624**
Check Account: **1300000029797**
MICR PC Code: **2778**
Pmt Reject Code: **0**
Amount Val: **D10934**

---

GLENN M COX
LINDA COX
2994 KODAK CT.
MARIETTA, GA  30062

2778

1  19009             16
CIT    04/30/05  21  0806
4-25              20 05

PAY to the order of _____ CITGO _____ | $ 274 70/xx

_____ TWO HUNDRED SEVENTY FOUR A 70/xx _____ DOLLARS

MACO
www.maco.org

000  0430  053

for _____

⑆261171493⑆ 13000000 29797⑆  2778  ⑈00000 27470⑈

BancTec PayCourier® Archive

Page 1 of 1

Citi Prod (Cox v. Hannah) 000107



**Profile** **AllOils** — **Processing Date:** June 03 2005 — **Batch Number:** 40689 — **Envelope:** 54

Bundle Total: **$23,067.98**
Virtual Validate: **0**
Check Item Ref: **109**
Routing & Transit: **061000227**
Microfilm Id: **60025130**
Pmt Rejector : **0**
MICR Val: **0**
Check Amount: **$465.82**

Trunc: **1**
Acct Number: **634570600**
Check Group Number: **1408333**
Check Account: **1010113780044**
MICR PC Code: **1016**
Pmt Reject Code: **0**
Amount Val: **0**

GLENN M COX
2998 KODIAK CT
MARIETTA, GA 30062

1016

BancTec PayCourier® Archive

Page 1 of 1

Citi Prod (Cox v. Hannah) 000108



Print

| Profile | Processing Date: July 11 2005 | | Envelope: 16 |
|---|---|---|---|
| AllOils | Batch Number: 7265 | | |

**PAYMENT**

Bundle Total: **$21,259.41**
Virtual Validate: **0**
Check Item Ref: **34**
Routing & Transit: **261171493**
Microfilm Id: **0000000000**
Pmt Rejector : **0**
MICR Val: **0**
Check Amount: **$33.39**

Trunc: **1**
Acct Number: **634570600**
Check Group Number: **1513771**
Check Account: **1300000029797**
MICR PC Code: **2838**
Pmt Reject Code: **0**
Amount Val: **D10470**

GIVE
THANKS
& LORD
~ Relat etc

**GLENN M COX**
**LINDA COX**
2994 KODIAK CT.
MARIETTA, GA  30062

64-7149-2611

2838

7-7 20 05

PAY ⊙  CITGO                      $33 ³⁹
to the order of

THIRTY THREE &  ³⁹⁄CO           DOLLARS

**MACO**
www.maco.org

for

I072650034
CIT 30076 116 0285

⑆261171493⑆ 13000000 29797⑆ 2838 ⑈000000 3339⑈

CIT CITIBANK TX
04 2
071105 0711

>218076172<
$34570600
PAY ANY BANK PEG

BancTec PayCourier® Archive

Page 1 of 1

Citi Prod (Cox v. Hannah) 000109



| **Profile** AllOils | **Processing Date:** September 05 2005 | **Envelope:** 153 |
|---|---|---|
| | **Batch Number:** 47039 | |

**PAYMENT**

Bundle Total: **$24,602.02**
Virtual Validate: **0**
Check Item Ref: **307**
Routing & Transit: **061000227**
Microfilm Id: **0000000000**
Pmt Rejector : **0**
MICR Val: **0**
Check Amount: **$150.00**

Trunc: **1**
Acct Number: **634570600**
Check Group Number: **118167**
Check Account: **1010113780044**
MICR PC Code: **2521**
Pmt Reject Code: **0**
Amount Val: **D10706**

Glenn M. Cox
770-972-4289
2284 Kodiak Ct.
Marietta, GA 30062

64-22-610                 2521

WACHOVIA BANK, N.A.
WACHOVIA.COM

⑈061000227⑈ 1010113780044⑈ 2521  ⑈00000150000⑈

BancTec PayCourier® Archive

Page 1 of 1

Citi Prod (Cox v. Hannah) 000110



## citi

**Print**

| Profile | Processing Date: March 06 2006 | Envelope: 38 |
| AllOils | Batch Number: 233487 | |

**PAYMENT**

Bundle Total: **$15,737.20**
Virtual Validate: **0**
Check Item Ref: **76**
Routing & Transit: **061000227**
Microfilm Id: **0**
Pmt Rejector : **0**
MICR Val: **0**
Check Amount: **$200.00**

Trunc: **1**
Acct Number: **634570600**
Check Group Number: **23348721001**
Check Account: **1010113780044**
MICR PC Code: **0**
Pmt Reject Code: **0**
Amount Val: **0**

Glenn M. Cox
770/873-4289
2994 Kodiak Cl.
Marietta, GA 30062

2636

64-22-610

3-1 20 06

PAY TO THE ORDER OF ___ CITGO ___ $ 200 00

_____ Two Hundred An 00 _____ DOLLARS

WACHOVIA BANK, N.A.
WACHOVIA.COM

FOR _____

⑈061000227⑈ 1010113780044⑈ 2636

BancTec PayCourier® Archive

Page 1 of 1



Citi Prod (Cox v. Hannah) 000111

Print

| Profile | Processing Date: April 11 2006 | Envelope: 34 |
| **AllOils** | Batch Number: 369583 | |

**PAYMENT**

Bundle Total: **$12,610.35**
Virtual Validate: **0**
Check Item Ref: **68**
Routing & Transit: **061000227**
Microfilm Id: **0**
Pmt Rejector : **0**
MICR Val: **0**
Check Amount: **$300.00**

Trunc: **1**
Acct Number: **634570600**
Check Group Number: **36958321001**
Check Account: **1010113780044**
MICR PC Code: **0**
Pmt Reject Code: **0**
Amount Val: **0**

Glenn M. Cox
770/973-4239
2294 Kodiak Ct.
Marietta, GA 30062

64-22-610          2691

4/8/06

Cifzo                    $ 300.00

Three hundred + no/100

WACHOVIA BANK, N.A.
WACHOVIA.COM

for   634-570-600        Linda Cox

⑆061000227⑆ 1010113780044⑈ 2691

BancTec PayCourier® Archive

Page 1 of 1

Citi Prod (Cox v. Hannah) 000112



| Profile **AllOils** | Processing Date: June 05 2006 Batch Number: 229907 | Envelope: 134 |

**PAYMENT**

Bundle Total: $31,372.33
Virtual Validate: 0
Check Item Ref: 268
Routing & Transit: 061000227
Microfilm Id: 0
Pmt Rejector : 0
MICR Val: 0
Check Amount: $200.00

Trunc: 0
Acct Number: 634570600
Check Group Number: 22990806001
Check Account: 1010113780044
MICR PC Code: 0
Pmt Reject Code: 0
Amount Val: 0

Glenn M. Cox
770/973-4289
2394 Kodiak Ct.
Marietta, GA 30062

64-22-610

2729

6-1 20-06

PAY TO THE
ORDER OF  CITGO

$ 200.00

Two Hundred and 00/100  DOLLARS

WACHOVIA BANK, N.A.
WACHOVIA.COM

FOR

⑈061000227⑈ 1010113780044⑈ 2729